

**SO ORDERED.**

**SIGNED this 25 day of August, 2010.**

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**

_____

**Shelley D. Rucker**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

In re:

STEVE A. MCKENZIE,                          Case No. 08-16378
                                            Chapter 7

            Debtor.

<u>ORDER AND MEMORANDUM</u>


        The "Motion to Vacate and Relieve Debtor and Chapter 11 Estate of Order (Doc.

no. 550) Selling Debtor's Interest in East Tennessee Interstate Properties, LLC to Nelson

Bowers for $2500"  ("Rule 60 Motion")  presents the court with a request for relief under

Rule 9024 of the Federal Bankruptcy Rules of Procedure, incorporating Rule 60 of the

Federal Rules of Civil Procedure. In the Rule 60 Motion, the debtor seeks relief from an

agreed order entered November 9, 2009 ("Sale Order"), approving the sale of the debtor's

1

"equity interests," which allegedly would have entitled the estate to a portion of the proceeds from any future sale of approximately fifteen acres located at the Exit 20 Interchange of Interstate 75 (the "Exit 20 Property").

The Rule 60 Motion asks the court to determine whether the trustee's decision to sell the equity interests in two entities for $2,500 was a mistake which warrants granting the debtor relief from the Sale Order. It also raises the issue of whether the debtor's failure to object to or appeal the Sale Order constitutes excusable neglect based on the condition of the debtor's health at the time when those actions could have been taken. After a review of the evidence presented, the pleadings filed, and the argument of counsel for the debtor, the trustee, and the buyer, the court grants the relief requested in the motion with respect to East Tennessee Interstate Properties, LLC ("ETIP") and modifies the Sale Order to clarify that only the debtor's shares of stock in Tennessee Investment Properties, Inc. ("TIPCO") were sold.

### Procedural History of the Case

An involuntary petition was filed on November 20, 2008, against the debtor. It was later consolidated with a voluntary petition filed on December 20, 2008, case no. 08-16987. The cases were consolidated further under case no. 08-16378 pursuant to an order converting the involuntary case to one under Chapter 11, entered January 16, 2009.

On February 11, 2009, the United States Trustee moved for the appointment of a trustee. (Doc. no. 101). At that time the debtor was suffering from serious medical problems and appeared to be unable to manage his affairs. C. Kenneth Still was appointed as trustee on February 19, 2009. (Doc. no. 130 and 140). Mr. Scott LeRoy was retained as counsel

for the trustee and Thomas Kale was retained as a real estate consultant for the trustee. (Doc. no. 238 (LeRoy) and no.174 (Kale)).

On March 11, 2009, Citizens National Bank ("Citizens") filed a motion for relief to foreclose on a membership interest indirectly owned by the debtor. ("Stay Relief Motion").[1] The relief was granted by an order entered on July 17, 2009 ("Stay Relief Order").  On September 30, 2009, Citizens, the trustee and Nelson E, Bowers,II,  filed a motion to sell the "equity interest of the debtor" in Tipco and ETIP ("Sale Motion").  The sale was approved by the Sale Order on November 9, 2009.  The Stay Relief Motion, the Stay Relief Order, the Sale Motion and Sale Order are discussed in more detail below.

In order to determine whether Rule 60 relief is appropriate based on the pleadings and events that led up to the Rule 60 Motion and the record created at the hearing, it is necessary  to understand  (a) the relationship of the debtor to the Exit 20 Property and (b) the real estate financing of that property.

*The Tiers of Ownership - Debtor's Interests in Tipco and ETIP*

At the hearing on the Rule 60 Motion, the parties stipulated that the debtor owned 1000 of the 2000 issued shares of the stock of Tipco, a Tennessee corporation. The remainder of the stock was owned by Nelson E. Bowers, II. Tipco's sole asset is a membership interest in ETIP, a Tennessee limited liability company. That membership interest represents 51% of the ownership interests in ETIP.   The other 49% of ETIP was owned by Cleveland Land Investments, LLC, another limited liability company not  owned by the debtor or Mr. Bowers. The identity of the parties who currently own Cleveland Land

---

[1]The Stay Relief Motion was amended on April 2, 2009, (Doc. no. 236) to correct the date of the hearing from April 2 to April 9, 2009.

