

**SIGNED this 07 day of March, 2011.**

_____

**Shelley D. Rucker**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## SOUTHERN DIVISION

In re:                                                    Case no. 08-16378

Steve A. McKenzie,                                        Chapter 7

        Debtor.


## MEMORANDUM REGARDING
### (A)  MOTION TO RECONSIDER OR FOR RELIEF FROM THE ORDER
### RELATING TO THE FOURTH FEE APPLICATION,
### (B) OBJECTION TO APPLICATION FOR EMPLOYMENT OF
### F. SCOTT LEROY NUNC PRO TUNC, AND
### (C) RELIEF FROM THE ORDER APPROVING FIFTH FEE APPLICATION


Grant, Konvalinka & Harrison, P.C. ("GKH") filed three contested matters involving the

employment and compensation of the attorney for the trustee in this case.  It filed a Motion to

Reconsider or For Relief from Order (Doc. No. 969) requesting that the court set aside an order

entered on October 27, 2010, approving the Fourth Application for Interim Compensation of

1

Counsel to the Trustee filed on behalf of F. Scott LeRoy for the period April 1, 2010 through

June 14, 2010 (the "Fourth Fee Application").  GKH alleges that (1) Mr. LeRoy filed the Fourth

Fee Application on behalf of a firm that did not exist when the application was filed; and (2) the

court mistakenly entered an order in violation of 11 U.S.C. § 330(a) and compensated a party

who had not been approved by the court to be employed by C. Kenneth Still, the Chapter 11

trustee.  The issue for the court is whether the order entered by the court employing counsel for

the Chapter 11 trustee is sufficient to authorize the compensation of Mr. LeRoy in light of the

changes in his firm affiliations during the relevant period.

　　GKH  filed two additional and related contested matters regarding Mr. LeRoy's

employment and compensation.  These involve his subsequent employment by the Chapter 7

trustee after the conversion of the case from Chapter 11 to Chapter 7 in June of 2010.  First,

GKH objects to the retroactive authorization of Mr. LeRoy's employment as counsel for the

Chapter 7 trustee, C. Kenneth Still.  Second, GKH seeks reconsideration of an order granting

compensation to Mr. LeRoy and the firm of LeRoy & Bickerstaff, PLLC, for its work in the

Chapter 7, which compensation was granted pursuant to the Fifth Fee Application for

Compensation.[1]

　　With respect to the Chapter 7 matters, the primary issues are whether employment in the

Chapter 7 case may be authorized retroactively and whether any mistake exists that would

necessitate the court reconsidering the order granting the Fifth Fee Application.

---

[1] The parties refer to this fee application as the Fifth Fee Application, although it is
actually the first fee application filed in the Chapter 7 proceeding.  For ease of reference, the
court will use the title given to the fee application by the parties.

The court finds that Mr. LeRoy was appointed as "named counsel" for the trustee. Consequently payment to him pursuant to the Fourth Fee Application was appropriately entered for the reasons given below, and GKH's motion is **DENIED**.  With respect to the Chapter 7 employment application, the court finds that retroactive authorization is appropriate under the circumstances of this case.  Having found that retroactive authorization is appropriate back to July 1, 2010, the court finds only a limited basis for reconsideration of the approval of fees requested in the Fifth Fee Application.  Fees should not have been awarded for the period from June 15, 2010 to June 30, 2010.  These fees were incurred prior to the date for which retroactive relief was requested and granted.  Therefore, the objection to the retroactive employment is overruled and the motion to reconsider is **GRANTED IN PART**.  The court will disallow the request for fees incurred from June 15, 2010, through June 30, 2010, and modify the Fifth Fee Application accordingly.

This memorandum constitutes the court's findings of fact and conclusions of law as required by Fed. R. Civ.  P. 52, which is made applicable to bankruptcy court contested matters by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure.  A separate order will enter resolving the motions and objection consistent with this memorandum.

## I.       Background

## A.       Procedural History

This case was originally filed as an involuntary Chapter 7 bankruptcy on November 20, 2008, and assigned case number 08-16378.[2]  The debtor filed a voluntary Chapter 11 bankruptcy

---

[2]The three petitioning creditors were FSG Bank, Community Trust & Banking and First Volunteer Bank of Tennessee.  The petitioning creditors were represented by Richard Klinger, Mr. LeRoy and Douglas Johnson, respectively.

on December 20, 2008, and that case was assigned case number 08-16987.  Upon request of

counsel for the debtor, the two cases were consolidated.  The case has since proceeded with the

earlier filing date of November 20, 2008, as the effective date of the petition.  On January 15,

2009, the Court entered an agreed order converting the involuntary Chapter 7 case no. 08-16378

to a Chapter 11 proceeding and substantively consolidating the proceeding with case no. 08-

16987.  An Official Committee of Unsecured Creditors was appointed by the United States

trustee.

### B.     Employment of Mr. LeRoy by the Committee

The Official Committee of Unsecured Creditors filed an application to employ Mr.

LeRoy and the law firm, Evans LeRoy & Hackett, PLLC ("ELH"), on January 30, 2009.

*Committee Application* (Doc. No. 75).  The Committee Application represented that the

Committee desired to employ Mr. LeRoy specifically and ELH.  Mr. LeRoy and Ms. Allison

Bickerstaff were both listed as attorneys who would be working on the matter along with Mr.

David Evans.  *Id.* at p. 2, ¶ 5.  A verified statement signed by Mr. LeRoy accompanied the

Committee Application as required by Fed. R. Bankr. P. 2014(a).  The court authorized the

employment of ELH on February 12, 2009.  *Order Granting Application to Employ* (Doc. No.

105).

### C.     Employment by Chapter 11 Trustee

On February 11, 2009, one day prior to approval of Mr. LeRoy as Committee counsel,

the United States trustee filed an Emergency Motion for the Appointment of a Chapter 11

Trustee.  *UST Emergency Motion* (Doc. No. 101).  The court conducted a hearing on the

emergency motion on February 19, 2009.  After hearing all the proof, the court entered an order

4

requiring the appointment of a Chapter 11 trustee.  *Order Appointing Chapter 11 Trustee* (Doc.

No. 140).

