

**SO ORDERED.**

**SIGNED this 21 day of April, 2011.**

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

In re:                                                                                   No. 08-16378
                                                                                          Chapter 7
STEVE A. McKENZIE
a/k/a TOBY McKENZIE,

        Debtor.

**Memorandum**

On March 24, 2011, Grant Konvalinka & Harrison, P.C. ("GKH") filed a "Motion to Clarify, What, If Any, and/or the Sufficiency of, Evidentiary Support the Court Found Relative to March 22, 2011 Order Authorizing Jerrold D. Farinash of Kennedy, Koontz & Farinash, as Special Counsel for C. Kenneth Still in Adversary Proceeding No. 1:11- AP-1016 to be Compensated as a Professional Hired by the Trustee Pursuant to 11 U.S.C. §§ 330 and 331" (the "Motion"). [Doc. No. 1117].[1]  No response was filed to the Motion within fourteen days as required by  E.D.Tenn.

---

[1] All citations to the court's docket entries are for the docket pertaining to Bankruptcy Case No. 08-16378, unless otherwise noted.

LBR 9013-1(i)(2), and, therefore, the court has granted GKH's motion by separate order. This memorandum is the court's findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 9014 (c) making Fed. R. Bankr.P. 7052 applicable to contested matters, which clarify its order entered on March 22, 2011, in which the court granted in part, and denied in part the Application of Mr. Farinash to represent the trustee ("Trustee") in the Adversary Proceeding No. 11-1016. GKH did not object to authorization of Mr. Farinash to be hired to represent the Trustee but did object to his compensation from the estate. The court held that Mr. Farinash could be compensated as a professional hired by the Trustee pursuant to 11 U.S.C. §§ 330 and 331. [Doc. No. 1105]. GKH then filed its motion for clarification of the evidentiary support on which the court relied for that finding. Having granted the motion to clarify, the court will address the factual and legal basis for its opinion.

The court has jurisdiction over the employment of counsel based on 28 U.S.C. §§1334 and 157(b)(1)(A)and (B).

**I.     Background**

The court bases its factual findings on its review of the pleadings filed in this case and the voluntary case, and the adversary proceedings mentioned below. The pertinent facts follow.

This case began as an involuntary petition filed against Steve A. McKenzie on November 20, 2008. The involuntary case was followed by a voluntary Chapter 11 petition, Case No. 08-16987, filed on December 20, 2008. The voluntary case was consolidated with the involuntary case on January 16, 2009, and proceeded as a Chapter 11. Mr. Kenneth Still was appointed trustee for the Chapter 11 case on February 20, 2009. [Doc. No. 140]. The case was converted to a Chapter 7 proceeding on June 14, 2010 [Doc. No. 789], and Mr. Still was reappointed as the Chapter 7 Trustee. *See* Bankr. Case No. 08-16378, Docket Entry dated 6/14/10. In the Chapter 11 and the Chapter 7, Mr. Scott LeRoy and Mr. Richard Banks were

employed as counsel to the Trustee under 11 U.S.C. § 327(e). Mr. LeRoy was hired to assist the Trustee with a wide variety of matters. [Doc. No. 1069]. Mr. Banks was employed as special litigation counsel. [Doc. No. 806, entered July 1, 2010]. Mr. Banks had previously represented the debtor in the Chapter 11 and was retained to pursue causes of action against certain individuals and law firms listed in Schedule B. Those causes of action are described in an "Exhibit A as Amended in schedule B" filed with the court on May 24, 2010. [Doc. No 721]. They include "Pre & Post Petition legal claims against Grant, Konvalinka & Harrison" estimated at $2,500,000. *Id.* No objection was filed to Mr. Banks' employment.

On August 5, 2010, the Trustee brought an action against Nelson E. Bowers II, Exit 20 Auto Mall, LLC, John Anderson, Grant, Konvalinka and Harrison, PC, and CapitalMark Bank & Trust. [Adv. No. 10-1407, ("Trustee's Complaint")]. The Trustee's Complaint was signed by Mr. Banks and Mr. LeRoy as counsel for Mr. Still. *See* [Adv. No. 10-1407, Doc. No. 1].

