

**SIGNED this 27 day of May, 2011.**

_____
**Shelley D. Rucker**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

In re:                                                                                          No. 08-16378

                                                                                               Chapter 7

STEVE A. McKENZIE

a/k/a TOBY McKENZIE,

        Debtor.

**MEMORANDUM**

    The law firm of Grant, Konvalinka & Harrison, P.C. ("GKH") filed this motion for relief

("Motion") to be allowed to pursue its rights under a Membership Interest and/or Stock Pledge

1

Agreement executed by the debtor Steve A. McKenzie. The agreement was executed only six weeks before an involuntary bankruptcy was filed against the debtor and approximately fourteen weeks before he filed his own voluntary case. The pledge agreement recites that it was given to secure existing legal fees incurred by the debtor and his companies. An amendment to that pledge agreement also contained a commitment by GKH to provide additional legal services to the debtor and other entities which the debtor owned in whole or in part. Although this transaction appears to be a classic preferential transfer, the trustee has no preference or other avoidance action pending against GKH. All of the parties have agreed that the two years since the filing date has run and one year since the trustee's original appointment in the Chapter 11 case has run.

      Counsel for the trustee has raised issues with respect to the attachment and perfection of GKH's security interest in his response objecting to the Motion. He asserts that 11 U.S.C. § 544(a)(1) and (2) give him not only avoidance powers but status as a hypothetical lien creditor as of the time of filing of the case. He relies on this status to give him the ability to prove that the lien of GKH is subordinate to his hypothetical lien and extrapolates from that status that his superior lien prevents GKH from lifting the stay. He secondarily asserts that GKH's reliance on the running of the limitation contained in 11 U.S.C. § 546 is misplaced since this limitation is subject to equitable tolling under the circumstances of this case based on GKH's failure to disclose its security interest in the equity interests until after the statute had run.

      To be granted relief from the stay, GKH must show that it is a creditor and that it has a security interest in the property of the debtor that was granted prior to the filing of the petition. The trustee contends that GKH must also prove that its security interest is superior to that of a hypothetical judgment lien creditor in the same property who obtained the judgment lien on the

2

date of the filing. GKH contends that if GKH's security interest has attached, priority is irrelevant because the statute of limitations has expired unless the trustee can prove the statute of limitations should be equitably tolled.

The court has subject matter jurisdiction over this bankruptcy case and this contested matter. 28 U.S.C. §§ 1334 and 157(b)(1)(g). This case and all related proceedings have been referred to this court for decision.

Having considered the entire record in the case. including the evidence offered at the hearing and the arguments and briefs of counsel, the court made its findings of fact and conclusions of law orally on the record pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure as made applicable to contested matters by Rule 9014(c). The court delivered its opinion orally at the hearing on May 24, 2011. At the parties' request, the court agreed to prepare and file the memorandum. This memorandum contains minor edits for style, grammar, and citation, and therefore differs from the version read into the record. To the extent that there is any difference, this version shall amend the ruling announced on the record.

## I.     FACTS

This case began as an involuntary petition filed against Steve A. McKenzie on November 20, 2008. The involuntary case was followed by a voluntary Chapter 11 petition, Case No. 08-16987, filed on December 20, 2008. The voluntary case was consolidated with the involuntary case on January 16, 2009, and proceeded as a Chapter 11. In the order consolidating the two cases, the applicable deadlines of the involuntary case were deemed to be the applicable deadlines in the consolidated case. *Order Consolidating Cases* at 2. [Doc. No. 33] The order for relief in the involuntary case was entered on January 21, 2009. [Doc. No. 39] Mr. Kenneth Still

3

was appointed trustee for the Chapter 11 case on February 20, 2009. [Doc. No. 140]. The case was converted to a Chapter 7 proceeding on June 14, 2010 [Doc. No. 789], and Mr. Still was reappointed as the Chapter 7 trustee. *See* Bankr. Case No. 08-16378, Docket Entry dated 6/14/10. In the Chapter 11 and the Chapter 7, Mr. Scott LeRoy, as general counsel under 11 U.S.C. § 327(a), and Mr. Richard Banks, as special counsel to the Trustee under 11 U.S.C. § 327(e), were employed. [Doc.Nos. 238 and 806] More than two years after the date of filing have passed, and more than one year has passed since the appointment of the first trustee in the case.

