SIGNED this 21st day of July, 2011

_____
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

In re:                                                      No.  08-16378
                                                            Chapter 7
STEVE A. McKENZIE
a/k/a TOBY McKENZIE,

                    Debtor.

**MEMORANDUM**

Grant, Konvalinka & Harrison, P.C. ("GKH") has filed a motion seeking leave of this court

to file a state court action in Hamilton County.   [Doc. No. 1031].  This court held a hearing on

this motion on May 18, 2011.

At the hearing GKH described the nature of the claims proposed to be brought in state

court as claims for malicious prosecution and abuse of process.  The motion states that the

trustee's actions and the acts of his attorneys "give rise to causes of action which would best be

brought" in the Circuit Court of Hamilton County, Tennessee.  *See* [Doc. No. 1031].  He seeks to

file suit against the trustee, C. Kenneth Still ("Trustee") and F. Scott LeRoy and LeRoy &

Bickerstaff, PLLC (collectively the "Defendants").[1]  The Defendants filed responses opposing the motion for leave to file an action in Hamilton County.  [Doc. Nos. 1235, 1239].  The parties have also filed briefing relating to their closing arguments regarding the pending motion.  *See* [Doc. Nos. 1306, 1309, 1310].

The motion seeking leave to file suit in Hamilton County, Tennessee seeks to pursue claims that GKH alleges are related to an adversary proceeding filed in this court, Case No. 10-ap-1397.  [Doc. No. 1031].  In that proceeding, the Trustee filed suit against GKH seeking turnover of documents alleged to be property of the estate pursuant to 11 U.S.C. § 542.  *See* [Case No. 10-ap-1397, Doc. No. 1 ("Turnover Complaint")].  On November 5, 2010, this court dismissed that adversary proceeding based on an agreed order of dismissal submitted by the parties.  [Adv. Proc. No. 10-ap-1397, Doc. No. 37].

In addition to this motion pending before the court, GKH has also filed a motion seeking leave to file an action in the Circuit Court of Bradley County, Tennessee.  [Doc. No. 1200].  At the hearing on May 18, 2011, GKH indicated that it sought leave to bring claims of malicious prosecution and abuse of process in Bradley County Circuit Court.

GKH has also already brought an adversary proceeding in this court against defendants Richard Banks, Andrew B. Morgan, Richard Banks & Assoc., P.C., F. Scott LeRoy d/b/a LeRoy & Bickerstaff, F. Scott LeRoy, LeRoy & Bickerstaff PLLC, LeRoy, Hurst & Bickerstaff, PLLC, and C. Kenneth Still for malicious prosecution and abuse of process based on adversary proceeding 10-ap-1407.  *See* [Adv. Proc. No. 11-1016, Doc. No. 1].  The proceeding is still pending in this court, and the defendants have filed motions to dismiss.  This court has yet to rule on the motions to dismiss, but the parties have briefed the issue of Trustee and defendant immunity in that proceeding.  The court seeks to resolve the pending motions for leave prior to issuing its

---

[1]  The court uses Defendants for ease of reference, although no adversary has been filed and the term "Proposed Defendants" may have been more accurate.

opinion on the motions to dismiss in adversary proceeding 11-1016.

### I.    Background

At the hearing the court admitted several exhibits filed by GKH in support of its motion

for leave to file a lawsuit against the Defendants in Hamilton County.  *See* [Doc. Nos. 1243

through 1243-22].  The exhibits include email messages between Richard Banks, Scott LeRoy,

and John Konvalinka pertaining to the retrieval of files pertaining to the debtor Steve A.

McKenzie ("Debtor") or companies in which the Debtor had an interest maintained at GKH's

offices.  The email exchanges discuss whether those files were property of the Debtor or the

estate or GKH.   [Doc. Nos. 1243-1, 1243-2].  One exhibit is the transcript of Mr. Konvalinka's

testimony in a hearing before this court on May 25, 2010. [Doc. No. 1243-3].  At that time Mr.

Konvalinka testified that he would allow the Trustee and Mr. LeRoy to take the records

pertaining to the estate and retained by GKH to a copier service to be duplicated.  *Id.* at pp. 10-

11.  The exhibits also include a letter from Mr. Konvalinka to Mr. LeRoy offering to allow him,

Mr. Banks, and Mr. Still to inspect the requested files and to have them copied by a copy

service. [Doc. No. 1243-6].  GKH also supplied a copy of a videotaped deposition transcript of

the Trustee, as well as the motion for entry of an agreed protective order and the agreed

protective order pertaining to the Turnover Complaint.  [Doc. Nos. 1243-7, 1243-8, 1243-9,

1243-18, 1243-20].

Exhibit 10 admitted at the hearing is a letter from Mr. LeRoy to Mr. Konvalinka dated

October 14, 2010 that describes three different groups of entities that pertain to the Debtor and

the parties' agreement regarding the exchange of files pertaining to the three different groups.

[Doc. No. 1243-10].  Exhibits 11 and 12 are further exchanges of emails and letters between Mr.

Konvalinka and Mr. LeRoy regarding the logistics of exchanges of records and GKH's position

regarding the records at issue.  *See* [Doc. Nos. 1243-11, 1243-12].  Exhibit 13 is an email

message to Mr. Konvalinka outlining the agreement between the parties and indicating how Mr.

LeRoy and the Trustee proposed to "wrap up the Turnover AP." [Doc. No. 1243-13].