Investments and the ownership of the other 49% of ETIP were not facts stipulated by the parties. The court does not view the specifics of that ownership as relevant to the Rule 60 analysis. The relevant fact is that there were owners of ETIP other than the debtor and Mr. Bowers which was stipulated. ETIP is the record owner of the Exit 20 Property. No lien or mortgage encumbers the Exit 20 Property. Neither Tipco nor ETIP have filed a bankruptcy proceeding.

*The Real Estate Financing Transaction-*
*Citizens' Loan and the Stay Relief Motion*

Several years prior to the bankruptcy filing, Citizens loaned money to ETIP pursuant to a note which was dated November 22, 2002, ("ETIP Note") in the original principal amount of $1,018,223.43.  On January 5, 2009, Citizens filed an unsecured claim (No. 3) in the amount of $817,106.68 in this case. It attached a note signed by ETIP dated 11/22/2002 in the original principal amount of $1,018,223.43. The note states on its face that it matures on November 22, 2003. It also states the "purpose of this loan is to purchase investment property." The note was signed by Greg Steele, Chief Manager of ETIP. The accounting attached to claim shows that the maturity date for the note was October 1, 2008.[2]

Citizens did not take a security interest directly in the Exit 20 Property from its borrower, ETIP, to secure its loan. Instead, Citizens obtained three unlimited guaranties of ETIP's obligations to Citizens - one from Mr. Bowers, one from the debtor, and one

---

[2]Although there appears to be a discrepancy in the maturity date between ETIP Note and the handwritten note on the accounting, there was no issue of mistake raised at the hearing about the validity of Citizens' debt based on the ETIP Note or the existence of its security interest in the member interest of ETIP owned by Tipco. The court will treat the ETIP Note as the operative debt instrument in its analysis.

from Tipco.  To secure the guaranty of Tipco, Citizens also obtained a "Collateral

Pledge" from Tipco of Tipco's 50% member interest in ETIP.

Citizens included a copy of the debtor's guaranty, dated November 22, 2002, with

its proof of claim. In it, the debtor guarantees all present and future debts of ETIP. It is an

"absolute, unconditional and continuing" guaranty of ETIP's obligations to Citizens

whether "joint or several."  *Guaranty*, Paragraph 2. Finally, the guaranty provides that the

"Lender shall not be required first to resort for payment of the Indebtedness to Borrower

or other persons or their properties, or first to enforce, realize upon or exhaust any

collateral security for Indebtedness, before enforcing this guaranty." *Guaranty*,

Paragraph 11.

In the Collateral Assignment, also executed on November 22, 2002, signed by

Gary Steele for Tipco, Frank Parker for Citizens, and the chief manager for Cleveland

Land Investments, LLC, Tipco pledged its interest in ETIP to Citizens subject to the

terms of the Collateral Assignment.[3]

In March of 2009, shortly after the trustee's appointment, Citizens, although

believing that there was no stay, filed the Stay Relief Motion to foreclose any interest

held by the Debtor in either ETIP or Tipco. *Stay Relief Motion* at 2, para. 7.(Doc. No.

188)  Based on the certificate of service, the Stay Relief Motion was served on the

---

[3]Citizens' counsel argued at the beginning of the hearing that there was a pledge of the
Tipco stock to secure the ETIP Note, but the identity of Citizen's collateral was later clarified.
There are no documents attached to the Citizens claim, the Stay Relief Motion, or the Sale
Motion evidencing a security interest in the Tipco stock and there was no evidence presented at
the hearing regarding the existence of a security interest in Tipco held by Citizens. The
Collateral Assignment attached to the Stay Relief Motion is executed by only Tipco and only the
ETIP member interest is listed as collateral. The proof of claim of Citizens is filed as unsecured
and lists no other collateral.

debtor and his attorney of record as required by Fed. R. Bankr. P. 4001. The certificate

of service does not list Tipco, Cleveland Land Investment LLC or ETIP as parties to

whom the notice was sent.