On the same date, the United States trustee appointed C. Kenneth Still as the Chapter 11

trustee.  Thereafter, on February 20, 2009, the Chapter 11 trustee filed an application to employ

Mr. LeRoy and ELH as special counsel for the Chapter 11 trustee, and Mr. LeRoy again filed a

verified statement which accompanied the employment application.  *Application [sic] Chapter*

*11 Trustee for Employment of Evans LeRoy & Hackett, PLLC as Special Counsel* (Doc. No.

138)(Chapter 11 Employment Application).  Numbered paragraph 3 of the Chapter 11

Employment Application  provides that ". . . the Trustee wishes to employ F. Scott LeRoy

("FSL") and the law firm of  Evans LeRoy & Hackett, PLLC . . . ."  *Id.* at pp. 1-2, ¶ 3.  In the

final paragraph the Chapter 11 trustee asked that his "employment of F. Scott LeRoy and the law

firm of ELH represent the Trustee in this case as counsel at the rates of compensation indicated,

be approved, and that it have such other and further relief as is just."  *Id.* at p. 5.

On February 24, 2009, the court notified Mr. LeRoy that because the application

disclosed conflicts,[3] the order could not be entered *ex parte* pursuant to the court's local rules.  E.

D. Tenn. LBR 9013-1(g)(xiv).  The court authorized the Chapter 11 trustee to file an amended

motion within 10 days.  *Rejected Order Authorizing Employment* (Doc. No. 142).  The following

day, on February 25, 2009, the Chapter 11 Application was amended.  It provided notice under

E.D.Tenn. LBR 9013-1(h).  *Amended Chapter 11 Application* at p. 1 (Doc. No. 143).  The

---

[3] Mr. LeRoy's verified statement disclosed that his firm represented Community Trust &
Banking Co., which was the creditor Mr. LeRoy represented in the involuntary, as well as
Regions Bank and SunTrust Bank, other creditors in the case.  *Chapter 11 Employment*
*Application, Affidavit of F. Scott LeRoy* at p. 2 (Doc. No. 138-1).

5

proposed order attached to the Amended Chapter 11 Employment Application was also amended

from the order attached to the initial Chapter 11 Employment Application to provide for the

employment to be *nunc pro tunc* to February 20, 2009, the date the initial application and

affidavit were filed.

Notice of the Amended Chapter 11 Employment Application was provided to the United

States trustee, the debtor, and the members of the Official Committee of Unsecured Creditors.

No objections were filed to the Amended Chapter 11 Application by the deadline.  The court

entered the amended order granting *nunc pro tunc* relief on April 3, 2009.  *Order Granting*

*Application to Employ Evans LeRoy & Hackett, PLLC nunc pro tunc to February 20, 2009* (Doc.

No. 238) ("Chapter 11 Employment Order").  The court ordered "that the employment by the

trustee of ELH, 920 McCallie Avenue, Chattanooga, Tennessee, (423) 648-7890, as counsel for

the trustee is hereby authorized and approved, nunc pro tunc to February 20, 2009; . . . and it is

further ORDERED AND ADJUDGED that the Application of the Chapter 11 Trustee for

Employment of Evans LeRoy & Hackett, PLLC, as special counsel is hereby granted and said

attorneys may be compensated and reimbursed pursuant to §§ 330 and 331 of the Bankruptcy

Code upon proper application and order, subject to Court approval."  *Id.* at p. 2.

    **D.**    **Conversion**

After over a year in Chapter 11 and upon the motion of the Chapter 11 trustee, the court

converted the case to one under Chapter 7 on June 14, 2010.  *Order Converting Case* (Doc. No.

789).  Thereafter, the notice of the meeting of creditors reflected Douglas R. Johnson as the

Chapter 7 trustee.  Notice of Creditors' Meeting (Doc. No. 790).  He was terminated on June 14,

2010, and Mr. Still was added to the case as the Chapter 7 trustee.  (Docket entry dated

6/14/2010.  No number.)

### E.    Fourth Fee Application

On September 22, 2010, Mr. LeRoy filed the Fourth Application for Interim

Compensation of F. Scott LeRoy, Counsel for C. Kenneth Still, Chapter 11 trustee.  *Fourth Fee*

*Application* (Doc. No. 850).  It requested $29,760 for fees and proposed a holdback of 10%.  It

covered the period from April 1, 2010 to June 14, 2010.  Parties were given 21 days to object.

The Fourth Fee Application was signed "LeRoy & Bickerstaff PLLC by F. Scott  LeRoy."

Paragraph 1 states that "[t]he Trustee filed an application to employ Mr. LeRoy as attorney to

represent the Trustee."  *Fourth Fee Application* at ¶ 1.  Paragraph 2 refers to "F. Scott LeRoy's

application." *Id.* at ¶ 2.  The remaining paragraphs refer to "Applicant," which is not a defined

term in the pleading.

Notice of the Fourth Fee Application was given electronically to Harry Cash who had

appeared on behalf of GKH in addition to other creditors who had appeared in the case and by

mail to ten other creditors.  No objection to the application was filed.  The court entered the

order submitted with the Fourth Fee Application on October 26, 2010, after the deadline for

objections had passed.  *Order Granting Application for Compensation*  (Doc. No.  913).

Paragraph 1 of the Order stated that "F. Scott LeRoy **of L & B** seeks compensation . . . ." *Fourth*

*Fee Order* at ¶ 1 (emphasis added).   The decretive paragraph approved "the request for

compensation by F. Scott LeRoy, LeRoy & Bickerstaff, PLLC."  *Id.* at p. 2.

### F.    Mr. LeRoy's Firm Affiliations

Based on his testimony at the hearing, Mr. LeRoy withdrew from ELH in mid May of

7

2010, approximately a month before his work for the Chapter 11 trustee was completed.   He

practiced as a solo practitioner from mid-May until June 22, 2010.  At that time he signed

articles of organization for a new entity, LeRoy & Bickerstaff, PLLC ("L & B"), and became a

member of that professional limited liability corporation.  The new firm was composed of two

members, Mr. LeRoy and Ms. Bickerstaff, who was previously an employee of ELH.  Certified

records from the Office of the Secretary of State of Tennessee reflect that on July 28, 2010, L &

B was "formed or qualified to do business in the State of Tennessee on 7/28/2010."  *Hearing

Exhibit 2* at p. 1.  Mr. LeRoy could not provide an explanation of why there was a delay of

almost a month between the signing of the articles of organization and the acknowledgment of

the entity's existence by the Tennessee Secretary of State.  On January 3, 2011, L & B adopted

an amendment to change its name to LeRoy Hurst & Bickerstaff, PLLC.  *Id.* at 3.  None of the

work involved in the current contested matters was performed after the date of the name change.