The enumerated causes of action in the Trustee's Complaint were violation of the automatic stay, avoidance of post petition transfers, avoidance of preferences, avoidance of fraudulent transfers, an action to determine the validity of a lien, equitable subordination, and preference claims against insiders. The Trustee's Complaint sought to avoid a post petition transfer of approximately sixty acres of real estate located in Bradley County, Tennessee. Based on filings with the Tennessee Secretary of State and the Register's Office of Bradley County which were attached to the Trustee's Complaint and on which Judge John C. Cook relied in his dismissal, [Adv. No. 10-1407, Doc. No. 1]; [Transcript, Adv. No. 10-1407 at pp. 8-9], the transferor was Cleveland Auto Mall, LLC whose members were the debtor and Mr. Nelson E. Bowers, II. The transferee company was Exit 20 Auto Mall, LLC, formed December 10, 2008, organized by Wayne Grant, who also served as registered agent with an address at 633 Chestnut Street, Chattanooga, TN. The deed was dated December 10, 2008, approximately twenty days after the involuntary filing. The deed reflects that it was "Prepared by and [to be

returned] to Grant, Konvalinka & Harrison, P.C., Ninth Floor - Republic Centre, 633 Chestnut Street, Chattanooga, TN 37450-0900." *See* [Adv. No. 10-1407, Doc. No 1, p. 47]. The Affidavit of Value on the deed was signed by Nelson E. Bowers, II as Chief Manager and showed a value of $4,000,000. The Trustee's Complaint also had attached a Deed of Trust from Cleveland Auto Mall, LLC to Suntrust Bank dated February 24, 2006, securing approximately $3,800,000 in debt.

The court granted the motion of CapitalMark Bank & Trust for a judgment on the pleadings and granted the Motion of GKH to dismiss the Trustee's Complaint on December 16, 2010. [Adv. No. 10-1407, Doc. No. 67]. The court could not find any allegation of a transfer of property of the debtor or the estate. It found that the transfers alleged to have been made were of property owned by the limited liability company based on the documentation attached to the complaint. With respect to the allegation regarding equitable subordination, the court found the claim was insufficient to support a claim for equitable subordination because the pleadings demonstrated no actions against property of the estate or the debtor. [Transcript, Adv. No. 10-1407 at p. 11].

GKH is also a creditor in the case. It filed a secured claim for $406,828.51 on April 27, 2009. [Bankr. Case. No. 08-16378, Claim 86-1]. This claim reflected that the collateral securing its debt was real property. GKH amended its claim on February 9, 2011, to increase the amount owed to $750,000 and reflected that its collateral was real estate and "other." It attached a promissory note dated October 24, 2008, and a pledge agreement dated October 13, 2008, between the debtor and GKH, pledging a number of equity interests of the debtor. [Bankr. Case. No. 08-16378, Claim 86-2]. GKH also attached an amended pledge agreement dated October 29, 2008, which pledged additional equity interests including the debtor's interest in Cleveland Auto Mall, LLC. GKH also attached three deeds of trust on certain real estate of the debtor pledged on October 24, 2008. [Bankr. Case. No. 08-16378, Claim 86-2, Parts 5, 6,

and 7]. The amended pledge agreement recited that "Whereas, Pledgee has provided as of the date hereof to the Pledgor and the various Companies legal services in the amount of at least $385,000 ("Legal Services"); and Whereas, in order to induce Pledgee to continue to provide legal services to Pledgor and the Companies, Pledgor has agreed to pledge to Pledgee all of his interests as set forth on Exhibit 'A'". The entities listed on Exhibit A were defined as the "Companies." *Id.* Part 4, Amendment to Membership Interest and Stock Pledge Agreement at 1. The services to be provided would be "in an amount of at least $750,000." *Id.*

Two days after filing the amended claim, on February 11, 2011, GKH filed an adversary proceeding against Richard L. Banks, Andrew B. Morgan, Richard Banks & Assoc., P.C., F. Scott LeRoy d/b/a LeRoy & Bickerstaff, F. Scott LeRoy, LeRoy & Bickerstaff PLLC, LeRoy, Hurst & Bickerstaff, PLLC and C. Kenneth Still [Adv. No. 11-1016, Doc. No. 1 ("GKH Complaint")], alleging abuse of process and malicious prosecution based on the filing of the Trustee's Complaint.

Since both of his attorneys were also named in the GKH Complaint, the Trustee filed an application to employ Mr. Farinash as counsel to defend him from the allegations in the GKH Complaint. [Doc. No. 1033, Amended Application to Employ Jerrold D. Farinash]. GKH objected to the application on the basis that "the trustee should not be entitled to deplete the Estate funds by payment of Mr. Farinash's efforts to defend Still in the [GKH Complaint]." Objection to Application to Employ Jerrold D. Farinash as Special Counsel for Trustee at 1 [Doc. No. 1064]. No party provided evidence to the court that a bond existed that would cover the defense of the conduct alleged in the GKH Complaint.