The meeting of creditors in the Chapter 7 case was set for July 13, 2010. *Amended Notice of Meeting of Creditors dated 6/14/2010* [Doc. No 792]. The notice states on its face:

> Please Do Not File a Proof of Claim Unless You Receive a Notice to Do So. However, prior to the meeting of creditors scheduled above, all creditors asserting a security interest in property of the debtor or of the estate must provide proof to the bankruptcy trustee that the interest has been perfected. See Local Bankruptcy Rule 3001-1(b).

*Id.*

On December 17, 2010, the trustee filed a Notice of Need to File Proof of Claim Due to Recovery or Anticipated Recovery of Assets. *Notice of Need to File Proof of Claim* [Doc. No. 949]. It directed creditors who wished to share in any distribution of funds in this bankruptcy case to file a proof of claim with the Bankruptcy Court on or before March 17, 2011. *Id.*

GKH is a creditor in the case. For purposes of this hearing, the parties stipulated that GKH has a past due balance for legal services of $ 486,828.51. According to the exhibits admitted at the hearing, on October 13, 2008, the debtor and GKH executed a Membership Interest and/or Stock Pledge Agreement in which the debtor pledged a number of his equity interests as collateral. *Membership Interest and/or Stock Pledge Agreement*, Exhibit 1 ("Pledge Agreement"). A list of companies attached to the Pledge Agreement reflects the debtor's

4

ownership interest in each company. The court will refer to the companies listed on Exhibit A to the Pledge Agreement as the "A List Interests."

The debtor signed a demand note dated October 24, 2008, payable to GKH for amounts up to $750,000. *Part 2 to GKH Amended Proof of Claim, No. 86-2 at 1*, Exhibit 10, ("Demand Note"). He executed an amended pledge agreement dated October 29, 2008, which pledged additional equity interests including the debtor's interest in Cleveland Auto Mall, LLC ("CAM"). *Amendment to Membership Interest and/or Stock Pledge Agreement,* Exhibit 2 ("Amended Pledge Agreement")  The Amended Pledge Agreement recited that:

> WHEREAS, Pledgee has provided as of the date hereof to the Pledgor and the various companies legal services in the amount of at least $385,000 ("Legal Services"); and
>
> WHEREAS, in order to induce Pledgee to continue to provide legal services to Pledgor and the Companies, Pledgor has agreed to pledge to Pledgee all of his interests as set forth on Exhibit 'A' for the legal services provided;

*Id.* at 1. The entities listed on Exhibit A were defined as the "Companies. *Id.* The services to be provided would be "in an amount of at least $750,000.00." *Id.*

Like the Pledge Agreement, the Amended Pledge Agreement also had an Exhibit A which listed the interests which were being pledged. The amended list included the A List Interests plus a number of other entity names without the percentages showing the debtor's ownership. (The additional interests are referred to as the B List Interests; and the A List Interests and the B List Interests are collectively referred to as the Pledged Interests. The Exhibit A attached to the Amended Pledge Agreement is the referred to as the Pledged Interests List.)

GKH filed a financing statement with the Tennessee Secretary of State's office on October 15, 2008, and the A List Interests were identified on an attachment titled Exhibit A.

5

*Letter from Tennessee Secretary of State with attached recorded UCC 1 filing for GKH*, Exhibit 4 ("Initial UCC Filing").

On October 27, 2008, GKH amended its financing statement by filing a UCC 3 Amendment to Financing Statement. *Letter from Tennessee Secretary of State with attached recorded UCC 3 Amendment*, Exhibit 3, ("UCC Amendment"). On the UCC Amendment, GKH had four options in box 8 of the form to choose from to indicate what sort of amendment it was making to the collateral description. It did not select "deleted" or "added" or "assigned." GKH selected the box which indicated that it was "restating" the collateral description. The new description is "All the membership interests and stock ownership interests of Steve A. McKenzie in the companies listed on Exhibit 'A' attached hereto and made a part hereof." An Exhibit A was attached which listed only the B List Interests.