GKH also supplied the court with the transcript from the pre-trial conference held in this court on October 28, 2010. [Doc. No. 1243-14, Ex. No. 14]. Exhibit 15 is an exchange of emails regarding the resolution of the Turnover Complaint sent after the final pre-trial conference. [Doc. No. 1243-15]. Exhibits 16 and 17 are an exchange of email messages pertaining to the agreed protective order filed in the Turnover Case. [Doc. No. 1243-16, 1243-17]. GKH has also provided this court with the agreed order of dismissal that resolved the Turnover Complaint "without prejudice." [Doc. No. 1243-21].

Exhibit 22 consists of a copy of a transcript of a hearing held in this court on February 15, 2011. [Doc. No. 1243-22]. During the hearing the Trustee testified regarding the results obtained by proceeding with the turnover action. The following exchange occurred between Mr. Konvalinka, who was cross-examining the Trustee, and the Trustee:

| | |
|---|---|
| Mr. Konvalinka: | You filed a turnover lawsuit and you, you don't have the records today, even though you filed that lawsuit and even though you've non-suited it, isn't that right? |
| Mr. Still: | I think that may be right. |
| Mr. Konvalinka: | All right. Did Mr. LeRoy ever tell you that he was offered to come and look at the records at my office that I had prior to the lawsuit ever being filed? |
| Mr. Still: | I don't recall whether it was before or after the lawsuit being filed, but I recall he did tell me that you said we could come do that. |
| Mr. Konvalinka: | Do you realize that he did not come to my office at any time prior to the filing of the lawsuit to look at any records? |
| Mr. Still: | That's correct. Because they were our records and we wanted them. |
| Mr. Konvalinka: | And you didn't get them, right? |
| Mr. Still: | No. You never would let us have them. |

[Doc. No. 1243-22, Ex. No. 22, p. 19]. GKH asserts that the Trustee's voluntary dismissal of the case indicates that the Defendants lacked probable cause to prosecute the Turnover Complaint.

A final post-hearing exhibit was admitted without objection on July 21, 2011. It is an email from Richard Banks to John Konvalinka regarding settlement discussions related to

causes of action against insiders and Nelson Bowers, John Anderson and GKH.

**II.      Analysis**

**A.      The *Barton* Doctrine**

**1.      The Definition of the *Barton* Doctrine**

The "*Barton* Doctrine" originated in *Barton v. Barbour*, 104 U.S. 126, 129 (1881) in which "the Supreme Court held that a suit could not be maintained against a receiver for an act in his official capacity without first obtaining leave from the court which had appointed him." *Greenblatt v. Richard Potasky Jeweler, Inc. (In re Richard Potasky Jeweler, Inc.)*, 222 B.R. 816, 822 (S.D. Ohio 1998).  In 1932 Judge Learned Hand applied the rule to trustees in bankruptcy, and since that time, "it has been well settled that the rule of *Barton v. Barbour* applies in bankruptcy proceedings." *Id.* (citing *Vass v. Conron Bros. Co.*, 59 F.2d 969, 971 (2d Cir. 1932) and *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993)).

In *In re DeLorean Motor Co.* the Sixth Circuit articulated the *Barton* doctrine in this way: "[i]t is well settled that leave of the appointing forum must be obtained by any party wishing to institute an action in a non-appointing forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court."  991 F.2d at 1241. The court also determined that the "*Barton* Doctrine" applies to attorneys representing the trustee.   *Id.*  The court stated: "[w]e hold, as a matter of law, counsel for trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee, where as here, they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets."  *Id.*  The *Barton* Doctrine exists to "enable[ ] the Bankruptcy Court to maintain better control over the administration of the estate."  *Id.* at 1240; *see also, Heavrin v. Schilling (In re Triple S Restaurants, Inc.)*, 519 F.3d 575, 578 (6th Cir. 2008).

**2.      Narrow Exception to the *Barton* Doctrine Pursuant to 11 U.S.C. § 959(a)**

There is a narrow exception to the *Barton* Doctrine that exists for trustees who are

"carrying on business."  The Bankruptcy Code provides in relevant part:

> Trustees, receivers or managers of any property, including debtors in possession, may be sued without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property.

11 U.S.C. § 959(a).  However, courts have determined that this exception to the leave requirement is a narrow one, and the Sixth Circuit has held that "the exception does not apply to suits against the trustee for actions taken while administering the estate."  *In re DeLorean Motor Co.*, 991 F.2d at 1241.  The Sixth Circuit quoted another bankruptcy court and explained that "'[m]erely collecting, taking steps to preserve, and/or holding assets, as well as other aspects of administering and liquidating the estate, do not constitute 'carrying on business' as that term has been judicially interpreted.'"  *Id.* (quoting *In re Campbell*, 13 B.R. 974, 976 (Bankr. D. Idaho 1981)).

### 3.    Requirements of Seeking Leave from Bankruptcy Court

Several courts have addressed the level of detail regarding the proposed lawsuit that must be provided by a party seeking leave to file suit in state court against a trustee.  For example, in *Kashani v. Fulton (In re Kashani)*, the Bankruptcy Appellate Panel of the Ninth Circuit explored in detail the requirements of seeking leave from bankruptcy court to file suit against a bankruptcy trustee.  190 B.R. 875 (B.A.P. 9th Cir. 1995).  In that case the bankruptcy court postponed the scheduled hearing on the motion for leave and informed the debtors who were seeking leave to sue the trustee that they needed to file their proposed state court complaint with the bankruptcy court.  *Id.* at 880.  When the debtors refused to file a proposed complaint, the bankruptcy court denied their motion for leave without prejudice.  *Id.*  The debtors appealed the bankruptcy court's decision.