Only the trustee objected to the Stay Relief Motion. (Doc. no. 243) He responded

that his real estate consultant had had "discussions with a well qualified buyer about a

purchase of the real estate involved at a price that would fully pay the Bank and generate

substantial funds for the estate." He further stated that the interest of Citizens "is fully

protected in that the real estate....has a value that far exceeds the outstanding balance

of the loan in the approximate amount of $817,106.68."   The trustee concluded by

arguing that Citizens was fully protected by the terms of the guaranties which permitted

Citizens to pursue the other guarantor, Mr. Bowers, to pay the obligation. He alleged that

Mr. Bowers, in turn, owed the debtor a substantial amount of  money. The trustee finally

noted that "[g]ranting the relief requested may give Mr. Bowers an unfair advantage in

resolving these other collateral issues and would cause the estate to suffer damage and

to incur expenses which would not be necessary if the automatic stay remains in effect."

*Trustee's Objection* at 3,Para. 7.   The hearing on the motion and the reply was

continued repeatedly from April 9, 2010,  to July 14, 2010. (Doc. no. 250; no. 275; no.

347; no. 366; no.390).

No hearing ever occurred on the Stay Relief Motion or the Trustee's Objection.

In July, an agreed order was submitted - signed by Citizens and the trustee - which

provided "effective thirty days from the order, that all stays are lifted as to Citizens

National Bank to allow it to foreclose upon the membership interest of Tennessee

6

Interstate Properties, Inc., in East Tennessee Interstate Properties, LLC, including any

and all interest of the Debtor therein." The Stay Relief Order was entered on July 17,

2009 (Doc. no. 427) . The debtor did not sign the Stay Relief Order.

Throughout the pendency of the Stay Relief Motion, the debtor failed to respond

or object to the Stay Relief Motion.  No appeal or motion for reconsideration of the Stay

Relief Order was filed by the debtor or any other party.

*The Sale of the Equity Interests*

The foreclosure of Tipco's membership interest in ETIP appears not to have taken

place. The debtor's interest in Tipco became an issue again on September 30, 2009,

when Citizens, Nelson Bowers and the trustee filed the Sale Motion seeking to sell the

debtor's stock in Tipco for $2500. (Doc. no. 530, as amended at Doc. no. 537).  The Sale

Motion alleged that the equity interests in Tipco were owned by the estate and Mr.

Bowers. It stated further that

> 5.  The equity interest has no apparent value in view of the
>
> indebtedness owing Citizens National Bank and its security interest
>
> in the sole asset of [Tipco], consisting of a 51% membership interest
>
> in [ETIP].
>
> 6.  Although the stay has been lifted to allow [Citizens] to foreclose
>
> upon the membership interest of [Tipco] which would render
>
> valueless the 50% stock interest of the estate in [Tipco], the Trustee
>
> has agreed to sell to Nelson Bowers for the sum of $2500 the

estate's equity interest in [Tipco], including all interest of the Debtor

in [ETIP], free and clear of all liens of Citizens National Bank.

*Sale Motion*, Paragraphs 5 and 6 at pp. 2-3. There were no liens of Citizens on the

equity interest of the debtor, *i.e.*, his 1000 shares of Tipco.  Although paragraph 6 of the

Sale Motion states that the proposed sale would be "free and  clear of all liens of Citizens

National Bank," paragraph 7 states, "Pursuant to Rule 6004(g) [sic] of the Federal Rules

of Bankruptcy Procedure it is believed that there are no liens against the estate [sic]

equity interest."

The Sale Motion and proposed order were served electronically on September 30,

2009 on the debtor's original counsel; twice to the debtor's current counsel; the trustee;

and the United States Trustee. On October 7, 2009, Citizens filed an amended motion

which corrected the debtor's name in the heading of the motion, but was otherwise the

same. It, too, was served on both the former and current counsel for the debtor, the

United States Trustee and the Chapter 11 trustee.  On October 15, 2009, a proposed

order was uploaded by Citizens and it also was served on debtor's former and current

counsel, the trustee, and  the United States Trustee.