ELH continued in existence after Mr. LeRoy's withdrawal.  It changed its name first to

Evans & Hackett, PLLC on May 19, 2010, then to Evans Harrison & Hackett, PLLC ("EHH"),

on June 3, 2010, and it changed its address from 920 McCallie Avenue to One Central Plaza.

*Hearing Exhibit 1.*

Mr. LeRoy testified that in his withdrawal agreement, he had agreed with his former

associates that the fees from the McKenzie case would be his and that EHH would not assert any

claim against the estate.  EHH did not appear at the hearing, nor has it appeared in the case to

assert a claim for fees since Mr LeRoy's withdrawal from the firm in May of 2010.

### G.     Employment as Chapter 7 Attorney

On July 1, 2010, for the third time in the case, Mr. LeRoy filed an application for

employment – this time as attorney for the Chapter 7 trustee.  *Chapter 7 Employment Application* (Doc. No. 804).   The first version of the Chapter 7 employment application contained several typographical errors.  It named Mr. LeRoy's firm as Evans LeRoy & Bickerstaff, PLLC, ("ELB") instead of L & B; it named L & B rather than ELH as the firm that had been employed to represent the Creditor's Committee; and it provided that objections be sent to ELH, although the address given was Mr. LeRoy's.  Later that same day an amended application was filed which changed the name of the firm from ELB to L & B. *Amended Chapter 7 Employment Application* (Doc. No. 805).  The body of the Amended Chapter 7 Employment Application stated that a conversion had occurred and the Chapter 7 trustee had used Mr. LeRoy and ELH in the Chapter 11 and had selected Mr. Leroy and L & B to represent the trustee in the converted case.  *Id.* at p. 2.

The Amended Chapter 7 Application provided notice and an opportunity for hearing pursuant to E.D.Tenn. LBR 9013-1(h) and provided twenty-one (21) days to object.  The Amended Application did not correct the name and address for serving copies of objections, indicating that they were to be served  on "Mr. LeRoy at Evans, LeRoy and Hackett, PLLC [sic] at 920 McCallie Ave."  Notice was sent to the United States trustee, the debtor, and the former members of the Official Committee of Unsecured Creditors.  In addition, parties who were on the court's electronic notice list also received notice.  Mr. Harry Cash on behalf of GKH was one of those parties.  No party filed an objection to the Amended Chapter 7 Employment Application on or before July 22, 2010.

On August 3, 2010, the court rejected the order, and noted that no verified statement ("Chapter 7 Affidavit" ) had been filed with the Amended Chapter 7 Employment

9

Application. Rejected Order re: Chapter 7 Employment Application  (Doc. No. 815).  No

Chapter 7 Affidavit was filed until several months later.  When filed, the only difference

between the Chapter 7 Affidavit and the prior two verified statements by Mr. LeRoy was the

deletion of Regions Bank and SunTrust Bank.[4]  *Chapter 7 Affidavit* (Doc. No. 958, filed on

December 21, 2010).  On the same day that he filed the Chapter 7 Affidavit, Mr. LeRoy

tendered an order granting the Amended Chapter 7 Employment Application which added that

the employment would be authorized *nunc pro tunc* to the filing date of the Amended Chapter

7 Employment Application.  The original proposed order attached to the Chapter 7

Employment Application had not contained the *nunc pro tunc* language.  *Chapter 7*

*Employment Application*, (Doc. No.  805), Proposed Order, Exhibit 1.

     **H.**     **Efforts For the Estate and Prior Applications**

     Since his first appointment, Mr. Still has investigated the various assets and holdings

of the debtor, seeking to administer the property of the estate and recover assets.  The debtor

was a wealthy individual with many complicated business ventures.  Mr. LeRoy has been the

trustee's attorney for the past 24 months.  He and Mr. Richard Banks, counsel for the debtor

and additional special counsel for the Chapter 7 trustee, have been recognized by all of the

parties as the two individuals who have represented Mr. Still in the case.  Their efforts have

generated a benefit to the estate, and the Chapter 7 trustee currently has just over $1,000,000

--------

     [4]  Presumably, these clients were not included in the Chapter 7 Affidavit because they (a)
were clients of either Mr. Evans or Mr. Hackett who were not a members of  L & B, and (b) Mr.
LeRoy had no connections with these clients.  No issue has been raised in the case at this time
that Mr. LeRoy had a connection to either of these two banks.  He acknowledged that he had
represented Community Trust & Banking Co. and disclosed that representation in his verified
statement.  *Chapter 7 Affidavit* at p. 2.  The contingency for that conflict was addressed in the
Chapter 7 Employment Application.  *Chapter 7 Employment Application* at p. 4, ¶9

on hand.

Since Mr. LeRoy's initial employment as counsel for the Chapter 11 trustee, he has applied for and received the following attorney fees in the Chapter 11: (a) 1st App. Period of 2/20/09 – 5/20/09:  $41,088.75 granted 7/15/09 w/10% holdback (Doc. No. 424); (b)  2nd App. Period of 6/1/09 – 9/30/09: $48,082.50 granted 11/24/09 w/10% holdback (Doc. No. 565); (c) 3rd App. Period of 10/1/09 – 3/31/10: $34,448.75 granted 5/20/10 w/10% holdback (Doc. No. 713); and (d) 4th App. Period of 4/1/10 – 6/14/10: $29,760.00 granted 10/27/10 w/10% holdback (Doc. No. 913).  The holdbacks for the Chapter 11 period total approximately $15,300.  The first three orders granted fees to "F. Scott LeRoy, Evans LeRoy & Hackett."  The fourth granted fees to "F. Scott LeRoy, LeRoy & Bickerstaff."