**II.    Analysis**

The issue before the court is whether counsel employed to defend the trustee may be paid from the estate. The court has found a significant body of authority dealing with the issues of whether the trustee can be sued, whether such an action is a core proceeding, and whether a

trustee may successfully defend against such actions based on his immunity. However, the court was able to find very little authority or commentary on the issue of who should pay to defend these suits. At the hearing on the Farinash Application, the court mentioned the *In re DeLorean Motor Co.* case. *See Allard v. Weitz (In re DeLorean Motor Company)*, 991 F.2d 1236 (6th Cir. 1993). This case addressed core proceedings and immunity and also the issue of awarding fees to a trustee who sought damages against a party who brought a malicious prosecution suit against him in a state court but failed to obtain leave to do so. The court in *Allard* did not discuss the issue of whether the trustee's counsel could be paid from the estate prior to a decision on the underlying case, but did award fees against the state court plaintiff after finding that immunity existed. Mr. Konvalinka indicated that he had not found any authority except a paragraph from a treatise that indicated that the Trustee should not charge the estate for work done outside the scope of his employment. LAURA DIETZ ET AL., 76 AM. JUR. 2D TRUSTS § 568 (2d ed. 2010). The counsel for the United States trustee indicated that she had been unable to find any specific authority on the subject of the manner of the payment of fees in this situation.

Based on the policies stated in the cases discussed below, the court determined that counsel could be employed and should be compensated as any other professional in the case.

Courts in this circuit have held that a trustee's duties include investigating the acts, conduct, assets, liabilities and financial conditions of the debtor. *See Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 317 (6th Cir. 2006). In *In re Lowenbraun*, the investigation led to a fraudulent transfer action, a settlement and litigation following complications with the settlement alleging tort claims against the trustee. *Id.* at 318-19. The court of appeals found that the torts of libel, slander, abuse of process, wrongful use of civil proceeding and outrage were core proceedings because "the genesis of [the] proceeding was the bankruptcy proceeding." *Id.* at 321.

In another case, the district court determined that a malicious prosecution action against a trustee in connection with his effort to administer an estate and collect its assets is a core proceeding under the Bankruptcy Code.  In *Kirk v. Hendon (In re Heinsohn)*, the bankruptcy court addressed this question directly and concluded that "[a]lthough the plaintiff's causes of action for malicious prosecution and defamation would exist outside bankruptcy, they would not have arisen but for the defendant's obligations and conduct as a trustee.  Accordingly, this is a core proceeding."  231 B.R. 48, 59 (Bankr. E.D. Tenn. 1999).

In affirming the bankruptcy court in *In re Heinsohn*, the district court reviewed the non-exhaustive list of core proceedings in 28 U.S.C. § 157(b)(2).  *Kirk v. Hendon (In re Heinsohn)*, 247 B.R. 237, 242-43 (E.D. Tenn. 2000).  It then explained:

> [t]he Court agrees the action in this case was a core proceeding.  From all indications, Defendant made the referral in this case in the course of his duties as trustee of the relevant bankruptcy estate.  The Court realizes Plaintiff challenges this assertion, however, . . . the Court finds this argument without merit.  Had there been no bankruptcy proceeding, the referral which Plaintiff contends was maliciously instituted, would not have taken place. The referral concerned *bankruptcy* fraud and was made pursuant to 18 U.S.C. § 3057 concerning *bankruptcy* investigations.  Thus the referral, on which Plaintiff's case turns, arises under the bankruptcy laws and would not exist independent of these laws.  Accordingly, the proceeding is core.

247 B.R. at 244.  *See also Honigman, Miller, Schwartz & Cohn v. Weitzman (In re DeLorean Motor Co.)*, 155 B.R. 521, 525 (B.A.P. 9th Cir. 1993) (determining that malicious prosecution action was a core proceeding within the scope of 28 U.S.C. § 157(b)).

Bankruptcy courts addressing issues raised in malicious prosecution actions have noted that policies embedded in the Bankruptcy Code encourage trustees aggressively to pursue assets for the benefit of the creditors.  In the bankruptcy court's decision in *In re Heinsohn*, the court explained this underlying policy and its reasoning behind its determination that the trustee was entitled to absolute immunity in the malicious prosecution action:

> if trustees are subject to suit and liability for their actions in reporting possible criminal violations to the prosecuting authorities, no trustee would ever make a

> referral. No trustee would run the risk of damages being assessed against him for making a referral based on often incomplete information which produces no monetary benefit to the trustee since a trustee's primary obligation is to collect and liquidate assets of the estate, not report crimes. Yet a trustee is in a unique position to discover possible bankruptcy crimes since his duties require him to "investigate the financial affairs of the debtor. *See* 11 U.S.C. § 704(4). To expose a trustee to the potential for liability for complying with his obligations under 18 U.S.C. § 3057 would emasculate an important public function which a trustee is in a distinct position to fulfill.