With respect to the names of the companies listed on the Pledged Interest List, several of the names listed are not the legal names of the entities. At the hearing on the Motion, Ms. Marcia Gilbert, the former chief financial officer ("CFO") of SAM Management, LLC, testified concerning the identity of the companies listed in the Pledged Interest List and on the Initial UCC and the UCC Amendment. The chart below reflects the names which the trustee alleged were lists of the names shown on the Pledged Interests List and the financing statements, compared with the legal names which Ms. Gilbert identified. SAM Management Company has previously been identified to the court in other hearings as the main management company used by the debtor to manage the more than one hundred companies and ventures through which he operated.

| **Pledge List Name** | **UCC Exhibit Name** | **Legal Name** |
|---|---|---|
| Spectrum Health, LLC | Spectrum Health, LLC | Spectrum Health Operations, LLC or Spectrum Health and Fitness, LLC |
| Great Smoky Mountains Development, LLC | Great Smoky Mountains Development, LLC | Great Smokey Mountains Development, LLC |
| McKenzie-Cate Development, LLC | McKenzie-Cate Development, LLC | McKenzie-Cate Company, a Tennessee general partnership |
| Exit 20, LLC | Exit 20, LLC | Exit 20 Properties, LLC or Exit 20 Development, LLC |
| East Tennessee Interstate Properties | East Tennessee Interstate Properties | East Tennessee Interstate Properties, LLC |
| Exit 20 Partners, LLC | Exit 20 Partners, LLC | Exit 20 Partners S/E, LLC |
| Hampton Creek Development, LLC | Hampton Creek Development, LLC | Hampton Creek Development Company, LLC |
| Sam Management, LLC | Sam Management, LLC | SAM Management Company, LLC |

The chart reflects those interests about which the trustee raised the identification issue and the names of similar legal names he identified. *Trustee's Objection to Motion for Relief* at 2-3 [Doc.no.1229]. He also raised the issues with respect to Sam Galaxy Partners, LLC and The Marina at South Bay, LLC. At the hearing, certificates from the Office of the Secretary of State for the State of Georgia were admitted which demonstrated the existence of these entities and that the names used by GKH on the Pledged Interest List were correct. Exhibits 7 and 8.

The trustee also raised an issue about SAM Investments, GP. On direct examination Ms. Gilbert identified it as an entity owned by the debtor and testified that it was a general partnership. With respect to an entity known as Spectrum Health, Ms. Gilbert did not know if Mr. McKenzie had an ownership interest in such an entity. On cross examination she repeated that she did not know if the debtor had an interest in Spectrum Health, LLC, but that she was aware that the debtor and Mr. Bowers had guaranteed an obligation of Spectrum Health

7

Operations, LLC. In response to questioning about Exit 20, LLC, on cross examination, she indicated that there were so many Exit 20 properties that she got those confused. Neither GKH nor the trustee asked Ms. Gilbert about Exit 20 Partners, LLC.

One of the Companies listed with the A List Interests is CAM. With respect to the pledge of that interest in CAM, the operating agreement of that limited liability company provides that an interest may not be transferred without the prior written consent of the other members. *Operating Agreement of Cleveland Auto Mall, LLC*, Exhibit 6 at 10, Section 8.1(a)("Operating Agreement"). The Operating Agreement provides:

> (b) <u>Effect of Prohibited Transfer.</u> Any transfer or acquisition of all or any portion of a Membership Interest in violation of Subsection (a) of this section shall be null and void and shall not operate to transfer any interest or title to the Membership Interest to the purported transferee. This restriction shall be effective against persons without actual knowledge of this restriction. The restrictions set forth in this article are deemed to be reasonable restrictions against the acquisition of a Membership Interest by persons whose interests may be inimical to that of the Company or other Members. Any transfer of a Membership Interest occurring as a result of the operation of law including without limitation, Section 48-218-101 of the Act shall not dissolve the Company, nor entitle or empower the transferee to become a Member, to exercise any governance rights, or to receive any notices from the Company, except as expressly required by the Act and this agreement.