The Bankruptcy Appellate Panel first noted that the bankruptcy court maintains "sound discretion" over whether to grant leave to sue in another forum.  *In re Kashani*, 190 B.R. at 881.

*See also, In re Holwerda*, 428 B.R. 730, 733 n.1 (Bankr. W.D. Mich. 2010).  In determining that

the bankruptcy court's requirement of a proposed complaint was not an abuse of discretion, the

Bankruptcy Appellate Panel explained:

> The court granting leave to sue in another forum must be able to evaluate the
> claims that are being asserted against the trustee in order to make its
> independent determination of whether to grant leave to sue.  Before such leave
> may be granted, the prospective plaintiffs must set forth a *prima facie* case
> against the trustee.
>
> Therefore, it is not an abuse of the bankruptcy court's discretion to require the
> Debtors to provide enough information to set forth sufficient grounds upon which
> the Debtors wish to proceed.  The Debtors should file either a sufficiently detailed
> motion or a complaint to provide the requisite information to allow the bankruptcy
> court to make an informed decision. . . .
>
> Additionally, the discretion of the court in exercising its power to grant or deny
> leave to sue the trustee in a court other than the one in which the trustee has
> been appointed should include the balancing of the interests of all parties
> involved.  Thus, the bankruptcy court may conclude that it must adjudicate the
> claim, since the claim will have an impact on the administration of the bankruptcy
> estate.

*In re Kashani*, 190 B.R. at 885-86 (citations omitted).

In reviewing whether the bankruptcy court should grant leave to a party to sue a trustee

in state court, the Bankruptcy Appellate Panel identified several issues that a court might

examine:

> Upon receiving the information from the moving party or the proposed plaintiffs
> (in this case, the Debtors), the bankruptcy court should consider the following
> analysis:
> 1.  Whether the acts or transactions relate to the carrying on of the business
> connected with the property of the bankruptcy estate.  If the proceeding is under
> 28 U.S.C. § 959(a), then no court approval is necessary.  However, the moving
> party may request this initial review by the bankruptcy court . . . .
> 2.  If approval from the appointing court appears necessary, do the claims pertain
> to actions of the trustee while administering the estate?  By asking this question,
> the court may determine whether the proceeding is a core proceeding or a
> proceeding which is related to a case or proceeding under Title 11 . . . .
> 3.  Do the claims involve the individual acting within the scope of his or her
> authority under the statute or orders of the bankruptcy court, so that the trustee is
> entitled to quasi-judicial or derived judicial immunity?
> 4.  Are the movants or proposed plaintiffs seeking to surcharge the trustee; that
> is, seeking a judgment against the trustee personally?

5.  Do the claims involve the trustee's breaching her fiduciary duty either through negligent or willful misconduct?

By conducting such an analysis, the bankruptcy court will determine whether the issues affect solely the administration of the bankruptcy estate and should be heard by the bankruptcy court.  The bankruptcy court will also be able to determine whether the claims have been previously decided on the merits and should not be pursued by the movants or proposed plaintiffs on the basis of *res judicata* or collateral estoppel.  The bankruptcy court will also be in a position to determine whether the trustee is entitled to quasi-judicial or derived judicial immunity.  Again, *one or more of these factors may be a basis for the bankruptcy court to retain jurisdiction over the claims.*  Such an analysis will also assist the bankruptcy court in determining which claims should be tried in another forum.

*Id.* at 886-87 (emphasis added).  In affirming the district court's requirement that the debtors file a proposed complaint, the Bankruptcy Appellate Panel concluded that the debtors could provide either a detailed motion or a proposed complaint for review by the bankruptcy court.[2]  *Id.* at 887.

GKH initially argues that the *Barton* doctrine does not apply because the acts of the Defendants in prosecuting the Turnover Complaint were not "acts done in the trustee's official capacity and within the trustee's authority as an officer of the court."  *In re DeLorean Motor Co.*, 991 F.2d at 1241.  Rather, they were *ultra vires* actions, and as such, GKH argues, it need not seek leave from this court to sue the Defendants in state court.  The court disagrees.  As explained *infra*, the court concludes that the Defendants' acts in prosecuting the Turnover Complaint were acts taken pursuant to the Trustee's duty to investigate the financial affairs of the Debtor.  Such actions fall within the broad scope of the Trustee's duties and obligations pursuant to 11 U.S.C. § 704(a)(4) and 11 U.S.C. §§ 542(a) and (e).  Therefore, the court finds

---

[2]  GKH did neither in its opening motion, and it attempted to cure the deficiency with a fifty-one page reply brief.  The court would like to note that typically, a party does not save all of its legal firepower for a closing argument brief while submitting an opening motion without any briefing or legal argument.  Further, the court also notes that a court may not address legal arguments made for the first time in reply briefing.  *See e.g.*, *Hickman v. Sloan Fluid Accessories, Inc.*, No. 3:10-cv-58, 2011 WL 2200042, at *6 (E.D. Tenn. June 7, 2011) (noting that "[i]t is well settled that a movant cannot raise new issues for the first time in a reply brief . . ."); *Aetna Cas. and Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 545 (6th Cir. 2000); *Rivera-Muriente v. Agosto-Alicea*, 959 F.2d 349, 354 (1st Cir. 1992) (noting that "[i]t is well settled in this court, for good reason which need not be rehearsed here, that a legal argument made for the first time in an appellant's reply brief comes too late and need not be addressed.").

that the *Barton* Doctrine does apply, and GKH must first seek leave of this court to sue the

Trustee in Hamilton County.