Neither the Sale Motion, as amended, nor the proposed order was served on

ETIP, ETIP's members or Tipco although both Tipco's shareholders had notice. Notices

of the Sale Motion and the amended version  were provided utilizing the passive notice

procedures of E. D. Tenn. LBR 9013-1(h)(1)(vii).  However, that local rule  prohibits the

use of passive notice for sales "free and clear" of liens under Rule 6004(c) of the Federal

Rules of Bankruptcy Procedure. *Id.*  Instead, motions to sell free and clear must be set

8

for hearing with the date of the hearing set forth in the motion as well as a deadline for

filing objections to the proposed sale.  Notice of the date of the hearing and the objection

deadline is required to be provided to parties with an interest in the property to be sold.

Fed. R. Bankr. P. 6004(c) and 9014; E. D. Tenn. LBR 9013-1(h)(1)(vii).

No objection to the Sale Motion was filed by any party. On November 9, 2009, the

court entered the Sale Order using the order which had been submitted by the movants.

In the Sale Order, the court approved the sale and authorized the execution of a bill of

sale by the trustee transferring the "all of the equity interest of the Debtor and the estate

in [Tipco] including any interest in [ETIP] free and clear of all liens of [Citizens]." (Doc.

no. 550).

*The Rule 60 Motion*

The debtor remained silent about the sale until he filed this motion to vacate on

April 2, 2010, five months after entry of the Sale Order and well past the deadlines

provided for reconsideration under Fed. R. Civ. P. 59 or the deadline to appeal under

Fed. R. Bankr. P. 8001.  (Doc. no. 612). In the Rule 60 Motion the debtor alleged that a

trustee had been appointed due to his illness, that he owned 25.5% of ETIP, that the

transfer of the member interests in ETIP required notice and approval of the other ETIP

members, that other members of ETIP did not receive notice, and that the Exit 20

Property was worth $4,000,000, and that his interest in the Exit 20 Property, being sold

for $2500, was worth between $1.5 and $2.0 million. He did not state what specific

section of Rule 60 was the basis for the relief he was requesting.

Citizens responded to allegations in the Rule 60 Motion on April 28, 2010. (Doc.

no. 672).  Citizens alleged that (i) the sale had been conducted after notice and an

opportunity for hearing, (ii) the sale allowed the trustee to retain $2500 even though

Citizens held a valid lien against the membership interest, (iii) notice to the members of

ETIP was not necessary since the members of ETIP had not changed as a result of the

sale, and (iv) that the debtor had notice of the hearing and failed to take action.

The trustee responded on May 18, 2010. (Doc. no. 710). The trustee argued  that

he was allowed several months to find a buyer for the property or for the debtor's

membership interest. (The trustee did not specify membership interest in Tipco or ETIP;

but since the debtor's interest in Tipco was stock and not a membership interest, it

appears that the trustee was referring to ETIP. *Trustee's Reply* at 1, Para. 1.)   He

continues that Mr. Kale, the duly appointed real estate consultant for the estate, "spent

many hours with potential buyers and developers but was unable to generate any

interest at a price that would satisfy the bank's debt and net a return for the estate." He

continues to allege that access to the property is problematic and he attributes the lack

of interest in the property to the access problem. *Trustee's Reply* at 2, Para. 1 and 2.  He

finally argues,

> It is not clear from the Debtor's Motion to Vacate what transpired
>
> between July 17, 2009 and the filing of the Motion to Vacate to
>
> cause the Debtor to suddenly ask the order be set aside. There is no
>
> basis stated in the Motion such as APD 40 plans have changed,
>
> new access has been obtained or any other reason that would
>
> constitute new evidence, mistake, fraud or any other basis for relief

found in Rule 60. There has been recent public media news after the

Motion to Vacate was filed that the State of Tennessee has

approved funding changes to Exit 20. It is unclear how the new

plans would impact the Debtor's interest or the value of the ETIP

property.

*Trustee's Reply* at 3, Para.5.

The evidentiary hearing on the Rule 60 Motion was held on May 25, 2010.