## I.      Chapter 7 Fee Application ("Fifth Fee Application")

On November 24, 2010, Mr. LeRoy also applied for fees and expenses of $25,224.00 incurred in representing the Chapter 7 trustee.  *Fifth Fee Application*, Doc. No. 935.  It covered the period from 6/15/10 – 9/30/10.  The pleading requested an order awarding fees for services rendered by Mr. LeRoy, specifically.  *Fifth Fee Application* at 1.  It states that the Chapter 7 trustee "filed an application to employ F. Scott LeRoy as attorney to represent the Trustee on February 20, 2009."  *Id.* at 1.  Beginning with the second paragraph, the Fifth Fee Application refers to "the applicant" which is not a defined term in the document. The pleading is signed "LeRoy & Bickerstaff, PLLC by F. Scott LeRoy." *Id*. at 3.  No designation is made in the signature line as to whether the firm is the Applicant or counsel for Mr. LeRoy.

Mr. LeRoy provided notice of the Fifth Fee Application to parties in interest that they had twenty-one (21) days to object.  The Fifth Fee Application contained a certificate of service that

included GKH and counsel for Mrs. Rebecca McKenzie.  No objection was filed to the Fifth Fee

Application on or before the deadline of December 15, 2010.  On December 23, 2010, the court

authorized the payment of the fees requested in the Fifth Fee Application to L & B subject to a

10% holdback.  *Order Approving Compensation* (Doc. No. 963).

On December 21, 2010, following the filing of the verified statement and amended

Chapter 11 order on the Employment Application, GKH filed an objection to the Amended

Chapter 11 Employment Application.  *Objection to Employment of F. Scott LeRoy* (Doc. No.

961).  As a result of that objection, the court set the Amended Chapter 11 Employment

Application and GKH's objection for hearing on January 13, 2011.

On January 5, 2011, GKH filed a Motion to Alter or Amend or for Relief from Order.

(Doc. No. 967) ("Fifth Fee Application Motion").  GKH sought to have the order granting the

Fifth Fee Application set aside on the basis that the fee should not have been granted to a

professional whose employment had not been approved by the court.[5]

On January 6, 2011, GKH filed a Motion to Reconsider or For Relief from Order seeking

to have the order granting the Fourth Fee Application set aside on the basis that it also provided

*nunc pro tunc* relief.  (Doc. No. 969) ("Fourth Fee Application Motion").  These motions were

set for hearing January 27, 2011, and continued to February 15, 2011.

On January 26, 2011, Mrs. Rebecca McKenzie filed a document which she entitled

Objection by Rebecca McKenzie to Scott Leroy's [sic] fees.  (Doc. No. 991).  The Chapter 7

---

[5] The court notes that the record reflects that GKH tendered an order separately from its motion but incorrectly linked its order to a different motion located at docket entry no. 963 in the record.  As such, on January 7, 2011, the clerk's office had to re-link the order to the motion to which it applied, which was docket entry no. 967.  The docket text explains that the re-linking procedure was "to correct [the] relationship from 963 to 967." (Doc. No. 970).

12

trustee's response to Mrs. McKenzie's objection asserted that she lacked standing to object to the fee application because of a previous settlement agreement between Mrs. McKenzie and the trustee.

These matters came on for hearing on February 15, 2011.  Counsel for C. Kenneth Still, the United States trustee, the debtor, Mrs. McKenzie, and GKH appeared.  Mr. LeRoy and Mr. Still testified.  At the hearing on February 15, 2011, Mrs. McKenzie announced that she had concerns about events in the case but no longer believed that those concerns were related to Mr. LeRoy's fees.  The court will treat her objection as withdrawn and therefore there is no need to address the standing issue.

GKH has standing to bring these motions and objection because it is a creditor in this case holding a claim for $750,000 of which $385,000 is for unpaid legal services provided to the debtor.  Claims Docket, Claim no. 86-2, filed February 9, 2011.  GKH has also made a claim against Mr. Still and Mr. LeRoy, among others for malicious prosecution based on litigation previously filed by Mr. Still against the firm.  *See, Still v. Nelson Bowers II et al.,* Adv. No. 10-1407; *Grant Konvalinka & Harrison v. Banks et al.*, Adv. No. 11-1016.

## II.    Analysis

The court will consider the relief requested in the chronological order in which Mr. LeRoy provided the services to the estate: first, the Fourth Fee Application Motion; second, the Objection to the Employment of Mr LeRoy; and finally, the Fifth Fee Application Motion. This court has jurisdiction under 28 U.S.C. § 1334 and 157(b)(2)(A).

### A.    Fourth Fee Application Motion

GKH asks the court to reconsider the approval of the Fourth Fee Application.  The

13

motion states that "the approval of the fees requested in the Fourth Fee Application for

Compensation to the Trustee's counsel was improperly entered and should be set aside pursuant

to Fed. R. Civ. P. 60(b) made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9024."

Specifically, GKH contends that the Fourth Fee Application Order "was entered by mistake

because there has never been an Order approving the retention of F. Scott LeRoy or LeRoy &

Bickerstaff, PLLC as attorneys for the Trustee." *Fourth Fee Application Motion* at 2-3 (Doc.

No. 969).

      Rule 60 of the Federal Rules of Civil Procedure provides that:

> On motion and just terms, the court may relieve a party or its legal
> representative from a final judgment, order, or proceeding for the following
> reasons:
>
>     (1) mistake, inadvertence, surprise, or excusable neglect.

Fed. R. Civ. P. 60(b)(1).

      A Rule 60 motion must be made within a reasonable time but not more than one year

after the entry of the order in question. Fed. R. Civ. P. 60(c)(1). Since the Fourth Fee

Application Order was entered on October 26, 2010, GKH's motion is timely. Since it is a

motion to set aside an order which has been entered, GKH's case for reopening needs to be

persuasive. *Steinhoff v. Harris*, 698 F.2d 270, 273 (6th Cir.1983). " 'A motion under Rule 60(b)

cannot be used to avoid the consequences of a party's decision to settle the litigation or to forego

an appeal from an adverse ruling.' " *Id.* at 275 (quoting *Sampson v. Radio Corp. of America*, 434

F.2d, 315, 317 (2d Cir. 1970)).