*In re Heinsohn*, 231 B.R. at 63. Further, a presumption exists "in favor of the trustee, counsel, or other bankruptcy official that they were acting within the scope of their duties . . . ." *In re Lowenbraun*, 453 F.3d at 322 (case involved the trustee's efforts to recover fraudulent transfers from debtor's wife). The U.S. Supreme Court has provided a helpful illustration of hypothetical judicial decisions for which there would be a lack of jurisdiction and no immunity, and those in excess of jurisdiction that would be subject to immunity. *See Stump v. Sparkman*, 435 U.S. 349, 357 n. 7, 98 S.Ct. 1099, 1105 n. 7 (1978). The court explained:

> if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Id.* (citing *Bradley v. Fisher*, 13 Wall. 335, 352, 20 L.Ed. 646 (1872)).

Other Circuits also apply a rule of immunity to protect trustees acting in accordance with their statutory duties. For example, in *Picard v. Chais (In re Bernard L. Madoff Investment Securities LLC)*, involving the trustee's actions to recover preferences and fraudulent transfers, the bankruptcy court reminded the parties that "[i]n the Second Circuit, a bankruptcy trustee is a quasi-judicial official 'immune from suit for personal liability for acts taken as a matter of business judgment in acting in accordance with statutory or other duty or pursuant to court order.'" 440 B.R. 282, 290 (Bankr. S.D.N.Y. 2010) (quoting *In re Smith*, 400 B.R. 370, 377 (Bankr. E.D.N.Y. 2009)). In examining the policy behind the rule, the bankruptcy court noted:

> sound policy counsels in favor of providing immunity for trustees in cases such as this one. . . . A trustee should be shielded from liability for his lawful exercises of judgment and discretion, even if, in hindsight, such interpretations of law were incorrect. If immunity applied only to decisions that turned out to be proper, there would be no need for the doctrine of immunity. Here, a determination that the Trustee can be held liable would deter future trustees for fear they could be held liable for every discretionary decision. . . . The Court cannot impose liability on the Trustee for carrying out his duties in good faith and based on his business judgment.

*Id.* at 292-93 (citing *Weissman v. Hassett*, 47 B.R. 462, 467 (S.D.N.Y. 1985)).

In the absence of contrary legal authority, it seems to be a logical extension of the bankruptcy policy protecting a trustee in the pursuit of recovery actions to allow the professionals hired to defend a trustee to be paid from the estate. Moreover, if there truly is a rogue trustee, there are safeguards available to protect the estate funds and minimize the effect on the creditors. The Bankruptcy Code provides "substantial checks on the trustee's administrative actions." Ralph C. McCullough, *Trustee Liability: Is There Enough Protection for These "Arms of the Court?"* 103 COMM. L.J. 123, 135 (1998). For example,

> a trustee's administration of a debtor's estate is a public record. The bankruptcy court can also remove trustees for cause. If the trustee fails to perform to a proper standard, he or she will no longer be allowed to serve. Moreover, because trustees are appointed by the United States Trustee, any debtor or creditor complaints would most certainly lead to fewer appointments, and therefore, to less business. Finally, the bankruptcy court may also deny or reduce trustee compensation for improper performance.

*Id.* at 135-136.

In the adversary proceeding relating to the GKH Complaint, risk of abuse may be resolved at a later date by an adjustment or surcharge of the Trustee's fees in the event he or his counsel are found to be liable for the damages alleged. To the extent that the case was plead in such a way that it violated Fed. R. Bankr. P. 9011, the court could assess sanctions against the professionals or reduce their fees in the case if the work was not appropriate or well done.

Sustaining GKH's objection would result in the Trustee being able to hire counsel but only on a contingent basis. That is not a requirement for hiring counsel to pursue actions to avoid transfers; and in light of the immunity cases in this circuit, the court does not believe that there should be a similar requirement if the trustee needs a defense if he is sued for having brought such an action. It is important that the court not prejudge the proceeding relating to the GKH Complaint at this nascent stage of the proceedings. GKH contends it will be able to present facts that show the Trustee's conduct was not in good faith or was maliciously motivated. But faced with balancing, on one side, the bankruptcy policy of encouraging trustees to investigate debtors' financial affairs without fear of reprisal coupled with the facts in this case related to the Cleveland Auto Mall transfer with, on the other side, the prospect that the estate might be diminished by paying for the defense of a rogue trustee, the court found in favor of the policy that encourages trustees to investigate transfers.

### III.    Conclusion

The court relied on the strong policy statements in the case law of the Eastern District of Tennessee and the Sixth Circuit granting immunity to trustees and their counsel coupled with the court's ability to minimize the impact on the creditors through disallowance of fees to find that a professional hired to provide a defense to the trustee should be paid from the estate in the same manner as any other professional authorized under 11 U.S.C. § 327.

# # #