*Operating Agreement* at 10, Section 8.1(b). "Act" is defined as the Tennessee Limited Liability Company Act as codified in Tenn. Code Ann. § 48-201-101, *et seq,*. and all amendments to it. *Operating Agreement,* at 1, Section1.1.

At the hearing, Mr. Nelson E. Bowers, II ("Mr. Bowers"), the only other member of CAM besides the debtor, identified a consent to the transfer of the interest as security to GKH that was effective "as of October 13 and October 24, 2008". *Consent of Nelson E. Bowers*, *II,* Exhibit 5. He was not able to recall when the consent was executed.

In addition to the Pledged Interests, the debtor also pledged to GKH three tracts of real property located in three different counties in Tennessee to secure the Demand Note on October 24, 2008. Exhibit 10, *Amended Proof of Claim of Grant Konvalinka & Harrison*, Parts 5, 6 and 7. [Claims Doc. No. 86-2] At the continuation of the hearing on the Motion on May 24, 2011, the counsel for the trustee announced that the three tracts of real estate that were described in the Deeds of Trust attached to the Amended Claim were subject to prior secured claims of other creditors and the trustee had already agreed to lift the stay for those creditors. Therefore, he had no objection to lifting the stay for GKH based on his belief that GKH's motion was moot. Mr. Konvalinka stated that he believed that the debtor may still own the real estate. The parties agreed that to the extent that the debtor still had an interest in the real property described in the Deeds of Trust, the trustee did not oppose stay relief and the real estate could be abandoned. The court will include that relief in the order accompanying this memorandum.

The debtor listed the claim of GKH as secured in the amount of $385,000 but listed no collateral. *Voluntary Petition*, *Schedule D* at 1, [Case no. 08-16987, Doc. No. 1] He failed to list any pledge of equity interests in his schedules or statement of affairs. GKH is not listed as party to an executory contract with the debtor despite GKH's commitment to provide up to $750,000 in legal services to the debtor and his companies. *Amended Pledge Agreement* at 1; *Schedule G*, [Doc. No. 53].

On April 27, 2009, Harry Cash, a member of GKH, filed a secured claim on behalf of GKH for $406,828.51. Exhibit 9, *Proof of Claim of Grant, Konvalinka & Harrison* [Bankr. Case. No. 08-16378, Claim 86-1]("Claim"). Box 1 of the Claim states that the basis for the claim is "Services Performed." In box 5 of the Claim, GKH selected only "Real Estate" as its collateral. It described the collateral as "Promissory Note and Deeds of Trust for Properties

9

Located in Hamilton, Bradley and Sevier Counties." *Id.* No other type of collateral was indicated on the face of the Claim. The date the debt was incurred was represented to be "10/24/2008" in Box 2. No documents were attached to the Claim.

On February 7, 2011, Richard Banks, as counsel for the debtor, filed an objection to the Claim alleging that the Claim should be disallowed because the amount was too great and there were no documents attached to support the amount due. *Objection by Debtor to Proof of Claim* at 1, [Doc. No. 1003]; *Affidavit of Steve A. McKenzie in Support of Objection* at 1 [Doc. No. 1003]. GKH amended its claim on February 9, 2011. *Amended Proof of Claim*. Exhibit 10 [Bankr. Case. No. 08-16378, Claim 86-2]("Amended Claim"). The Amended Claim increased the amount owed to $750,000, reflected the basis of the claim as being a "Promissory Note," and reflected that GKH's collateral was real estate and "other." *Amended Claim* at 1. GKH attached copies of the Demand Note, the Pledge Agreement, the Amended Pledge Agreement, the Initial UCC, the UCC Amendment, the three deeds of trust to the Amended Claim and a list of the debtor's assets as of December 31, 2007. *Id.* Parts 2- 10. An objection was also filed to the Amended Claim by Mr. Banks on behalf of the debtor, but both objections were withdrawn prior to being heard. *Objection by Debtor to Amended Claim of GKH* [Doc. No. 1011]; *Notices of Withdrawal of Documents Nos.1003 and 1011* [Doc. No. 1111 and 1112, respectively] The invoices for the services performed by GKH were not offered as exhibits to the Amended Claim nor as exhibits in support of the Motion at the hearing.