**B.    Review of *Kashani* Factors**

The court finds that the factors outlined by the Bankruptcy Appellate Panel in *In re

Kashani* provide a helpful starting point for this court's analysis of GKH's motion.  Accordingly,

the court will review each of the factors in light of GKH's request.

**1.    Whether the acts or transactions relate to the carrying on of the business connected with the property of the bankruptcy estate.**

The first *Kashani* factor relates to the narrow exception outlined in 11 U.S.C. § 959(a).

As explained *supra*, the Sixth Circuit has held that "the exception does not apply to suits against

the trustee for actions taken while administering the estate."  *In re DeLorean Motor Co.*, 991

F.2d at 1241.  Indeed, "'[m]erely collecting, taking steps to preserve, and/or holding assets, as

well as other aspects of administering and liquidating the estate, do not constitute 'carrying on

business' as that term has been judicially interpreted.'"  *Id.* (quoting *In re Campbell*, 13 B.R. at

976).  Courts have interpreted the term "carrying on business" in 11 U.S.C. § 959(a) to include

the actual operation of the former business of the debtor.  For example, in *Robinson v. Michigan

Consol. Gas Co. Inc.*, the Sixth Circuit addressed a situation in which the trustee had been

charged with operating the rental apartments of the debtor and had failed to pay the utility bills

of the apartment building.  The court held that the district court had independent jurisdiction over

the tenants' claims against the trustee for failure to pay utilities pursuant to 11 U.S.C. § 959(a)

because he had been appointed to carry on the business of the debtor real estate entity.  918

F.2d 579, 586 (6th Cir. 1990).

No party has asserted that the Trustee and the other Defendants were carrying on

business of the debtor when the claims relating to the Turnover Complaint arose.  Therefore,

the narrow exception to the *Barton* Doctrine based on the "carrying on business" exception of 11

U.S.C. § 959(a) does not apply here.

 2. **Do the claims pertain to actions of the trustee while administering the estate?**

This factor relates to whether the proposed "proceeding is a core proceeding or a proceeding which is related to a case or proceeding under Title 11 . . . ." *In re Kashani,* 190 B.R. at 885-86.  The Bankruptcy Code provides that a trustee "shall (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of the parties in interest; . . . [and] (4) investigate the financial affairs of the debtor. . . ."  11 U.S.C. §§ 704(a)(1), 704(a)(4).

The Bankruptcy Code further provides in relevant part:

**§ 542.  Turnover of property to the estate**

(a) Except as provided in subsection (c) or (d) of this section, an entity . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate. . . .

(e) Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee.

11 U.S.C. §§ 542(a), 542(e).

Federal courts recognize the right of a trustee to file a "turnover action" as an adversary proceeding.  *See In the Matter of Perkins*, 902 F.2d 1254, 1258 (7th Cir. 1990) (noting that "[a] turnover action is an adversary proceeding which must be commenced by a properly filed and served complaint"); *see also In re Interpictures, Inc.*, 86 B.R. 24, 29 (Bankr. E.D.N.Y. 1988).

In *In re Matter of Perkins* the creditors, who did not have standing to bring an action pursuant to 11 U.S.C. § 704(a)(1), sought to have their motion for turnover turned into a request for a declaratory judgment that the debtors' teacher retirement savings account was property of the estate.  902 F.2d at 1258.  The Seventh Circuit denied this request, noting that the creditors:

cite no authority for their unique proposition that the bankruptcy court in the first instance would have the power to decide as an academic matter whether certain property constitutes property of a bankrupt estate. . . . A declaration that certain property belongs in the bankruptcy estate would not be dispositive in many cases; such property may be immune from turnover. . . . Thus, the determination of whether certain property belongs to the estate should not be made outside of a specific controversy, such as a turnover action.

902 F.2d at 1258.

In this action, GKH's exhibits indicate that the parties were engaged in a legal debate regarding whether GKH's records pertaining to the Debtor's membership interests in several LLCs constituted property of the estate. The Trustee felt that he needed a court order to compel turnover of what he contended was property of the estate; therefore, a turnover adversary proceeding was the natural way to proceed pursuant to Fed. R. Bankr. P. 7001(1).

Further, even if the attorney files were not property of the estate, they *related* to the Debtor's property or interests, and, as such, could be ordered to be turned over to the Trustee in this case. For example, in *American Metrocomm Corp. v. Duane Morris & Heckscher LLP, et al. (In re American Metrocomm Corp.)*, 274 B.R. 641 (Bankr. D. Del. 2002) the bankruptcy court addressed the defendants' argument that they were only obligated to turnover property of the estate. It explained:

> Defendants next argue that turnover under § 542 only applied to property of the estate and the Attorney Files do not constitute property of the estate owing to their sale to CAC. . . . I disagree. "The Bankruptcy Code creates a 'two-part scheme for turnover of property of the estate and other information related to the debtor's property or financial affairs.'" Section 542(a) requires anyone holding property of the estate to deliver it to the trustee. Section 542(e) allows the Court to order "an attorney, accountant or other person that holds recorded information . . . relating to the debtor's property or financial affairs" to turn over such information to the trustee. Although an action for turnover under § 542(a) requires that the information requested be property of the estate, there is no such requirement in § 542(e). Therefore, whether the Attorney Files constitute property of the estate is irrelevant to the Court's determination of whether turnover is proper under § 542(e).