Counsel for the Citizens, the trustee and Nelson Bowers appeared. [4]  At that time, the

debtor cited mistake as the basis for setting aside the Sale Order. Counsel for Citizens

and Nelson Bowers argued that mistake had not been properly alleged in the pleadings,

and that no basis for Rule 60 relief had been alleged. The debtor presented proof that

both Tipco and ETIP were administratively dissolved at the time the sale was approved,

and that they were later reinstated. Although the debtor presented proof of the

dissolution, he did not argue in the Rule 60 Motion or at the hearing that the actions of

the estate were void as a result of their dissolved status.  The debtor did not put on proof

about how the entities' status as administratively dissolved would justify setting aside an

order selling his equity interests. He did however provide corporate filing documentation

that after the sale, Tipco and ETIP had been reinstated.

---

[4] Counsel for Mr. Bowers initially appeared specially to object to the subpoena which had
been issued to Mr. Bowers and Tipco's and ETIP's corporate counsel, Mr. Anderson. The court
sustained the objection on the basis that the witness fees had not been tendered to the parties.
During the proof phase of the hearing, counsel for Mr. Bowers appeared and participated in the
questioning of the debtor's witnesses and was, in fact, called as a witness by the debtor on the
issue of the corporate structure and status of ETIP and Tipco.

11

The debtor also presented the testimony of a long time employee who described the debtor's problems with understanding their conversations about his work during the early months of the case and the recent improvement in the debtor's health. The parties asked the court to take judicial notice of the filings in the case related to these transactions. Citizens asked the court to take judicial notice of the Disclosure Statement filed in August of 2009 and its accompanying exhibits.

### Analysis

Rule 9024 of the Federal Rules of Bankruptcy Procedure makes Rule 60 of the Federal Rules of Civil Procedure applicable to bankruptcy cases. Rule 60 provides that:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect.

Fed. R. Civ. P. 60(b)(1).

The timing of such a motion must be made within a reasonable time but not more than one year after the entry of the order in question. Fed. R. Civ. P. 60(c)(1).

The debtor has filed a timely motion and the court is now faced with determining whether the debtor should be relieved of the Sale Order because (a) his failure to object or respond was excusable neglect arising from his medical problems or (b) the Sale Order was based on a mistake either as to value of the Exit 20 Property or as to what was being bought and sold.

12

*Rule 60(b)(1)*

The Sixth Circuit uses a three-factor test to determine whether relief is

warranted under Rule 60(b)(1). *Williams v. Meyer*, 346 F.3d 607, 613 (6th Cir.

2003)(excusable neglect case.)

> In deciding whether relief is warranted, three factors are
> relevant: (1) whether the party seeking relief is culpable; (2)
> whether the party opposing relief will be prejudiced; and (3)
> whether the party seeking relief has a meritorious claim or defense.
> *Id.* at 845. Culpability is "framed" by the specific language of the
> rule; *i.e.*, a party demonstrates a lack of culpability by
> demonstrating "mistake, inadvertence, surprise, or excusable
> neglect."

*Id*. at 612-13.

The debtor argues three bases for his relief albeit at different times. In the

Rule 60 Motion, he requests an "order vacating, setting aside, voiding and

relieving him of the order allowing [the trustee] to sell [the debtor's] interest in

ETIP to Nelson Bowers for the sum of $2500."  *Rule 60 Motion* at 2. He does not

ask for relief from the Tipco stock sale in his prayer for relief. His motion alleges

he has a direct interest in ETIP, and discusses the value of the Exit 20 Property

and the notice to the ETIP equity owners. He does not cite any particular section

of Rule 60 on which he is relying.

At the hearing, his counsel stated that the basis of his request for Rule 60

relief was mistake - in particular, that a mistake had been made in the trustee's

belief that there was no equity available to the debtor or the debtor's estate at the

time the sale occurred.

13

Finally, counsel acknowledged that the debtor had not objected at the time of the sale, but put on proof that, at the time the Stay Relief Motion was filed and the Sale Motion entered, the debtor exhibited behaviors that indicated that he was not capable of fully understanding his business affairs. The debtor's counsel argued that the debtor was raising the issue of his health and his failure to object now that he was better and was aware of the implications that this sale would have for his estate.