      The decision to grant a Rule 60(b) motion is within the discretion of the court. *Whitaker*

*v. Associated Credit Services, Inc*., 946 F.2d 1222, 1224 (6th Cir. 1991). "Furthermore, in

exercising its discretion under Rule 60(b), this court may consider applicable principles of equity."  *Id.*  The Sixth Circuit has used a three-factor test to determine whether relief is warranted under Rule 60(b)(1).  *Williams v. Meyer*, 346 F.3d 607, 613 (6th Cir. 2003)(excusable neglect case):

> In deciding whether relief is warranted, three factors are relevant: (1) whether the party seeking relief is culpable; (2) whether the party opposing relief will be prejudiced; and (3) whether the party seeking relief has a meritorious claim or defense.  Culpability is "framed" by the specific language of the rule; *i.e.*, a party demonstrates a lack of culpability by demonstrating "mistake, inadvertence, surprise, or excusable neglect."

*Id.* at 613 (citing *United Coin Meter v. Seaboard Coastline R.R.*, 705 F.2d 839, 844-45 (6th Cir. 1983)) and (quoting *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992)).

In applying these factors to the case at hand, the court will look first at whether there is any "culpability."  The "culpability" cited by GKH in this case is the court's.  GKH argued at the hearing that the court made a mistake, and awarded fees to someone or something whose employment had not been approved by the court.  Such an award would be contrary to the statutory requirements of the Bankruptcy Code.

The Bankruptcy Code authorizes payment to those professionals who have been approved by the court.  11 U.S.C. § 330(a).  GKH contends that: (a) only the firm of ELH was hired,  (b) Mr. LeRoy was not individually retained and can not be compensated as an individual, (c) the reference to L & B in the Fourth Fee Application Order means that the court mistakenly awarded fees to a firm that was not properly employed, and (d) neither Mr. LeRoy nor L & B have made the necessary application or showing to obtain retroactive approval.  GKH bases the first two contentions on the fact that the Chapter 11 Employment Order only mentions ELH by

15

name.  The last  two contentions are  based on the facts  that (a) the Fourth Fee Application is
signed "LeRoy & Bickerstaff  PLLC," (b) the Fourth Fee Application Order authorizes payment
to "F. Scott LeRoy, LeRoy & Bickerstaff"; and (c) that L & B never filed an application to work
in the Chapter 11.  In fact, GKH argues that L & B did not even exist during the Chapter 11.[6]

Mr. LeRoy counters those contentions by arguing that he was individually employed  and
that the fees were awarded *to him* and the name of the firm should not be controlling.  L & B was
listed because it was the name of  the firm of which he was a member at the time he filed the
Fourth Fee Application.

The court must determine who was employed and whom did the Fourth Fee Order
authorize to be paid.  The Fourth Fee Order did not authorize ELH to be paid.  That firm's name
does not appear in the Fourth Fee Application or Fourth Fee Order.  Therefore, the court must
determine whether Mr. LeRoy was hired individually.  If he was not, then any payment to him
was not approved and was a mistake.

The  Federal Rules of Bankruptcy Procedure contemplate the employment of both firms
and specific attorneys, *i.e.* "a named attorney."  Fed. R. Bankr. P. 2014(b).  Rule 2014 allows for
the employment of the other members of that named attorney's firm without additional or
amended applications for employment.  Fed. R. Bankr. P. 2014 (b).  Rule 2014 ". . . supports the
unremarkable proposition that when the bankruptcy court approves [an application] to employ
partner X of a law firm, all the attorneys at the firm may work on the case 'without further order
of the court.'  A rule requiring [the applicant] to reapply to the bankruptcy court any time a

---

[6] GKH submitted a certified copy of records from the Secretary of State's office that L &
B's articles of incorporation were not filed until July 28, 2010, approximately six weeks after the
Chapter 11 ended on June 14, 2010.

different attorney performs billable work would be unworkable." *Stanley v. Keravision, Inc. (In re Keravision, Inc.)*, 273 B.R. 614, 617 (N.D. Cal. 2002)).

This case presents the court with the opposite fact pattern.  The Chapter 11 Employment Order unquestionably approved the employment of a firm by name, but it is the individual attorney, a former member of that firm, who is seeking to be paid.  Rule 2014 also provides that "[i]f, under the Code and this rule, . . . a named attorney. . . is employed, any partner, member or regular associate of the . . . individual may act as attorney . . . so employed, without further order of the court." Fed. R. Bankr. P. 2014(b).

Based on the pleadings filed in the case, the court finds that the Fourth Fee Order incorporated Mr. LeRoy's individual employment by reference by providing that the application was approved and that "said attorneys may be compensated and reimbursed." *Chapter 11 Employment Order* at p. 2.  Despite the application's title, the Chapter 11 Employment Application sought to employ Mr. LeRoy **and** the firm of ELH.  *Chapter 11 Employment Application* at p. 2 (emphasis added).  The application repeats the phrase of  "Mr. LeRoy and ELH" in eight different places, including the prayer for relief.

After the entry of the Chapter 11 Employment Order, each order authorizing compensation in the Chapter 11 authorized the payment to Mr. LeRoy with a reference to the firm of which he was a member, not to the firm.  Having determined that Mr. LeRoy was employed individually in the case, the court must address who was authorized to be paid in the Fourth Fee Application Order.

The Fourth Fee Application states that it is "Mr. LeRoy's application" and that "he is the attorney for the estate." *Fourth Fee Application* at p. 2.  In retrospect, it would have been clearer

17

for Mr. LeRoy  to have defined the term applicant to avoid any confusion and to have explained

why ELH, or its successor, EHH, was not mentioned in the Fourth Fee Application.[7]  However,

GKH does not object to the absence of ELH but rather the inclusion of  L & B in the Fourth Fee

Application and Fourth Fee Order.

     The mention of L & B in the application and order require the court to address whether

the party being paid is L & B which was not an authorized firm.  In reviewing the applicable

pleadings the court notes that despite the appearance of the name L & B, the application was for

Mr. LeRoy individually.  The order is drafted with the same distinction and does not award fees

to a firm.  To the extent that Mr. LeRoy had an arrangement to share those fees with either

members of his former firm or his new firm, he was not required to disclose the specifics of

those arrangements.  Fed. R. Bankr. P. 2016(a).  Furthermore, to the extent, that he did share

those fees with Ms. Bickerstaff, her involvement had been disclosed in the Chapter 11

Employment Application.