There was no evidence that a demand was made that triggered a default under the Demand Note and Pledge Agreement. Nevertheless, for purposes of this hearing, the court finds, based on the language of the stipulation, and, specifically, the use of the words "past due," that GKH is a creditor of the debtor, that value was given to support the grant of the security interest,

and that a default has occurred that would have entitled GKH to exercise its remedies to the extent that the court finds that it has a security interest.[1]

In addition to entitling GKH to foreclose on its collateral, GKH argues that a default under the Pledge Agreement terminates the debtor's governance rights in the Pledged Interests. The trustee contends that there are prohibitions contained in the operating agreements of the limited partnerships and limited liability companies on the Pledged Interest List that would have prevented the transfer of the debtor's ownership rights even if there was a default that would have triggered the loss of governing rights pursuant to the Amended Pledge Agreement. Neither party introduced the operating agreements of any company other than CAM. The operating agreements for Tennessee Interstate Properties Inc. ("TIPCO") and East Tennessee Interstate Properties, LLC, ("ETIP") were discussed at the hearing before this court on the Debtor's Motion to Vacate the Order Authorizing the Sale of the Debtor's Interests, held on May 25, 2010. Mr. Konvalinka's testimony at that hearing was admitted as Exhibit 11 in this proceeding.

The parties have stipulated that there is no equity in the property in excess of the stipulated amount of debt owed to GKH.

## II.    ANALYSIS

### A.  GKH's Status as a Secured Creditor

Section 362 of the Bankruptcy Code provides that:

---

[1] To the extent that the nature of specific defaults may impact the legal analysis, GKH cited only the filing of a bankruptcy as the default in its reply to the Trustee's objection, and only then in the context that such a default triggered the loss of the debtor's governance rights. *Reply of GKH*, at 13. Neither party addressed whether 11 U.S.C. §541(c)(1)(B) would operate to prevent the loss of whatever governing rights the debtor had on the date of filing.

>(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, …operates as a stay, applicable to all entities, of--…
>
>(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title.

11 USC§ 362(a)(5).

Implicit in a determination that a party is entitled to lift the stay imposed by 362(a) is a determination that the party is a creditor who has a lien against property of the debtor and that the lien existed prepetition. The parties have stipulated for the purposes of this motion that GKH is a creditor with a prepetition debt. They do not agree that GKH holds a lien against all of the Pledged Interests.

To have a lien or security interest in the Pledged Interests, the Tennessee Uniform Commercial Code requires the attachment of a security interest. Tenn. Code Ann. § 47-9-203(a). To attach, a security interest must be enforceable. A security interest is enforceable with respect to collateral only if (a) value has been given, (b) the debtor has rights in the collateral, and (c) the debtor has authenticated a security agreement that provides a description of the collateral. Tenn. Code Ann. § 47-9-203(b). For purposes of the Motion, the trustee does not dispute that value has been given. The dispute involves the adequacy of the description of the collateral, the extent of the interest conveyed, and, with respect to CAM, the ability of the debtor to convey the interest without the prior written consent of the other member.

   *1. Sufficiency of Description*

The court will first address adequacy of the description of the collateral. In order to be a sufficient, the description must reasonably identify what is described. Tenn. Code Ann. § 47-9-108(a). *See also, Farmer v. Green Tree Servicing, LLC (In re Snelson)*, 330 B.R. 643, 649 (Bankr. E.D. Tenn. 2005) (description of collateral is "sufficient whether or not it is specific if it

reasonably identifies what is described"). A specific listing is sufficient or any other method of description, if the identity of the collateral is objectively determinable. Tenn. Code Ann. §§ 47-9-108(b)(2) and (6). The Official Comments to the U.C.C. § 9-108 found appended to Tenn. Code Ann. § 47-9-108 provide further guidance on the sufficiency of the description of collateral. Official Comment No. 2 states, "[t]he test of sufficiency of a description under this section, as under former Section 9-110, is that the description do the job assigned to it: make possible the identification of the collateral described." Tenn. Code Ann. § 47-9-108, Official Comment no. 2. *See also, Waldschmidt v. Federal Deposit Insurance Corp. (In re Preston)*, 52 B.R. 296, 300 (Bankr. M.D. Tenn. 1985).