*Id.* at 652 (quoting *In re Foster*, 188 F.3d 1259, 1265 (10th Cir. 1999)) (other citations omitted).

In addition, in *In re American Metrocomm Corp.* the court analyzed the legal issues, including

relevant state rules of professional conduct, of whether the turnover of the attorney files at issue

would be with or without compensation to the defendant law firms.  274 B.R. at 656-663.  The

court ruled that the defendant law firms were required to turn over their attorney files even

without adequate protection as they did not hold valid, perfected and enforceable liens in the

documents under applicable state laws.  *Id.* at 663.

Applying 11 U.S.C. §§ 704(a)(1), 704(a)(4), 542(e), and Fed. R. Bankr. P. 7004, the

court concludes that GKH's proposed claims of malicious prosecution and abuse of process

pertain directly to the Trustee's statutory duties of investigation, collecting assets of the estate,

and seeking turnover of materials relating to the Debtor's financial affairs and interests.  Thus,

this prong of the *Kashani* test militates towards this court's handling of GKH's proposed claims.

**3.    Do the claims involve the individual acting within the scope of his or her authority under the statute or orders of the bankruptcy court, so that the trustee is entitled to quasi-judicial or derived judicial immunity?**

As explained above, the Trustee's actions in bringing the Turnover Complaint related to

the specific duties assigned to him by 11 U.S.C. §§ 704(a)(1) and 704(a)(4).  In addition, 11

U.S.C. § 542(e) provides for the turnover of attorney files relating to a debtor's affairs.  The court

concludes that the Trustee's actions pursuant to these statutory duties make the determination

of possible immunity highly relevant to the analysis here.

For example, in *Lowenbraun v. Canary (In re Lowenbraun)*, the Sixth Circuit reviewed

whether a trustee was protected by immunity from claims of libel, slander, abuse of process,

wrongful use of civil proceedings and the tort of outrage brought against him by the debtor's

wife.  453 F.3d 314, 319 (6th Cir. 2006).  The debtor's wife initiated suit against the trustee

defendant in state court, and the trustee removed the case to bankruptcy court.  The plaintiff

moved for remand or abstention, and the bankruptcy court denied the motion.  It then granted

summary judgment to the trustee on immunity grounds.  The district court affirmed the

bankruptcy court decision, and the plaintiff appealed.  *Id.* The Sixth Circuit reviewed cases

pertaining to trustee immunity, including *In re Heinsohn*, and held that the trustee was entitled to

immunity for both his judicial and extra-judicial statements regarding missing funds.  *Id.* at 322-

23.  The Court noted:

> [The trustee's] role as counsel for the trustee permitted him to investigate [the
> debtor's wife's] transfer and to recover assets properly belonging to the
> bankruptcy estate. [The trustee's] actions, moreover, benefitted the estate. . . .
> Any statements made in the course of [the trustee's] investigation and recovery
> effort were thus within the privilege. [The trustee] is therefore entitled to immunity
> for his judicial statements.

*Id.* at 323.  *See also, Kirk v. Hendon (In re Heinsohn)*, 231 B.R. 48, 50 (Bankr. E.D. Tenn.

1999), *aff'd* 247 B.R. 237 (E.D. Tenn. 2000).

The issue of whether the Defendants in this action are possibly immune from claims

based on their actions taken in filing and litigating the Turnover Complaint are important for this

court's resolution of this motion.  The court concludes that the Defendants have a strong

possibility of immunity to the actions proposed by GKH.  The court is addressing the law

surrounding trustee immunity in detail in its Adversary Proceeding No. 11-1016.  Therefore, the

court only concludes for purposes of this memorandum opinion that the possibility of trustee

immunity again weighs in favor of the bankruptcy court's denial of GKH's motion for leave to sue

the Defendants in Hamilton County.

### 4.    Are the movants or proposed plaintiffs seeking to surcharge the Trustee; that is, seeking a judgment against the Trustee personally?

It appears that GKH is seeking a judgment against the Defendants individually rather

than against the assets of the estate.  Since personal liability is at stake, and immunity may

apply, the court again concludes that this factor weighs in favor of the court's denial of GKH's

motion.

### 5.    Do the claims involve the Trustee's breaching his fiduciary duty either through negligent or willful misconduct?

In *In re Heinsohn* the bankruptcy court explained the difference between a claim against

a trustee for breach of fiduciary duty brought by a beneficiary of the estate and a claim against a

trustee brought by a third party nonbeneficiary alleging an action based on some other legal

theory such as tort or contract.  *See* 231 B.R. at 64-66.  GKH is not alleging a breach of

fiduciary duty as a creditor.  Such a claim might involve allegations that the Trustee was not

adequately pursuing assets of the estate or was otherwise squandering assets of the estate.

Instead, GKH is arguing that the Trustee was pursuing property that was not property of the

estate, maliciously prosecuting GKH in the process.  GKH also alleges that the Defendants'

actions constituted an abuse of process.  These claims are based in tort rather than fiduciary

law.

 Although the presence of a tort action might weigh in favor of allowing GKH to proceed

in state court, the court concludes that because the alleged torts are so intertwined with the

Trustee's duties pursuant to 11 U.S.C. § 704 and the turnover provisions of 11 U.S.C. § 542(e),

these claims are better suited to be heard in bankruptcy court.