### Excusable Neglect

Taking the allegation of excusable neglect first, the court finds that the debtor's medical condition in the fall of 2009 was not an excuse for failing to object to the Sale Motion or to seek reconsideration of the Sale Order.  On August 19, 2010, the debtor filed a Disclosure Statement and a Plan of Reorganization. (Doc. no. 484 and no. 483, respectively.) The Disclosure Statement contained an exhibit from Dr. Karen Gilson dated August 18, 2009, indicating that the debtor was "cleared to resume business as usual," and that he was "(a) alert and oriented; (b)[had] an appropriate affect and demeanor; (c)[had] good insight and judgment and (d) his recent and remote memory are intact." (*Disclosure Statement*, Doc. no. 484, *Gilson Affidavit*, at 2, paragraphs 4 and 5.) This representation of his mental abilities was made only a month after the stay was lifted, and a month before the Sale Motion was filed at the end of September.

The record is clear that the debtor and both his former and current counsel were served with the Stay Motion and later with the Sale Motion. He was provided an opportunity to object. The docket entries also reflect that the debtor was active

14

in the case at this time. To the extent that the debtor's health had impaired his ability to handle his business affairs in the early months of the case, it appears that by August of 2009, he was representing to the court that he was no longer operating under those disabilities. For these reasons, the court does not find that there was excusable neglect on the part of the debtor which would warrant Rule 60 relief.

<em>Mistake</em>

The second and third bases for relief involve mistake. At the hearing, the debtor argued that the trustee made a mistake thinking that there was no equity for the estate from the Exit 20 Property. In the Rule 60 Motion the debtor argues that the sale of the ETIP membership interest should be vacated, and presumably it was the sale of that interest that was the mistake.  The court will address both the allegation of mistake as to value and the mistake about whether the ETIP member interest could be or was sold.

a)  *Value of the Tipco Stock*

The debtor contends that there is significant value that should come to his estate  from a sale of the Exit 20 Property.  That value would flow from a sale of the real property to ETIP which would distribute the proceeds to its members. Tipco, being one of the ETIP members, would receive those proceeds and in turn distribute the proceeds to its stockholders, one of whom was the estate. The debtor's $1.5 to 2 million estimate of the flow of these sale proceeds does not address risk of whether there would be agreement at each corporate level to distribute 100% of the proceeds or whether Citizens would assert its security

15

interest to the proceeds under its Collateral Assignment or pursue the debtor's

joint and several obligations under his guaranty of ETIP's debt.  On the latter point,

the debtor contends that Citizens' should not pursue its claims against his portion

of the proceeds because the debtor's contribution claims against Mr. Bowers would

somehow offset Citizen's ability to attach the proceeds coming to his estate. His

argument seemed to be that *if* the trustee understood all of these contentions, the

trustee, and now the court, would surely see what a mistake it was to accept $2500

for this equity interest or interests.

The court finds that the trustee was aware of all of these issues and still

agreed to the terms of the Sale Order. The trustee originally opposed the Stay

Relief Motion and made the same claims that the debtor now makes in the Rule 60

Motion - that the Exit 20 Property should have significant value that could be

realized by the estate and that there are claims against Mr. Bowers that are being

investigated that may impact the estate's recovery from a sale of the Exit 20

Property.  The trustee hired counsel and a real estate consultant to evaluate the

Exit 20 Property and the claims against it. After several months and no offers,  the

trustee signed an agreed order lifting the stay; and two months after that, he

consented to a sale for $2500 of the debtor's equity interest in the stock that would

have arguably been the only basis on which the estate would share in any

recovery from a sale of the Exit 20 Property.

The court acknowledges that if the Exit 20 Property sells for $4,000,000 as

the debtor believes, and the shareholders of Tipco ultimately receive  $2,000,000

16

through corporate distributions without any collections by Citizens, a sale for $2,500 may have been a poor decision for the estate, but it is not a "mistake" on which the court can rely to vacate the order authorizing the sale of the Tipco stock. *In re Ridill*, 1 B.R. 216, 218 (D.C.Cal 1979) ("However, a mistake in judgment is not a proper ground for relief when it subsequently develops that the choice was unfortunate.")