    The court's decision should not be construed as a ruling that changing firms does not

require a new application.  A new application would be required if the new firm had different

members.  *See In re Maller Restaurant Corp.*, 57 B.R.72 (Bankr. E.D.N.Y. 1985) (Principal

attorney for debtor formed a new firm with another individual. Fees were disallowed on the

distinction of work for the debtor and work for the estate when new firm filed for compensation.)

Also, new disclosures under Fed. R. Bankr. P. 2014 are required if new parties are added to a

new firm or even new clients accepted who have connections with the case that have not been

---

[7] The court recognizes the complications Mr. LeRoy faced in describing his status for the month of June 2010.  He could not have filed the application using the name of ELH since he was no longer a member, and ELH no longer had a contractual right to seek payment because of the withdrawal agreement with Mr. LeRoy.

disclosed.  But that is not this case.  The Fourth Fee Motion raises no issues related to the

eligibility of either Mr. LeRoy or Ms. Bickerstaff to have been employed.

    For these reasons, the court does not find that fees were awarded to L & B, but rather to

Mr. LeRoy, individually.  The use of the name of his new firm in the context in which it was

used does not change the party who was being paid.  The fact that the new firm is composed of

parties previously disclosed to the court alleviates any policy concern which the court might

have about the existence of the new affiliation.  Having found that fees were only awarded to the

individual and that he was employed from the beginning, the court does not need to address

whether  retroactive relief has been properly requested or warranted for Mr. LeRoy or L & B.

    With respect to the second factor in the Rule 60 analysis, the court does not find that the

failure to vacate this order will be prejudicial to GKH.  It has alleged no prejudice.  The Fourth

Fee Motion only raises the question of a mistake by the court.

    The court does not find that refusing to vacate its order will be detrimental to the policies

of the Bankruptcy Code regarding procedures for the employment of professionals.  This is not a

situation where the requirements of the Bankruptcy Code were ignored.  Mr. LeRoy's

employment comes as a surprise to no one involved in these matters.  The Chapter 11

Employment Application was filed timely with a verified statement.  No issues related to

eligibility under 11 U.S.C. § 327(c) have been raised.  From the proof presented at the hearing,

the creditors, including GKH, were aware of Mr. LeRoy's involvement and of his status as

counsel for the trustee.  GKH and other creditors did not object to his employment or any of the

four fee applications filed in the Chapter 11 until now.  There is no risk that the estate will be

asked to pay fees to anyone else for this work.  The only other party named in the Fourth Fee

Order has waived any rights it has to payment in the withdrawal agreement with Mr. LeRoy.

With respect to the third factor, a "meritorious defense",  neither GKH nor any other party in interest filed a timely objection to the Fourth Fee Application.  The one objection that GKH has raised -- that payment should not have been made to Mr. LeRoy and/or L & B -- has been fully addressed and found not to be sufficiently "persuasive" to cause the court to set aside the Fourth Fee Order.

For the forgoing reasons, the Fourth Fee Application Motion is DENIED.

### B.    Objection to Nunc Pro Tunc Employment

The second matter for the court is whether the court should authorize the employment of Mr. LeRoy and L & B  in the Chapter 7 retroactively.  The court has not entered an order in the case authorizing this employment, but it has entered an order approving the fee application.  If the employment is not authorized retroactively, the fee application will have to be vacated.  To the extent that the period in which the fees were incurred does not correspond to the period of employment, the Fifth Fee Application Order will have to be modified.

The purpose of 11 U.S.C. § 327 of the Bankruptcy Code is to provide notice to all creditors and parties in interest that the trustee is hiring a professional and is proposing to pay the professional from estate funds.  Section 327 also gives the Court the ability to perform a screening process, verify the necessity of employment, ensure the neutrality of the person employed, and control and limit estate expenses, thereby promoting efficient administration of the bankruptcy estate.  *See generally* 2 LAWRENCE P. KING, COLLIER ON BANKRUPTCY, § 327.03 (16th ed. 2009).   "Section 327 requires 'prior court authorization of a professional's employment . . . to prevent volunteerism and to assist the court in controlling administrative expenses.' "

20

*Farinash v. Vergos (In re Aultman Enters.)*, 264 B.R. 485, 490 (E.D. Tenn. 2001) (quoting *In re McDaniels*, 86 B.R. 128, 129 (Bankr. S.D. Ohio 1988)).

The language of 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014(a) raises the question whether the bankruptcy courts have discretion to grant retroactive relief if work is performed prior to approval.  The District Court for the Eastern District of Tennessee found that such discretion exists.  It relied on 28 U.S.C. Section 157(b)(1) and 11 U.S.C. Section 105.  *In re Aultman Enters.*, 264 B.R. at 491.  Six Circuit Courts have held that the bankruptcy court has this discretion.  *In re Jarvis*, 53 F.3d 416 (1st Cir. 1995); *In re Singson*, 41 F. 3d 316, 319-20 (7th Cir.1994); *Land v. First Nat'l Bank of Alamosa (In re Land)*, 943 F.2d 1265, 1267-68 (10th Cir. 1991);  *F/S Airlease II, Inc. v. Simon (In re F/S Airlease II, Inc.)*, 844 F.2d 99, 105 (3rd Cir.), *cert. denied*, 488 U.S. 852 (1988);  *Okamoto v. THC Financial Corp. (In re THC Financial Corp.)*, 837 F.2d 389, 392 (9th Cir. 1988); *Matter of Arkansas Co., Inc.,* 798 F. 2d 645, 648-50 (3rd Cir.1986); *Matter of Triangle Chemicals, Inc*. 697 F.2d 1280, 1284 (5th Cir. 1983).  The more difficult question concerns how and when that discretion should be exercised.

There has not been a Sixth Circuit opinion on the appropriate standard for the application of retroactive relief.  *Hunter Savings Assoc. v. Baggott Law Offices Co., L.P.A. (In re Georgetown of Kettering, Ltd.)*, 750 F.2d 536, 539 (6th Cir. 1984) (*nunc pro tunc* issue was raised but not addressed because the professional was disqualified because he had an actual conflict). *See also Mitan v. Duval (In re Mitan)*, 573 F.3d 237, 244-245 (6th Cir. 2009) (discussing bankruptcy court's ability to grant nunc pro tunc relief generally and the considerations for doing so).