The court must decide whether mistakes in the specific listing can make the description so inadequate that the security interest fails to attach. Ms. Gilbert testified that she could have determined what interests were being transferred. She testified that she could identify which entity of the debtor's was involved with respect to all of them except Exit 20, LLC, and Spectrum Health, LLC. She testified that there were so many "Exit 20" entities that she was confused. The court finds that based on that testimony and listing of entities, GKH did not acquire a security interest in Exit 20 Properties, LLC. To the extent that the Pledged Interests List contains the names of other entities beginning with "Exit 20," and those names correspond to legal names for entities in which the debtor had an ownership interest, those descriptions are sufficient.

With respect to Spectrum Health, LLC, there was confusion about the two legal entities that may have been what was being referred to in the Pledged Interests list. GKH contends in its Reply that the debtor was only a member in Spectrum Health Operations, LLC and so the interest is objectively determinable. *Reply* at 16 [Doc. No. 1245]. In preparation of this

13

memorandum, the court reviewed Ms. Gilbert's testimony again. In response to the first question asked by Mr. Konvalinka, she did not have a specific recollection of the debtor's ownership interest in Spectrum Health, LLC. Later in her testimony, she stated that she thought that Spectrum did not have any assets, and she testified that she had not prepared a tax return for a Spectrum Health entity. GKH did not offer any other proof on the ownership of Spectrum Health, LLC or the other two entities mentioned by the trustee in his memorandum.

In light of the testimony that there were no other entities owned by the debtor which could be confused with the names as given, the court finds that names used on the Pledged Interest List were specific enough that the collateral could be identified. The court acknowledges that this standard is less strict than the standards for accuracy which have evolved for acceptable variations of a debtor's name used on a financing statement. While the name of the debtor might require an exact match to a legal name in order to avoid the label of being seriously misleading to third parties, collateral identification for the purposes of attachment is an objective standard. The CFO for the debtor's management company was able to distinguish which entities were involved and the debtor's interest for all but two of the Pledged Interests. The trustee provided no other proof of inadequacies such as other entities owned by the debtor that were not on the Pledged Interest List that might be confused with those incorrectly listed on the Pledged Interests List.

   *2. Debtor's rights in CAM*

With respect to the issue of whether the debtor had ownership rights that could be transferred, the court was provided only one operating agreement with which to determine what the debtor's rights were. That was the operating agreement for CAM. Section 8.1(a) of the Operating Agreement prohibits the granting of a security interest or pledging the membership

14

interest without the prior written consent of the Board. The Board of Governors of CAM consisted of the two members of CAM. The two members who executed the Operating Agreement were the debtor and Mr. Bowers. *Operating Agreement* at 18-19. There was no evidence of consent by the board, but GKH did offer an undated consent of Mr. Bowers, the only other board member who could have consented. *Consent of Nelson E. Bowers, II*, Exhibit 3.

Based on definition of "Act" in the Operating Agreement, CAM appears to have been formed under the Tennessee Limited Liability Company Act, Tenn. Code. Ann. § 48-201-101, *et seq*. Prohibitions against transfers of the members' interests are allowed by Tennessee law. Section 48-218-101(c) of the Act provides that any restriction on financial rights may be imposed by the members. The restriction is enforceable against the owner of the financial rights so long as the restriction is not manifestly unreasonable under the circumstances. The parties agreed as part of the Operating Agreement that the restrictions were "deemed to be reasonable." Members may assign governing rights only to other members. Tenn. Code Ann. § 48-218-102(b). *Riverside Surgery Center, LLC v. Methodist Health Systems, Inc.,* 182 S.W.3d 805, 813 (Tenn. App. 2005) (interpreting a limited liability company provision requiring a right of first refusal: "The parties were free to word the Operating Agreement as they saw fit, and it is our duty, as it was the Chancellor's, to interpret the agreement.")