 The court concludes that, upon review of the applicable *Kashani* factors, GKH's claims

relate to the heart of this court's jurisdiction and should not be brought in state court.

 **C. Policy Considerations**

 In addition to finding that a review of the *Kashani* factors weighs in favor of denying

GKH's motion, the court concludes that several policy reasons also inform its decision to deny

the motion.  Policy considerations are relevant to a determination of whether to grant leave to

sue a trustee in state court.  *See e.g., In re Kids Creek Partners, L.P.*, 248 B.R. 554, 556

(Bankr. N.D. Ill. 2000).  This court has discretion to grant or deny such a motion for leave and its

determination involves "the balancing of the interests of all parties involved.  Thus, the

bankruptcy court may conclude that it must adjudicate the claim, since the claim will have an

impact on the administration of the bankruptcy estate."  *In re Kashani*, 190 B.R. at 885-86

(citations omitted).  As explained above, the court has determined that the resolution of GKH's

tort claims may have an impact on the administration of the estate since the Turnover Complaint related directly to the Trustee's attempts to administer that estate through its powers of investigation and its duty to collect assets of the estate.  *See* 11 U.S.C. § 704.

In *In re Kids Creek Partners, L.P.*, the bankruptcy court addressed a motion for leave to sue filed by creditors in the bankruptcy case.  248 B.R. 554 (Bankr. N.D. Ill. 2000).  In that case, two creditors sued the bankruptcy trustee and his counsel in federal district court claiming willful and deliberate breaches of fiduciary duty and malicious prosecution.  *Id.* at 556.  The plaintiffs' claims related to an adversary proceeding that the trustee and his counsel filed against the plaintiffs.  They subsequently filed a motion in bankruptcy court seeking leave to continue to pursue the district court action.  *Id.*  The bankruptcy court denied the motion, concluding that the plaintiffs had not stated a prima facie case against the defendants and that "policy considerations militate[d] against exercise of discretion to permit such suit."  *Id.*

In their motion the plaintiffs sought to recover from the defendants personally, rather than from the assets of the estate.  *In re Kids Creek Partners*, 248 B.R. at 558.  The court noted that "[a]s an officer of the court, a trustee's exposure to personal liability is limited.  A trustee 'cannot be held personally liable unless he acted outside the scope of his authority as trustee, i.e. *ultra vires*, or breached a fiduciary duty that he owed as the trustee to some claimant fee.'"  *Id.* at 558 (quoting *In re Schechter*, 195 B.R. 380, 384 (N.D. Ill. 1996)).   The court further explained:

> Because bankruptcy trustees serve an important function as officers of the court in the administration of bankruptcy cases, they are afforded limited personal immunity when operating pursuant to their authority . . . .
>
> Trustees are further protected from undue personal liability by the "leave to sue" requirement.  One compelling justification for imposition of both limited immunity and the leave-to-sue requirement is that otherwise
>
> "trusteeship will become a more irksome duty, and so it will be harder for courts to find competent people to appoint as trustees. . . ."

> The leave-to-sue requirement also protects trustees from excessive interference in the execution of their duties resulting from [the] need to defend themselves in lawsuits filed by parties upset by their treatment in the trustee's bankruptcy proceeding, . . . .
>
> There are further compelling justifications for requiring a party to demonstrate ability to plead a prima facie case of willful and deliberate breach of fiduciary duty or ultra vires act before leave may be obtained to sue a trustee personally. . . .
>
>> If debtors, creditors, defendants in adversary proceedings, and other parties to a bankruptcy proceeding could sue the trustee in state court for damages arising out of the conduct of the proceeding, the court would have the practical power to turn bankruptcy losers into bankruptcy winners, and vice versa.

*In re Kids Creek Partners*, 248 B.R. at 559 (quoting *In the Matter of Linton*, 136 F.3d 544, 545-46 (7th Cir. 1998)); *see also, In re Berry Publishing Servs., Inc.*, 231 B.R. 676, 679 (Bankr. N.D. Ill. 1999).  The court further concluded that the trustee's alleged use of "poor judgment" that affected the estate adversely did not rise to the level of a breach of fiduciary duties.  *Id.* at 561.  It concluded that "[t]o hold a trustee personally liable for making an unwise litigation decision, especially when based on pre-bankruptcy events which gave rise to the litigation issue, would make trusteeship an onerous, risky, and costly task which few would voluntarily undertake."  *Id.* at 562.  With respect to the plaintiffs' malicious prosecution claim and their allegation that the defendants failed to make an adequate investigation, the court determined that they failed to state a prima facie case of their claim under state law.  *Id.* at 563.

The court finds that these policy considerations are applicable here.  The court has concerns regarding discouraging a trustee from pursuing his statutory obligations to investigate the financial affairs of a debtor and collect assets of the estate in an expeditious manner.  Subjecting a trustee to multiple state court lawsuits relating to his actions taken pursuant to his statutory duties might well inhibit a trustee from forcefully seeking to protect creditors by vigorously pursuing possible claims of the estate.  As the Seventh Circuit noted in *In the Matter of Linton*:

If [the trustee] is burdened with having to defend against suits by litigants disappointed by his actions on the court's behalf, his work for the court will be impeded.

*The concern is most acute when suit is brought against the trustee while the bankruptcy proceeding is still going on.* The threat of his being distracted or intimidated is then very great, . . . .