This order was also an agreed order between the buyer, the estate and the bank. The standard for relief from an agreed order or settlement is even more stringent. *Brown v. County of Genesee*, 872 F.2d 169 (6th Cir. 1989)(only fraud or mistake justifies reopening a valid settlement). "One who attacks a settlement must bear the burden of showing that the contract he had made is tainted with invalidity, either by fraud practiced upon him or by a ***mutual mistake*** under which *both parties acted.*" *Callen v. Pennsylvania R.R. Co.*, 332 U.S. 625, 630, 68 S.Ct. 296, 298, 92 L.Ed. 242 (1948)(emphasis added)*;Asberry v. United States Postal Serv.*, 692 F.2d 1378, 1380 (Fed.Cir.1982) (same). *Brown* at 174-175. (Movant asserted she should have gotten higher pay grade but was mistaken. No relief from judgment. No mutual mistake, no mistake due to fraud). The trustee's Reply does not cite any fraud or mutual mistake. He appears to have understood all the arguments and simply disagreed with the debtor's assessment of the estate's potential recovery.

At the Rule 60 hearing, debtor's counsel argued that the controlling case was *LPP Mortgage, Ltd. v. Brinley*, 547 F. 3d 643 (6th Cir.2008). That case involved

17

the application of Rule 60(b) to a situation in which a trustee had abandoned the

estate's interest in real property believing that there was no equity for the estate,

based upon his understanding of lien avoidance law at the time of the

abandonment. After the abandonment, there was a change in the law that would

have allowed for the avoidance of the liens and generated equity for the estate.

The Sixth Circuit found that any neglect on the part of the trustee was "excusable"

and that the "Trustee was entitled to relief under Fed. R. Civ.P. 60(b)(5) and (6)

'based on principles of equity, and the windfall to the debtors and the junior

lienholders [if the abandonment were not revoked].'" *Id*. at 650.

  While the Court of Appeals discussed the applicability of excusable neglect

to the case, it relied on subsections (5) and (6) of Rule 60 to grant its relief.

Subsection (5) relates to earlier judgments that have been reversed or vacated or

situations in which the continued application of the judgment would be inequitable

such as the *LPP Mortgage* case in which the law had changed. Subsection (6) is

"any other reason which justifies relief." Fed. R. Civ. P. 60(b)(6).

  Although the *LPP Mortgage* case does deal with a trustee's evaluation of an

estate's interest in real estate, the mistake on which the Sixth Circuit relied to grant

the Rule 60 relief was entirely different. In *LPP Mortgage*, the trustee "mistakenly"

relied on case law that was later overruled. In the case at hand, the debtor is

arguing that the trustee mistakenly relied on his own evaluation of the potential

recovery for the estate from a sale of the Exit 20 Property rather than adopting the

debtor's evaluation of those same prospects for recovery. The court finds the *LPP

Mortgage* case inapplicable to the case at hand.

18

*b) The Sale of the ETIP Interest*

The most troubling basis for relief relates to whether there was a mistake in the sale of the member interest in ETIP and the reference to its sale being "free and clear of liens and interests." There was clearly confusion  demonstrated at the hearing by counsel for all of the parties in their attempts to explain what their clients thought they were buying or selling in the Sale Motion. There was confusion as to names of the entities; who the owners were; whether the owners should have received notice; what was meant by "equity interest;" which interests were collateral for the ETIP Note; whether the sale was really "free and clear" of liens; and, whether the Sale Order was even necessary with respect to member interest in ETIP.  Furthermore, despite the express reference to ETIP in the Sale Motion and Sale Order presented by the trustee, Mr. Bowers, and Citizens, everyone - except the debtor -  argued at the hearing that nothing relating to ETIP had been sold in the transaction.   Counsel for Mr. Bowers argued that his client bought only the stock in Tipco.  Citizens' and the trustee's counsel argued the reference to the ETIP interest was "cautionary" or "just in case" because of the fact that Tipco and ETIP had been administratively dissolved at the time of the proposed sale.

Based on the positions taken by the parties at the hearing related to the ETIP member interest, the court does not find that the parties intended to sell the ETIP member interest at all. Based on the evidence presented at the hearing, the estate had no direct legal interest in a member interest in ETIP.  The debtor owned

19

only stock in Tipco and that stock was not subject to a security interest in favor of
any party.