The United States District Court for the Eastern District of Tennessee has reviewed the

21

issue of *nunc pro tunc* orders in bankruptcy.  The District Court adopted the factors set forth by

the Bankruptcy Court for the Middle District of Tennessee in *In re Twinton Properties*

*Partnership*, 27 B.R. 817 (Bankr. M.D. Tenn. 1983) and provided a comprehensive opinion on

this issue.   *See, In re Aultman Enters.*, 264 B.R. at 489-90, 492.  Although the District Court

affirmed the bankruptcy court and found that trustee's "simple neglect" in failing to file any

application did not rise to the level of an "extraordinary circumstance," it did hold that a

bankruptcy court may approve a *nunc pro tunc* application under certain circumstances (citing *In*

*re Georgetown of Kettering, Ltd.*, 750 F.2d 536) provided the applicant meets the other

requirement of Section 327.  *In re Aultman Enters.*, 264 B.R. at 492.  The Court noted that while

the situations in which *nunc pro tunc* employment is granted should be limited, "courts should

also, however, be able to identify those cases in which blind adherence to procedural formalities

would work an injustice."  *Id*. at 492.

The factors set forth in *In re Twinton Properties Partnership* and adopted by Judge

Collier in *In re Aultman Enters.* are as follows:

> 1. The debtor, trustee or committee expressly contracted with the professional
> person to perform services which were thereafter rendered;
> 2. The party for whom the work is performed approves the entry of the nunc pro
> tunc order;
> 3. The applicant has provided notice of the application to creditors and parties in
> interest and has provided an opportunity for filing objections;
> 4. No creditor or party in interest offers reasonable objection to the entry of the
> nunc pro tunc order;
> 5. The professional satisfied all the criteria for employment pursuant to 11 U.S.C.
> § 327 and Rule 2[014] of the Federal Rules of Bankruptcy Procedure at or before
> the time services were actually commenced and remained qualified during the
> period for which services were provided;
> 6. The work was performed properly, efficiently, and to a high standard of
> quality;
> 7. No actual or potential prejudice will inure to the estate or other parties in
> interest;

8. The applicant's failure to seek pre-employment approval is satisfactorily explained; and

9. The applicant exhibits no pattern of inattention or negligence in soliciting judicial approval for the employment of professionals.

264 B.R. at 492.

In applying the *In re Twinton Properties* factors in this case, Mr. Still testified that he had employed Mr. LeRoy to perform the services which were rendered. He did not object to the entry of a *nunc pro tunc* order. The court's docket reflects that notice of the employment of Mr. LeRoy and L & B was provided to creditors, including GKH. There was an opportunity for creditors and parties in interest to file an objection to the employment in July 2010 on any basis -- including the omission of a verified statement or the fact that the state of Tennessee had not recognized L & B as a legal entity on July 1, 2010. None did. It was the court that noted the deficiency. The only objection of GKH, while timely with respect to the *nunc pro tunc* amendment to the tendered order, is not "reasonable" given that it received notice of the employment application, failed to raise any objection in July, and now raises an objection only to the retroactive relief while reserving its rights to object to the reasonableness of the fee.

Mr. LeRoy and L & B have satisfied the employment criteria in both the statute and the rule and have remained eligible to be employed as special counsel at all times during the period of the Fifth Fee Application. Furthermore, based on the lack of objections filed in the case, the testimony of Mr. Still and the statements of Mr. Sonnenburg, Assistant for the Unites States Trustee, the work has been performed to the satisfaction of the Chapter 7 trustee, the United States trustee, and the creditors in the case, except for GKH and initially, Mrs. McKenzie. The estate would suffer no actual or potential prejudice from allowing the fees; and, in fact, there would be an unjust windfall to the estate if the Chapter 7 trustee's counsel is not paid for the

services rendered.  Mr. LeRoy sought pre-employment approval as required by the Bankruptcy

Code.  His only failure was in not filing in July 2010 a verified statement which contained

disclosures he had already made two other times in the case.

The reason for that failure is the most difficult factor for Mr. LeRoy to meet. One of the

*Twinton Properties* factors is a satisfactory explanation of the failure to comply.  GKH contends

that this is the primary factor the court should consider and relies on the standard expressed in

the First Circuit decision in *In re Jarvis* for the proposition that "*nunc pro tunc* authorization

may only be approved upon a finding of extraordinary circumstances. "  In *In re Jarvis*, the court

found that simple failure to file an application was not such an extraordinary circumstance.  *In re

Jarvis*, 53 F.3d at 421.  In *In re Aultman Enters.* the court also found that mere oversight would

not justify retroactive relief.  The most liberal standard is the one adopted by the Seventh Circuit

which held that Rule 9006 permits granting an extension of time and that excused neglect is all

that is required.  *In re Singson*, 41 F.3d 316.  The *In re Singson* standard required that the

professional's effort be commensurate with the cost of compliance.  *Id*. at 319.

In this case, Mr. LeRoy testified that he was leaving ELH at the time the court noted the

omission of the verified statement with his application.  The logistics of his withdrawal from his

previous law firm presented a challenge to his practice.  He testified that he did not realize that

his employment application had not been granted until he was preparing his Fifth Fee

Application.  If this explanation were the only circumstance which the court had before it, the

court would be hard pressed to find "extraordinary circumstances."  However, this case is not a

situation in which a professional did all of the work and filed an application for the first time

when he was finished, as the realtor did in *In re Jarvis*.  Here, the record contains two other

24

verified statements by Mr. LeRoy on his and ELH's behalf which had been approved without objection by GKH or any other creditor or party in interest.  The Chapter 7 Application was the third application filed in this case, and it was filed within two weeks of the conversion to Chapter 7.  The members of the firm represented in the third application constituted a subset of the group that had been previously approved on two occasions in 2009 and 2010.  The party for whom he was working was the same individual although in a different capacity in the case.  Mr. LeRoy had exhibited no pattern of inattention in filing applications for employment in this case.  When corrections needed to be made they were made within a day or two except for the third verified statement.  That omission occurred at a time when his firm was breaking up. His explanation of the failure is satisfactory. His prior compliance in the case and his ability to meet all of the other *In re Twinton Properties* factors make these circumstances extraordinary.