The Operating Agreement requires **prior** written consent, and no evidence was presented that prior consent, or even prepetition consent, was obtained. Mr. Bowers was unable to recall when he had signed the undated consent. The consent was not attached to the Claim nor the Amended Claim nor the Motion. No one testified on behalf of GKH regarding when the consent was received in its office. Based on the foregoing facts and the provisions in the Operating Agreement, the court finds that GKH has not met its burden with respect to receipt of the consent

Case 1:08-bk-16378-SDR   Doc 1287   Filed 05/27/11   Entered 05/27/11 11:06:44   Desc
Main Document    Page 16 of 18

prior to transfer of the security interest in CAM or even prior to the filing of the voluntary petition. GKH's security interest in the debtor's membership interest in CAM did not attach prepetition, and therefore GKH does not have a security interest in that membership interest. *In re Weiss*, 376 B.R.867 ( Bankr. N.D. Ill. 2007) (failure to obtain consent of other limited liability members for assignments results in ineffective transfer of a security interest in the membership interest construing Illinois limited liability company law.); *Condo v. Connors*, ___ P.3d ___, 2010 WL 2105926 (Colo. Ct. App. 2010) *cert. granted,* 2011 WL 882684 (Colo. Sup. Ct. March 14, 2011)(construing Colorado limited liability company act comparing modern approach to assignment which interprets provisions prohibiting assignment as only limiting assignment of contractual rights not financial rights **unless** operating agreement states that nonconforming assignments shall be void or invalid or similar language).

       *3. Debtor's Rights in Other Pledged Interests*

The court is also concerned that the operating agreements for the other Pledged Interests may contain specific prohibitions against the transfer of interests similar to those contained in CAM's Operating Agreement. There is some evidence based on the operating agreements for TIPCO and ETIP that such is the case. Some of the language from those operating agreements quoted by the witnesses at the hearing on May 25, 2010, is identical to the language in the CAM Operating Agreement. Mr. Konvalinka's testimony at that hearing was admitted as Exhibit 11 at the hearing on the Motion. Without demonstrating that the debtor had the right to transfer his interests in the companies, GKH has not carried its burden of showing attachment. The court will allow GKH two weeks to supplement the record with the operating agreements of the companies for the Pledged Interests, and the consents if the operating agreements require consents.

Although neither party briefed the issue, the court would also note that Tenn. Code Ann. § 47-9-408 provides for the assignment of, in essence, the proceeds of general intangibles even in situations in which the general intangible prohibits transfers or requires some sort of consent. The court will also provide the parties with two weeks to address the issue of whether there could still be an assignment of the right to proceeds from any disposition of the Pledged Interests regardless of whether prohibitions against the transfer existed or whether a consent was required.

### III.   CONCLUSION

In conclusion, the court finds that GKH adequately described all of the collateral on the Pledged Interests List except Exit 20, LLC and Spectrum Health, LLC. With respect to CAM, the court finds that the attachment was never completed and relief is denied as to CAM subject to reconsideration based on the parties' supplementation of the record and the court's review of the impact of Tenn. Code Ann. § 47-9-408.

The remaining issues of whether the trustee may use his status as a hypothetical lien creditor to defeat the transfer of the A List Interests or may still challenge the entire pledge because the statute of limitations was equitably tolled, will remain under advisement. Both sides have prepared excellent briefs which have been very helpful to the court. They have clearly delineated the split in the authorities on the first issue which has not been addressed by the Sixth Circuit Court of Appeals. With respect to equitable tolling, they have provided authorities that demonstrated a broad range of policy issues for the court to consider in determining whether to allow equitable tolling in light of the proof presented. The court will continue to hold those matters under advisement until the record is supplemented and the UCC assignment issue is briefed.  The court would ask the parties to notify the court if they do not wish to file any additional exhibits with respect to the operating agreements for other Pledged Interests or brief

the UCC issue. In that case, the court will proceed to issue its opinion as quickly as possible. To the extent that operating agreements are offered, the court will follow the procedures for a protective order previously agreed to by Mr. Konvalinka and counsel for the trustee entered in *Still et al. v. Grant, Konvalinka & Harrison, P.C.,* Case no. 10-1397 [Doc. No. 36]

The stay will remain in effect until further order of the court. A separate order will enter.

###