136 F.3d at 545 (emphasis added).

The main bankruptcy case pertaining to the Debtor is still ongoing at this time. The court concludes that the risk of the Trustee being distracted by a state court lawsuit involving the Turnover Complaint, which has been dismissed for several months, is simply too great.

Moreover, GKH has *already* filed one adversary proceeding in this court pertaining to the alleged actions of these same Defendants. *See* Adversary Proceeding No. 11-1016. This adversary proceeding alleges both malicious prosecution and abuse of process against the Defendants for pursuing another adversary proceeding against GKH. Allowing GKH to pursue very similar claims in state court could result in a tremendous waste of both judicial and the parties' resources. This court has been enmeshed in the facts of the Debtor's case, as well as the relevant adversary proceeding for many months, and to ask a state court to obtain detailed factual knowledge of this highly complicated and heavily-litigated matter could result in overburdening a state court. In addition, allowing a state court without the expertise of a bankruptcy court to determine issues pertaining to the scope of a bankruptcy trustee's duties and his possible immunity might well result in conflicting judicial opinions on highly-related matters. These policy reasons alone are sufficient reason to deny GKH's motion for leave.

### D.    GKH's Assertion of Prima Facie Case

GKH appears to argue that if it states a prima facie case of malicious prosecution and abuse of process, its motion for leave should be granted. As explained *supra*, in *In re Kashani* the Ninth Circuit explained that an entity seeking leave to sue must provide evidence of a prima facie case of its claims so that the bankruptcy court can make an assessment of whether such a

claim should be brought in state court or is more appropriately heard by the bankruptcy court.

*See Kashani*, 190 B.R. at 886-87.  This court has already concluded that several policy

considerations support its denial of GKH's motion.

However, even if it were relevant whether GKH stated a prima facie case of its tort

claims against the Defendants, the court concludes that GKH has failed to demonstrate that it

can state such a prima facie case of malicious prosecution or abuse of process.

### 1.    Malicious Prosecution

Under Tennessee law, a claim of malicious prosecution requires a plaintiff to

demonstrate three elements: "(a) that a prior lawsuit or judicial proceeding was brought against

the plaintiff without probable cause, (b) that the prior lawsuit or judicial proceeding was brought

against the plaintiff with malice, and (c) that the prior lawsuit or judicial proceeding terminated in

the plaintiff's favor."  *Parrish v. Marquis*, 172 S.W.3d 526, 530 (Tenn. Sup. Ct. 2005).  A plaintiff

bears a heavy burden of proof to establish the elements of lack of probable cause and malice.

*Buda v. Cassel Bros., Inc.*, 568 S.W.2d 628, 631 (Tenn. Ct. App. 1978).

In *Buda* the court adopted the description from the Restatement of Torts regarding the

element of probable cause:

> In order to establish the lack of probable cause in instituting a civil proceeding, it
> must appear that the suit was filed primarily for a purpose other than that of
> securing the proper adjudication of the claim in which the proceedings are based.
> If it is established that the party instituting the proceeding reasonably believes in
> the existence of the facts upon which the claim is based and has reasonable
> belief that under those facts the claim may be valid or has reasonable belief in
> reliance upon the advice of counsel, sought in good faith and given after full
> disclosure of all relevant facts within his knowledge and information, then
> probable cause is established.

*Id.* at 631-32 (quoting Restatement of Torts, Second §§ 674, 675).

In *In the Matter of Linton* the court considered the issue of probable cause for a trustee's

actions.  It addressed the plaintiff's contention that the trustee's dismissal of an adversary action

indicated a lack of probable cause:

> [The plaintiffs] appear to believe that the fact that the trustee dropped the
> adversary action shows that it was groundless and therefore malicious.  This of
> course is wrong.  Many suits filed in good faith after careful precomplaint
> investigation fizzle long before judgment whether because further investigation
> fails to substantiate the allegations of the complaint or because the defendant
> presents compelling evidence in his favor that the plaintiff didn't know about or
> because it turns out that the defendant doesn't have sufficient assets to make the
> continued prosecution of the suit worthwhile.  As long as there is probable cause
> to sue, there is no malicious prosecution.
>
> The bankruptcy judge was satisfied that there was probable cause here. . . . The
> fact that [the trustee] couldn't substantiate his suspicions did not retroactively
> remove his probable cause to sue.

136 F.3d at 547.  The court then affirmed the bankruptcy court's decision to deny leave to sue

the trustee in state court.

In this action, although the Defendants chose not to pursue the records issue further,

they had legal authority for seeking copies of the requested records.  As explained *supra*, the

Trustee has the duty and obligation to investigate the Debtor's financial affairs.  *See* 11 U.S.C. §

704(a)(4).  Further, the Bankruptcy Code requires files pertaining to the debtor's interests to be

turned over to the trustee.  11 U.S.C. § 542(e).  In addition, there is legal authority for the idea

that a state's Rules of Professional Conduct may make such a turnover required without

adequate protection.  *See In re American Metrocomm Corp.*, 274 B.R. at 663.

Moreover, the court finds that the Trustee was not entirely unsuccessful in its efforts to

obtain some property of the estate by filing the Turnover Complaint.  For instance, one of the

letters that GKH supplied to the court as an exhibit explains how GKH agreed to turnover

personal records belonging to the Debtor, as well as records pertaining to entities that were

owned 100% by the Debtor.  *See* [Doc. No. 1243-10].  In the letter dated October 14, 2010, Mr.