The reference to the sale of the ETIP member interest  "free and clear of the
lien of Citizens" is even more troublesome. When a trustee sells an asset free and
clear of liens in situations where liens exist, the sale order usually provides that the
creditor's lien attaches to the proceeds. The party buying the asset either  buys the
asset for a low price subject to the lien or pays a higher price to obtain the asset
free and clear of the lien. In the second instance, the estate is responsible for
paying the lien from the sale proceeds. Here, the trustee sold the equity interests
for relatively little specifically because of the existence of Citizens' lien. It seems to
have been a mistake to agree that an asset so discounted would be then
transferred free and clear of that same lien.

No one at the hearing believed that Citizens' security interest in the ETIP
member interest had been removed by the sale.  The trustee's assessment that
Tipco's interest was worthless was based on the continued existence of Citizens'
lien on Tipco's sole asset on which the bank could foreclose. If the ETIP member
interest could have been sold by the estate and the court had had the power to sell
that asset free and clear of Citizens' lien, then the value of the TIPCO stock would
have been significant. Counsel for the trustee admitted as much at the hearing.
Counsel for Citizens stated that, if the Sale Order were vacated, his client would
proceed to foreclose. In response to questions from the court about this issue, the
trustee and counsel for Citizens argued that all that was being transferred was the
debtor's equity remaining in the Tipco stock after the Citizens debt had been paid.

20

Mr. Bowers' counsel did not address the issue since his position was that nothing had changed in ETIP as a result of the transaction.

Unlike the mistake alleged about the value of Exit 20 Property, the court does find that there was a mistake with respect to what the Sale Order says and what the parties were buying and selling and on what terms. Based on the evidence presented at the hearing and the argument of counsel, the order should not have addressed the ETIP member interest at all since the ETIP member interest was not property of the estate and was not what the buyer thought he was buying or what the trustee thought he was selling.

Having found that a mutual mistake exists, the court must address the other two factors. There is little or no prejudice to the parties who opposed the Rule 60 Motion if the ETIP member interest is removed from the Sale Order.  The buyer, Mr. Bowers,  still has the stock that is what his counsel contended at the hearing was all that he was buying.  He remains the 100% owner of Tipco. Removal of ETIP removes any confusion about the continued existence of Citizens' lien and will allow whatever contribution rights existed between ETIP and the other guarantors to remain unaffected. Citizens may foreclose its security interest in ETIP but will be required to provide credit to the estate for that recovery if it chooses to foreclose. Finally, removal of the sale of the ETIP member interest "free and clear" moots the problem of the type of notice utilized for the Sale Motion and the failure of the proponents of the sale to notify the other members of ETIP[5].

---

[5] The court finds that the use of passive notice with respect to the sale of Tipco stock was harmless error. The debtor as a stockholder of Tipco received notice and had an opportunity to object. The

21

Rule 60(b) is an "appropriate vehicle for amending an order to correct any inequities resulting from reliance on mistaken facts." *In re Caldwell*, 353 B.R. 130, 136 (Bankr. E.D. Va. 2005). In circumstances which justify Rule 60 relief, "[t]he court may design the relief by modifying or setting aside the judgment, ordering a new trial or taking other appropriate action upon such terms or conditions as [the court] deems just." Lawrence R. Ahern, III, & Nancy Fraas MacLean, *Bankruptcy Procedure Manual* §9024:3 at 1539-40 (West Practice Series, 2010 Ed.). For the foregoing reasons, the court grants the relief requested to the extent necessary to remove all references to ETIP from the Sale Order. The Sale Order is hereby modified to provide that the trustee is authorized to execute a bill of sale and such other documents as deemed necessary upon receipt of $2500 for the transfer to Nelson Bowers of all of the stock of the debtor and the estate in Tennessee Interstate Properties, Inc. There being no security interest held by Citizens in the stock being sold, the language "free and clear of the liens of Citizens Bank" is also deleted from the Sale Order.

###

---

other stockholder was one of the parties to the proposed sale and so obviously had notice of the sale. Further the use of "free and clear of the liens of Citizens Bank" appears to be "cautionary language" (to use the trustee's attorney's characterization) by the trustee since there is no evidence that Citizens had or even claimed a lien in the Tipco stock.