This case has involved dozens of entities and properties and the docket contains over one thousand entries.  With this level of complication, corrections to filings to change docket numbers and names have been all too common. "Because bankruptcy is a mass-production operation, errors and oversights are inevitable." *In re Singson*, 41 F.3d at 319.  While acknowledging that mistakes do occur and authorizing the retroactive employment, the court does not condone Mr. LeRoy's failure to respond promptly to the deficiency notice sent by the court.  More care should also have been taken to insure the clarity of the party being employed and to reflect the transitions in his professional affiliations.  Nevertheless, the court cannot see how the estate was injured or how the policy considerations of  discouraging volunteerism and assisting with the administration of the estate are harmed in allowing retroactive relief where the circumstances are that an individual failed to file a third disclosure which, when filed, presented

no problem.  The appropriate time to consider whether there should be any disallowance of fees based on the oversight will be when the court is asked to award the holdback or when future fee applications containing time for fees related to this dispute are requested.  At that time the court will be able to review the fees in light of the overall representation in the case.

In conclusion the court finds that *In re Twinton Properties* does not require an extraordinary explanation of the failure to file a complete application, only a satisfactory one. What is a satisfactory explanation will depend on the other circumstances of the case. The court's analysis of the *In re Twinton Properties* factors in this case permits the court to exercise its discretion and to retroactively approve the employment of Mr. LeRoy and the firm of L & B. In light of the prior verified statements and the disclosure contained in the Chapter 7 Application, the court finds that this case is one in which this court's "blind adherence to procedural formalities would work an injustice."  *In re Aultman Enters.*, 264 B.R. at 492.  The court will enter a separate order authorizing the employment of Mr. LeRoy and the firm of LeRoy and Bickerstaff, PLLC, as special counsel for the Chapter 7 trustee retroactively to July 1, 2010, the date of the Chapter 7 Application.

### C.      The Motion to Alter or Amend or for Relief From Order

On January 5, 2010, GKH filed a Motion to Alter or Amend or For Relief From Order regarding the Order granting the Fifth Application of F. Scott Leroy and Leroy & Bickerstaff for Compensation.  The Fifth Fee Application, filed on November 24, 2010, sought compensation for June 15, 2010, to September 30, 2010, representing time expended on behalf of the Chapter 7 trustee.  GKH and other parties received notice of the filing, but filed no objection to the Fifth Fee Application until the Amended Chapter 7 Employment Order was submitted.  GKH filed no objection prior to the expiration of  twenty-one day objection period

26

shown on the face of the Fifth Fee Application.  GKH filed its Fifth Fee Application Motion

based on the fact that the court approved compensation to a firm that had not been approved by

the court.  GKH attempted to reserve its rights to object to the fee application on other bases

although the deadline to object had already run.  Had the court determined that retroactive

relief was not appropriate in this case, the Fifth Fee Application Order would have to have

been vacated.  But that is not the case.  The court has overruled GKH's Objection and approved

the employment of Mr. LeRoy and L & B retroactively to July 1, 2010, the date proposed in

Mr. LeRoy's order tendered on December 21, 2010.

Having retroactively approved the employment to July 1, 2010, the court must look to

see whether there is any mistake that should be remedied as a result of that holding and the

evidence presented at the hearing regarding the formation of L & B.  Rule 9023 provides that

the court may alter or amend a judgment.  *See* Fed. R. Bankr. P. 9023.  Rule 9024 allows for a

party to be relieved of a judgment where there has been a mistake.  *See* Fed. R. Bankr. P. 9024.

GKH raised whether  L & B could be approved and paid based upon that approval

since it was not "in existence" at the time the application was filed.  This issue is based on the

Secretary of State's records showing that L & B was formed on July 28, 2010.  *Hearing Exhibit

2* at p. 1.  Tenn. Code Ann. § 48-203-102 provides that a limited liability company's "existence

begins when the articles are filed with the secretary of state."  Tenn. Code. Ann. § 48-203-

102(a).  Since the Chapter 7 Employment order authorized the employment of Mr. LeRoy and

L & B, the payment may be made to Mr. LeRoy and L & B.  To the extent that L & B was not

technically in existence for the first four weeks of the engagement, the fees awarded for the

period from July 1, 2010 may be paid to Mr. LeRoy.  To the extent he determines to share

27

them with his firm, which is now in existence and now employed, he may do so under Fed. R.

Bankr. P. 2016.  At least one authority has noted that if an application fails to state the correct

name of the proposed professional in some way that does not harm the estate, the

consequences should be minimal.  LAWRENCE R. AHERN & NANCY FRAAS MACLEAN,

BANKRUPTCY PROCEDURE MANUAL: FEDERAL RULES OF BANKRUPTCY PROCEDURE

ANNOTATED § 2014:6 (2010 ed.).

From its review of the Fifth Fee Application, the court has determined that there is a

mistake which should be remedied.  The retroactive employment of Mr. LeRoy and L & B is

effective as of the day the Chapter 7 Employment Application was filed.  That was July 1,

2010.  The application contains time worked for approximately two weeks before that date.

Mr. LeRoy did not seek retroactive relief back to the date of the conversion, and he is therefore

not entitled to be compensated for time prior to his employment.  That time represents 8.1

hours and $1944.00 in fees.  The fees allowed in the order will be reduced by that amount.  To

the extent that fees have already been paid, Mr. LeRoy or L & B shall reimburse the estate

90% of $1944.00.

There was no timely filed objection to the substance of the fee application.  Except for

the adjustment for the two week period for which retroactive relief was not sought and the 10%

holdback, the court has reviewed the application and determined that the time spent, the

services rendered, and the hourly rate are appropriate and should have been paid.

### III.    Conclusion

For the foregoing reasons, the Fourth Fee Motion is denied.  GKH's objection with

respect to lack of court approval is overruled.  The employment of F. Scott LeRoy and L & B

is approved retroactively to July 1, 2010.  The Fifth Fee Application Order will be modified to

reflect the reduction for the time expended between June 15, 2010 and June 30, 2010.  To the

extent that fees have been paid in excess of the amount approved, Mr. LeRoy will be ordered

to reimburse the estate for that excess.  A separate order will enter.

# # #