LeRoy described three different groups of records and noted, "[f]rom our conversations over the

last several days, I understand you are agreeable to transferring files in GKH possession for

entities 100% McKenzie owned. . . . If this understanding is correct, lease let me know when we

may pick up these files."  *Id.*  The letter listed sixteen different entities that were "100%

McKenzie owned."  The letter also states, "I acknowledge receipt of [the Debtor's] personal files or documents by hand-delivery from you[r] office on October 12th.  Thank you."  *Id.*  Thus, through the filing of the Turnover Complaint, the Defendants were successful in obtaining at least a subset of the records they had previously requested without success.

Further, the parties entered into a highly detailed protective agreement with a protective order entered by the court that outlined the use and disclosure of other records.  *See* [Adv. Proc. No. 10-1397, Doc. No. 36].  Thus, the court cannot say, based on the evidence presented in the record, coupled with this court's entry of a protective order that the Defendants simply dismissed the Turnover Complaint without obtaining any of the goals sought in the action.

GKH may not agree with these legal authorities, but the decision regarding whether the Defendants had probable cause to institute the turnover action, as a matter of law, is not for GKH to make.  The court is authorized to make determinations regarding interpretation of the Bankruptcy Code's provisions.  The court concludes that the Defendants did not act without a legal basis in filing the Turnover Complaint and seeking a decision from this court regarding GKH's obligation to turnover files pertaining to the Debtor's interests.  Therefore, GKH cannot demonstrate a lack of probable cause for the Turnover Complaint.

### 2.    Abuse of Process

Under Tennessee law to establish a claim of abuse of process a plaintiff must show: "'(1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge.'"  *Givens v. Mulliken ex rel. Estate of McElwaney*, 75 S.W.3d 383 (Tenn. Sup. Ct. 2002) (quoting *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 555 (Tenn. Sup. Ct. 1999)).  Further, "[a]buse of process differs from malicious prosecution in that abuse of process lies 'for the improper use of process *after* it has been issued, not for maliciously causing process to issue.'"  *Bell ex rel. Snyder*, 986 S.W.2d at 555.  In addition:

> [t]he test as to whether there is an abuse of process is whether the process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be compelled to do.

*Priest v. Union Agency*, 125 S.W.2d 142, 144 (1939).

GKH urges that it has demonstrated a prima facie case of abuse of process because the Defendants "attended depositions and insisted on proceeding forward with court hearings and conferences, including a pre-trial conference, despite having no legal support for their claims, in their efforts to continue to prosecute the [Turnover Complaint] against GKH for an ulterior purpose." [Doc. No. 1306, Brief in Support of Grant, Konvalinka & Harrison, P.C.'s Motion for Leave to File Action in the Circuit Court of Hamilton County, Tennessee, p. 39]. However, the court has already discussed *supra* the legal support for the Trustee's claims alleged in the Turnover Complaint. The Trustee and GKH were engaged in a legitimate legal dispute regarding GKH's obligations to turnover documents relating to the Debtor's interests pursuant to 11 U.S.C. §§ 704(a)(1), 704(a)(4), and 542(e). The agreed protective order was entered partly to protect GKH's other clients and does not preclude the finding that the records in dispute related to the Debtor's financial affairs.

Although the Trustee ultimately agreed to dismiss the Turnover Complaint, his pursuit of records potentially pertaining to the Debtor's interests was not without a basis in the law. In addition, his dismissal of the proceeding does not eliminate the legal underpinnings of the proceeding. *See e.g., In the Matter of Linton*, 136 F.3d at 547. Further, as explained *supra*, the Defendants did not simply dismiss the Turnover Complaint without achieving any of their goals in seeking records of the estate. *See e.g.* [Adv. Proc. No. 10-1397, Doc. No. 36]; [Doc. No. 1243-10].

The Trustee dismissed the Turnover Complaint by November of 2010 after filing the proceeding in late July of 2010. Although GKH may have attended some depositions and pre-

trial hearings, as well as exchanged email messages with the Defendants, there is no evidence that the Defendants engaged in any conduct not typical of other types of litigation or adversary proceedings.  The Defendants had a legal argument regarding why they were entitled to copies of the records pertaining to the Debtor's interests.  *See* 11 U.S.C. § 542(e); *In re American Metrocomm Corp.*, 274 B.R. 641.

The court concludes that even if GKH's demonstration of a prima facie case of abuse of process was dispositive, GKH has failed to establish such a prima facie case.  GKH has no evidence that the Defendants engaged in process that would not be proper in the regular prosecution of a turnover action pursuant to 11 U.S.C. §§ 704(a)(1), 704(a)(4), and 542(e).  To the extent that GKH argues that the Defendants' claims in the Turnover Complaint were frivolous, that is a legal issue for the court to decide rather than an issue for GKH to determine.

### III.    Conclusion

As explained in detail *supra*, the court concludes that a review of the *Kashani* factors militates in favor of denial of GKH's motion.  In addition, strong policy considerations, including efficient use of judicial resources and protection of a trustee from the distraction of litigation during an ongoing bankruptcy case, weigh in favor of this court's denial of GKH's motion.  Finally, the court has determined that GKH has failed to make out a prima facie case of either malicious prosecution or abuse of process with respect to the Turnover Complaint as there is a basis in the law for the Trustee's request for the turnover of documents pertaining to the Debtor's interests.  For these reasons, GKH's motion will be DENIED.

A separate order will enter.