**SIGNED this 5th day of August, 2011**


_Shelley D. Rucker_
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____


UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

In re:                                                              No.  08-16378
                                                                   Chapter 7
STEVE A. McKENZIE
a/k/a TOBY McKENZIE,

            Debtor.


**MEMORANDUM**


Grant, Konvalinka & Harrison, P.C. ("GKH") has filed a motion seeking leave of this court

to file a state court action in Bradley County against the trustee in this case, C. Kenneth Still

("Trustee"), and the Trustee's attorneys, Richard L. Banks, and Richard L. Banks & Associates,

P.C.("Defendants").[1]    [Doc. No. 1200].  This court held a hearing on this motion on May 18,

2011.

The motion states that the "actions of the Trustee and his attorneys in filing and

_____

[1]  The court has used Defendants as the term for these parties, although no lawsuit
naming them as such has been filed.  "Proposed Defendants" may be a more accurate title.

attempting to prosecute the Bradley County Complaint give[ ] rise to causes of action which would best be brought in the Circuit Court of Bradley County, Tennessee." *See* [Doc. No. 1200 at 2]. At the hearing GKH described the nature of the claims it seeks to bring as claims for malicious prosecution and abuse of process. This lawsuit would pursue claims that arise from the filing of a lawsuit by Steve A. "Toby" McKenzie (the "Debtor"), and the Trustee against Nelson Bowers, II, Exit 20 Auto Mall, LLC, John Anderson and GKH in the Chancery Court of Bradley County, Tennessee on August 6, 2010 ("Malpractice Lawsuit").  [Doc. No. 1200-1] .

The court makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 as made applicable to contested matters by Fed. R. Bankr. P. 9014.

## I.    Background

### A.    Related Litigation

The Malpractice Lawsuit stated, with respect to jurisdiction, "[c]ontemporaneously with this State Court action, the Plaintiffs have filed in the United States Bankruptcy Court for the Eastern District of Tennessee Southern Division at Chattanooga, a related case dealing exclusively with claims that are core to the bankruptcy proceedings in that Court. . . . The action filed in this Court is exclusively for non-core matters and causes of action(s) that may only be properly heard in this Court."  [Doc. No. 1200-1, ¶ 1].

The "related case" to which the debtor and the Trustee referred is an adversary proceeding which was filed on August 5, 2010, in this court, styled *Still v. Nelson E. Bowers II, Exit 20 Auto Mall, LLC, John Anderson, GKH, and CapitalMark Bank & Trust*, Adv. Proc. No. 10-1407, in which the the Trustee sought to set aside, among other things, a transfer of 50 acres of real estate in Bradley County conveyed by a limited liability company in which the Debtor was a 50% member ("50 Acre Lawsuit").  The details of this suit are discussed in more detail in the recitation of this court's previous findings set forth below. On December 16, 2010, this court dismissed the 50 Acre Lawsuit in which the Trustee had alleged claims of violation of the

automatic stay, avoidance of preferences, avoidance of fraudulent transfers, equitable

subordination and claims against insiders.  *See* [Adv. Proc. No. 10-1407, Doc. Nos. 1, 67].

Following that dismissal, GKH filed an adversary proceeding against Richard Banks, Andrew B.

Morgan, Richard Banks & Assoc., P.C., F. Scott LeRoy d/b/a LeRoy & Bickerstaff, F. Scott

LeRoy, LeRoy & Bickerstaff PLLC, LeRoy, Hurst & Bickerstaff, PLLC, and C. Kenneth Still

alleging malicious prosecution and abuse of process ("50 Acre Malicious Prosecution Case").

*See* [Adv. Proc. No. 11-1016, Doc. No. 1].

A review of the Malpractice Lawsuit and the 50 Acre Lawsuit reveals that the factual

allegations of each, while not completely identical in every respect, are substantially similar.

*See* [Adv. Case No. 10-ap-1407, Doc. No. 1, Complaint] and [Doc. No. 1200-1, Ex. A].  GKH

admits that the 50 Acre Lawsuit is an "admittedly related case" having the "'same operative

facts'" as the Malpractice Lawsuit.  [Doc. No. 1307, p. 2].  GKH has already filed the 50 Acre

Malicious Prosecution Case, and it now seeks to pursue the same causes of action in Bradley

County based on the Malpractice Lawsuit, a case with the "same operative facts."  The court will

refer to the action which GKH seeks to bring in Bradley County as the "Bradley County

Malicious Prosecution Case."

The 50 Acre Malicious Prosecution Case is still pending in this court, and the defendants

have filed motions to dismiss.  This court has yet to rule on the motions to dismiss, but the

parties have briefed the issue of the applicability of immunity for the Trustee and his counsel in

that proceeding.  The court seeks to resolve the pending motions for leave prior to issuing its

opinion on the motions to dismiss in Adversary Proceeding No. 11-1016.

**B.      Exhibits Presented at the Hearing**

In support of its motion, GKH attached a copy of the complaint and the accompanying

exhibits filed in the Malpractice Lawsuit, which were admitted at the hearing.  In the Malpractice

Lawsuit, the Debtor and the Trustee had brought claims of breach of fiduciary duty and conflict

of interest, assisting a fiduciary on committing a breach of duty, and civil conspiracy against the

various defendants.  *See id.* Also in support of its motion for leave, GKH provided the court with

an Agreed Order Clarifying [Bradley County Chancery] Court's Order Entered January 26, 2011

and Resolving Two Pending Motions ("Bradley County Order").  [Doc. No. 1200-2].

At the May 18th hearing the court admitted several additional exhibits filed by GKH in

support of its motions for leave to file suit against the Defendants.  *See* [Doc. Nos. 1248 through

1248-6].  These exhibits include the motions for dismissal pursuant to Tennessee Rule of Civil

Procedure 12 filed by defendants named in the Malpractice Lawsuit. [Doc. Nos. 1248-1, 1248-2,

1248-3].  The exhibits also include the order filed in this court dismissing the 50 Acre Lawsuit,

Adv. Proc. No. 10-ap-1407, entered on December 16, 2010, as well as the transcript of the

hearing on the motion to dismiss held on December 16, 2010.  [Doc. No. 1248-3].  GKH also

provided the court with its response to the Trustee's and Debtor's memorandum of authority

relating to the motion to dismiss the Malpractice Lawsuit. [Doc. No. 1248-4].  The record also

includes the Bradley County Chancery Court's order dismissing the Trustee's and Debtor's

claims of breach of fiduciary duty and conflict of interest on statute of limitations grounds. [Doc.

No. 1248-5].  GKH's final hearing exhibit consists of a letter from Richard Banks dated February

of 2011 to counsel for the defendants in the Malpractice Lawsuit regarding the settlement of that

lawsuit. [Doc. No. 1248-6].

In its "closing argument" briefing filed on June 10, 2011, GKH added additional exhibits

which were admitted upon motion without objection on July 21, 2011.  They included additional

pleadings filed in the Bradley County Chancery Court.

## II.    Facts

This court has already summarized some of the underlying factual allegations of the

Malpractice Lawsuit in its opinion relating to GKH's motion to clarify.  *See* [Doc. No. 1199].  For

ease of reference, the court will quote its factual findings from its opinion that summarized the

Trustee's and the Debtor's allegations relating to the Malpractice Lawsuit, as well as the 50

Acre Lawsuit.   The court has already found the following:

> This case began as an involuntary petition filed against Steve A.
> McKenzie on November 20, 2008.  The involuntary case was followed by a
> voluntary Chapter 11 petition, Case No. 08-16987, filed on December 20, 2008.
> The voluntary case was consolidated with the involuntary case on January 16,
> 2009, and proceeded as a Chapter 11.  Mr. Kenneth Still was appointed trustee
> for the Chapter 11 case on February 20, 2009.  [Doc. No. 140].  The case was
> converted to a Chapter 7 proceeding on June 14, 2010 [Doc. No. 789], and Mr.
> Still was reappointed as the Chapter 7 Trustee.  *See* Bankr. Case No. 08-16378,
> Docket Entry dated 6/14/10.  In the Chapter 11 and the Chapter 7, Mr. Scott
> LeRoy and Mr. Richard Banks were employed as counsel to the Trustee under
> 11 U.S.C. § 327(e).  Mr. LeRoy was hired to assist the Trustee with a wide
> variety of matters. [Doc. No. 1069].  Mr. Banks was employed as special litigation
> counsel.  [Doc. No. 806, entered July 1, 2010].  Mr. Banks had previously
> represented the debtor in the Chapter 11 and was retained to pursue causes of
> action against certain individuals and law firms listed in Schedule B. Those
> causes of action are described in an "Exhibit A as Amended in Schedule B" filed
> with the court on May 24, 2010.  [Doc. No 721].  They include "Pre & Post
> Petition legal claims against Grant, Konvalinka & Harrison" estimated at
> $2,500,000.  *Id.*  No objection was filed to Mr. Banks' employment.

> On August 5, 2010, the Trustee brought an action against Nelson E.
> Bowers II, Exit 20 Auto Mall, LLC, John Anderson, Grant, Konvalinka and
> Harrison, PC, and CapitalMark Bank & Trust. [Adv. No. 10-1407, ("Trustee's
> Complaint")].[2]  The Trustee's Complaint was signed by Mr. Banks and Mr. LeRoy
> as counsel for Mr. Still.  *See* [Adv. No. 10-1407, Doc. No. 1].

> The enumerated causes of action in the Trustee's Complaint were
> violation of the automatic stay, avoidance of post petition transfers, avoidance of
> preferences, avoidance of fraudulent transfers, an action to determine the validity
> of a lien, equitable subordination, and preference claims against insiders. The
> Trustee's Complaint sought to avoid a post petition transfer of approximately
> sixty acres[3] of real estate located in Bradley County, Tennessee.  Based on
> filings with the Tennessee Secretary of State and the Register's Office of Bradley
> County which were attached to the Trustee's Complaint and on which Judge
> John C. Cook relied in his dismissal, [Adv. No. 10-1407, Doc. No. 1]; [Transcript,

---

[2] This lawsuit is referred to in this memorandum elsewhere as the "50 Acre Lawsuit."

[3] The difference between the reference to sixty acres in these facts and the court's use
of fifty acres is this memo is based on the allegation contained in both the 50 Acre Lawsuit and
the Malpractice Lawsuit that ten of the sixty acres owned by Cleveland Auto Mall, LLC had been
conveyed to NBR TOY Properties, LLC, several months before the December transfer occurred.
It appears to the court that Cleveland Auto Mall, LLC owned only fifty acres when the transfer
giving rise to both lawsuits occurred.

Adv. No. 10-1407 at pp. 8-9], the transferor was Cleveland Auto Mall, LLC whose members were the debtor and Mr. Nelson E. Bowers, II.  The transferee company was Exit 20 Auto Mall, LLC, formed December 10, 2008, organized by Wayne Grant, who also served as registered agent with an address at 633 Chestnut Street, Chattanooga, TN.  The deed was dated December 10, 2008, approximately twenty days after the involuntary filing.  The deed reflects that it was "Prepared by and [to be returned] to Grant, Konvalinka & Harrison, P.C., Ninth  Floor - Republic Centre, 633 Chestnut Street, Chattanooga, TN 37450-0900."  *See* [Adv. No. 10-1407, Doc. No 1, p. 47]. The Affidavit of Value on the deed was signed by Nelson E. Bowers, II as Chief Manager and showed a value of $4,000,000. The Trustee's Complaint also had attached a Deed of Trust from Cleveland Auto Mall, LLC to Suntrust Bank dated February 24, 2006, securing approximately $3,800,000 in debt.

The court granted the motion of CapitalMark Bank & Trust for a judgment on the pleadings and granted the Motion of GKH to dismiss the Trustee's Complaint on December 16, 2010.  [Adv. No. 10-1407, Doc. No. 67].  The court could not find any allegation of a transfer of property of the debtor or the estate. It found that the transfers alleged to have been made were of property owned by the limited liability company based on the documentation attached to the complaint.  With respect to the allegation regarding equitable subordination, the court found the claim was insufficient to support a claim for equitable subordination because the pleadings demonstrated no actions against property of the estate or the debtor.  [Transcript, Adv. No. 10-1407 at p. 11].

GKH is also a creditor in the case.  It filed a secured claim for $406,828.51 on April 27, 2009.  [Bankr. Case. No. 08-16378, Claim 86-1].  This claim reflected that the collateral securing its debt was real property.  GKH amended its claim on February 9, 2011, to increase the amount owed to $750,000 and reflected that its collateral was real estate and "other."  It attached a promissory note dated October 24, 2008, and a pledge agreement dated October 13, 2008, between the debtor and GKH, pledging a number of equity interests of the debtor.  [Bankr. Case. No. 08-16378, Claim 86-2].  GKH also attached an amended pledge agreement dated October 29, 2008, which pledged additional equity interests including the debtor's interest in Cleveland Auto Mall, LLC.  GKH also attached three deeds of trust on certain real estate of the debtor pledged on October 24, 2008.  [Bankr. Case. No. 08-16378, Claim 86-2, Parts 5, 6, and 7].  The amended pledge agreement recited that "Whereas, Pledgee has provided as of the date hereof to the Pledgor and the various Companies legal services in the amount of at least $385,000 ("Legal Services"); and Whereas, in order to induce Pledgee to continue to provide legal services to Pledgor and the Companies, Pledgor has agreed to pledge to Pledgee all of his interests as set forth on Exhibit 'A'". The entities listed on Exhibit A were defined as the "Companies." *Id.* Part 4, Amendment to Membership Interest and Stock Pledge Agreement at 1. The services to be provided would be "in an amount of at least $750,000." *Id.*

*See* [Doc. No. 1199, pp. 2-5, Memorandum Opinion relating to GKH's Motion to Clarify].

In addition to the 50 Acre Lawsuit, on August 6, 2010, the Trustee also joined the Debtor in filing the Malpractice Lawsuit seeking damages for breach of fiduciary duty, conflicts of interest and conspiracy by GKH and Nelson Bowers and the transferee of the 50 acres. Like the 50 Acre Lawsuit, the complaint in Bradley County alleged that Cleveland Auto Mall, LLC ("CAM") was owned by Mr. Bowers and the Debtor, that CAM owned 50 acres in Bradley County, Tennessee, that the property was worth $250,000 an acre, that ten acres had been transferred to NBR TOY Properties, LLC for $1,002,000 but CAM had not received payment for the transfer, that the Debtor was suffering severe health problems in December of 2009, that GKH which had been counsel for the Debtor and his entities had drafted the documents that transferred those acres to a limited liability company owned by Mr. Bowers, and that Mr. McKenzie signed a deed as a member of CAM conveying the 50 acres to Exit 20 Auto Mall, LLC, an entity owned at least in part by Mr. Bowers. Like the 50 Acre Lawsuit, the only allegation about the debt of CAM was that it owed $3,000,000 to SunTrust Bank. There was no allegation specifically addressing the value of the debtor's equity at the time of the transfer.

The Trustee and his counsel fared no better in the Malpractice Lawsuit than they had in the 50 Acre Lawsuit. The complaint was met with motions to dismiss from GKH and Nelson Bowers. GKH first raised the defense of the statute of limitations. It argued that "if McKenzie suffered a legally cognizable injury resulting from the events described in the complaint as occurring on December 10, 2008, clearly McKenzie either knew, or should have known, the facts sufficient to give notice of the injury at that time since the allegation of the complaint admit that McKenzie was intimately involved."  [Doc. No. 1248-1, Motion to Dismiss by GKH, at 11]. On November 2, 2010, Mr. Bowers also filed a motion to dismiss the first two counts based on the failure of the complaint to state a viable cause of action, the expiration of the statute of limitations, and lack of any fiduciary duty owed by Mr. Bowers. The motion sought dismissal of the third count of conspiracy between the defendants based on there having been no violation

of the stay and the plaintiffs' failure to state a viable cause of action with respect to fraudulent transfer, fraudulent misrepresentation or fraudulent concealment.  [Doc. No. 1248-2, Motion to Dismiss by Nelson Bowers at 2-3].  On January 4, 2010, GKH joined the Bowers motion to dismiss.

The Trustee and the Debtor responded on January 5, 2010 with a Memorandum of Authorities and a Motion for Joinder of an Indispensable Party. The indispensable party was CAM. GKH contends that these January filings, made after the bankruptcy court's December ruling that the 50 acres was not property of the estate, give rise to additional damages. GKH contends that the Trustee failed to acknowledge the "clear preclusive effect" of the bankruptcy court's ruling in the 50 Acre Lawsuit.  [Doc. No. 1307, Brief in Support of GKH's Motion for Leave to File Action in Bradley County at 17].  On January 26, 2011, the Chancellor found that the affidavit filed by the Debtor and the Trustee was "not sufficient to raise the issue of tolling of the Statute of Limitations under the case law in Tennessee." [Doc. No. 1248-5, Chancellor's Order, January 25, 2011].  The Chancellor granted the motion to dismiss with respect to causes of action related to breaches of fiduciary duty and conflicts of interest based on his finding that those two causes of action had a one year statute of limitations. *Id.*

On February 22, 2011, the Trustee and the Debtor announced in open court that they were going to submit an order which would provide that the January 25, 2011 Order would be a final dismissal as to all defendants and all counts. That announcement was memorialized in an order entered on March 4, 2011.  [Doc. No. 1200-2, Ex. B, Chancellor's Agreed Order].

GKH contends that the pursuit of these causes of action in light of the one year statute of limitations and the additional filings made after the bankruptcy court ruling present a *prima facie* case of malicious prosecution and abuse of process. It seeks leave to pursue these claims in the Circuit Court of Bradley County, Tennessee.

### III.      Issue

The court must determine whether it is appropriate to grant leave to GKH to pursue

causes of action for malicious prosecution and abuse of process based on the Trustee's

involvement in the Malpractice Lawsuit, a lawsuit in which the Trustee pursued recovery for the

estate through an action in the Chancery Court of Bradley County for damages allegedly

sustained by the estate as a result of GKH's involvement with transfers of assets from entities in

which the Debtor has an equity interest to the Debtor's business partner.

### IV.      Analysis

### A.      The *Barton* Doctrine

### 1.      The Definition of the *Barton* Doctrine

The "*Barton* Doctrine" originated in *Barton v. Barbour*, 104 U.S. 126, 129 (1881) in which

"the Supreme Court held that a suit could not be maintained against a receiver for an act in his

official capacity without first obtaining leave from the court which had appointed him."

*Greenblatt v. Richard Potasky Jeweler, Inc. (In re Richard Potasky Jeweler, Inc.)*, 222 B.R. 816,

822 (S.D. Ohio 1998).  In 1932 Judge Learned Hand applied the rule to trustees in bankruptcy,

and since that time, "it has been well settled that the rule of *Barton v. Barbour* applies in

bankruptcy proceedings." *Id.* (citing *Vass v. Conron Bros. Co.*, 59 F.2d 969, 971 (2d Cir. 1932)

and *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993)).

In *In re DeLorean Motor Co.* the Sixth Circuit articulated the *Barton* Doctrine in this way:

"[i]t is well settled that leave of the appointing forum must be obtained by any party wishing to

institute an action in a non-appointing forum against a trustee, for acts done in the trustee's

official capacity and within the trustee's authority as an officer of the court." 991 F.2d at 1241.

The court also determined that the "*Barton* Doctrine" applies to attorneys representing the

trustee.  *Id.*  The court stated: "[w]e hold, as a matter of law, counsel for trustee, court

appointed officers who represent the estate, are the functional equivalent of a trustee, where as

here, they act at the direction of the trustee and for the purpose of administering the estate or

protecting its assets." *Id.* The *Barton* Doctrine exists to "enable[ ] the Bankruptcy Court to

maintain better control over the administration of the estate." *Id.* at 1240; *see also, Heavrin v.

Schilling (In re Triple S Restaurants, Inc.)*, 519 F.3d 575, 578 (6th Cir. 2008).

### 2. Narrow Exception to the *Barton* Doctrine Pursuant to 11 U.S.C. § 959(a)

There is a narrow exception to the *Barton* Doctrine that exists for trustees who are

"carrying on business." The Bankruptcy Code provides in relevant part:

> Trustees, receivers or managers of any property, including debtors in
> possession, may be sued without leave of the court appointing them, with respect
> to any of their acts or transactions in carrying on business connected with such
> property.

11 U.S.C. § 959(a). However, courts have determined that this exception is a narrow one, and

the Sixth Circuit has held that "the exception does not apply to suits against the trustee for

actions taken while administering the estate." *In re DeLorean Motor Co.*, 991 F.2d at 1241. The

Sixth Circuit quoted another bankruptcy court and explained that "'[m]erely collecting, taking

steps to preserve, and/or holding assets, as well as other aspects of administering and

liquidating the estate, do not constitute 'carrying on business' as that term has been judicially

interpreted.'" *Id.* (quoting *U. and I. Inc. v. Fitzgerald (In re Campbell)*, 13 B.R. 974, 976 (Bankr.

D. Idaho 1981)).

### 3. Requirement of Seeking Leave from Bankruptcy Court

Several courts have addressed the level of detail regarding a proposed lawsuit that must

be provided by a party seeking leave to file suit in state court against a bankruptcy trustee. For

example, in *Kashani v. Fulton (In re Kashani)*, the Bankruptcy Appellate Panel of the Ninth

Circuit explored in detail the requirements of seeking leave from bankruptcy court to file suit

against a bankruptcy trustee. 190 B.R. 875 (B.A.P. 9th Cir. 1995). In that case the bankruptcy

court postponed the scheduled hearing on the motion for leave and informed the debtors who

were seeking leave to sue the trustee that they needed to file their proposed state court

complaint with the bankruptcy court. *Id.* at 880.  When the debtors refused to file a proposed

complaint, the bankruptcy court denied their motion for leave without prejudice. *Id.* The debtors

appealed the bankruptcy court's decision.

The Bankruptcy Appellate Panel first noted that the bankruptcy court maintains "sound

discretion" over whether to grant leave to sue in another forum.  *In re Kashani*, 190 B.R. at 881.

*See also, In re Holwerda*, 428 B.R. 730, 733 n.1 (Bankr. W.D. Mich. 2010).  In determining that

the bankruptcy court's requirement of a proposed complaint was not an abuse of discretion, the

Bankruptcy Appellate Panel explained:

> The court granting leave to sue in another forum must be able to evaluate the
> claims that are being asserted against the trustee in order to make its
> independent determination of whether to grant leave to sue.  Before such leave
> may be granted, the prospective plaintiffs must set forth a *prima facie* case
> against the trustee.
>
> Therefore, it is not an abuse of the bankruptcy court's discretion to require the
> Debtors to provide enough information to set forth sufficient grounds upon which
> the Debtors wish to proceed.  The Debtors should file either a sufficiently detailed
> motion or a complaint to provide the requisite information to allow the bankruptcy
> court to make an informed decision. . . .
>
> Additionally, the discretion of the court in exercising its power to grant or deny
> leave to sue the trustee in a court other than the one in which the trustee has
> been appointed should include the balancing of the interests of all parties
> involved.  Thus, the bankruptcy court may conclude that it must adjudicate the
> claim, since the claim will have an impact on the administration of the bankruptcy
> estate.

*In re Kashani*, 190 B.R. at 885-86 (citations omitted).

In affirming the district court's requirement that the debtors file a proposed complaint, the

Bankruptcy Appellate Panel concluded that the debtors could provide either a detailed motion or

a proposed complaint for review by the bankruptcy court.  *Id.* at 887. In this case, GKH has

cured any deficiency which its original two page motion might have had with its fifty-one page

closing argument brief and more than 200 pages of exhibits.  GKH has provided sufficient

information for the court to make its determination whether to grant leave.

In reviewing whether the bankruptcy court should grant leave to a party to sue a trustee in state court, the Bankruptcy Appellate Panel identified several issues that a court might examine:

> Upon receiving the information from the moving party or the proposed plaintiffs (in this case, the Debtors), the bankruptcy court should consider the following analysis:
>
> 1.  Whether the acts or transactions relate to the carrying on of the business connected with the property of the bankruptcy estate. If the proceeding is under 28 U.S.C. § 959(a), then no court approval is necessary. However, the moving party may request this initial review by the bankruptcy court . . . .
> 2.  If approval from the appointing court appears necessary, do the claims pertain to actions of the trustee while administering the estate? By asking this question, the court may determine whether the proceeding is a core proceeding or a proceeding which is related to a case or proceeding under Title 11 . . . .
> 3.  Do the claims involve the individual acting within the scope of his or her authority under the statute or orders of the bankruptcy court, so that the trustee is entitled to quasi-judicial or derived judicial immunity?
> 4.  Are the movants or proposed plaintiffs seeking to surcharge the trustee; that is, seeking a judgment against the trustee personally?
> 5.  Do the claims involve the trustee's breaching her fiduciary duty either through negligent or willful misconduct?
>
> By conducting such an analysis, the bankruptcy court will determine whether the issues affect solely the administration of the bankruptcy estate and should be heard by the bankruptcy court. The bankruptcy court will also be able to determine whether the claims have been previously decided on the merits and should not be pursued by the movants or proposed plaintiffs on the basis of *res judicata* or collateral estoppel. The bankruptcy court will also be in a position to determine whether the trustee is entitled to quasi-judicial or derived judicial immunity. Again, *one or more of these factors may be a basis for the bankruptcy court to retain jurisdiction over the claims.* Such an analysis will also assist the bankruptcy court in determining which claims should be tried in another forum.

*Id.* at 886-87 (emphasis added).

GKH initially argues that the *Barton* Doctrine does not apply because the acts of the Defendants in prosecuting the Malpractice Lawsuit were not "acts done in the trustee's official capacity and within the trustee's authority as an officer of the court." *In re DeLorean Motor Co.*, 991 F.2d at 1241. Rather, GKH argues they were *ultra vires* actions, and as such, GKH need not seek leave from this court to sue the Defendants in state court. The court disagrees. As

explained *infra*, the court concludes that the Defendants' acts in prosecuting the Malpractice

Lawsuit were acts taken in pursuit of possible assets of the estate.  Such actions fall within the

broad scope of the Trustee's duties and obligations pursuant to 11 U.S.C. § 704.  Therefore, the

court finds that the *Barton* Doctrine does apply, and GKH must first seek leave of this court to

sue the Trustee in Bradley County.

### B.   Review of *Kashani* Factors

The court finds that the factors outlined by the Bankruptcy Appellate Panel in *In re*

*Kashani* provide a helpful starting point for this court's analysis of GKH's motion.  Accordingly,

the court will review each of the factors in light of GKH's request.

### 1.   Whether the acts or transactions relate to the carrying on of the business connected with the property of the bankruptcy estate.

The first *Kashani* factor relates to the narrow exception outlined in 11 U.S.C. § 959(a).

As explained *supra*, the Sixth Circuit has held that "the exception does not apply to suits against

the trustee for actions taken while administering the estate."  *In re DeLorean Motor Co.*, 991

F.2d at 1241.  Indeed, "'[m]erely collecting, taking steps to preserve, and/or holding assets, as

well as other aspects of administering and liquidating the estate, do not constitute 'carrying on

business' as that term has been judicially interpreted.'"  *Id.* (quoting *In re Campbell*, 13 B.R. at

976).

No party has asserted that the Defendants were carrying on a business of the estate

when the Trustee joined in the Malpractice Lawsuit.  Therefore, the narrow exception to the

*Barton* Doctrine based on the "carrying on business" exception of 11 U.S.C. § 959(a) does not

apply here.

### 2.   Do the claims pertain to actions of the Trustee while administering the estate?

This factor relates to whether the proposed "proceeding is a core proceeding or a

proceeding which is related to a case or proceeding under Title 11 . . . ."  *In re Kashani,* 190

B.R. at 885-86.  The Bankruptcy Code provides that a trustee "shall (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of the parties in interest; . . . [and] (4) investigate the financial affairs of the debtor. . . ."  11 U.S.C. §§ 704(a)(1), 704(a)(4).

GKH makes much of the fact that in the Malpractice Lawsuit, the Defendants asserted that their lawsuit was a non-core proceeding. GKH confuses allegations regarding the nature of a proceeding for the purposes of alleging jurisdiction over third parties with whether a declaration that a matter is "non-core" is an admission that the Trustee was outside the scope of his authority.  The second *Kashani* factor is whether the claims pertain to action of the trustee while administering the estate. *In re Kashani*, 190 B.R. at 886.  Those actions may be "core" proceedings or actions "related to" the bankruptcy proceeding.  The categorization of an action as "core" or "non core" for purposes of bankruptcy court jurisdiction may be determinative of what forum the trustee must use to obtain jurisdiction over the party from whom he is seeking the recovery.  It is not determinative of whether the filing of that suit is inside or outside the scope of the trustee's duties.  Thus, the Trustee's and the Debtor's assertion, as plaintiffs pursuing the Malpractice Lawsuit, that the action was a non-core proceeding, is not determinative of this factor.

GKH also contends that it important to note that the Trustee and the Debtor did not seek leave of this court prior to filing the Malpractice Lawsuit. *See* [Doc. No. 1307, p. 23].   A trustee in bankruptcy is given a number of powers relating to his duties under 11 U.S.C. § 704.  One of these powers is the "capacity to sue."  11 U.S.C. § 323(b).  In addition, the estate created upon the filing of a petition in bankruptcy includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  The estate also includes, "[a]ny interest in property that the estate acquires after the commencement of the case."  11 U.S.C. § 541(a)(7).  Further, "[c]hoses-in-action . . . are included within this broad

definition." *In re Bailey*, 421 B.R. 841, 849 (Bankr. N.D. Ohio 2009).  *See also*, *Bauer v.*

*Commerce Union Bank, Clarksville, Tennessee*, 859 F.2d 438, 441 (6th Cir. 1988); *Logan v. JKV*

*Real Estate Servs. (In re Bogdan)*, 414 F.3d 507, 512 (4th Cir. 2005) (finding that property of the

estate includes causes of action arising after commencement of case); *Polis v. Getaways (In re*

*Polis)*, 217 F.3d 899, 901 (7th Cir. 2000) (noting that property of the estate under § 541(a) has

"uniformly been interpreted to include causes of action").

      In *In re Lawrence* the district court explained:

> [i]t is the trustee who has the exclusive standing and capacity to sue and be sued
> on behalf of the bankruptcy estate under 11 U.S.C. § 323(b).  The Trustee is
> appointed by the Bankruptcy Court to take charge of the debtor's estate, collect
> assets, bring suit on the debtor's claims against other persons, defend actions
> against the estate, and otherwise administer the estate.

*Lawrence v. Jahn (In re Lawrence)*, 219 B.R. 786, 801 (E.D. Tenn. 1998).

      Moreover, "[t]he trustee is the representative of the estate, 11 U.S.C. § 323(a), and it . . .

is authorized, *with or without court approval*, to 'commence and prosecute any action or

proceeding in behalf of the estate in any tribunal.'" *Hays and Co. v. Merrill Lynch, Pierce,*

*Fenner & Smith, Inc.*, 885 F.2d 1149, 1154 n.6 (3d Cir. 1989) (emphasis added) (quoting Fed.

R. Bankr. P. 6009).  GKH points to no provision in the Bankruptcy Code that requires the *trustee*

to obtain leave of the bankruptcy court prior to pursuing claims of the estate.

      Here, by joining in the Malpractice Lawsuit to pursue prepetition transfers or causes of

action,  the Trustee sought to pursue a claim relating to the bankruptcy estate, one of the

Trustee's essential duties outlined in 11 U.S.C. § 704(a)(1).  The Defendants sought to obtain

damages to compensate the estate for the lost value, if any, of the CAM member interest from

those who allegedly facilitated the transfer under circumstances giving rise to questions of

conflicts of interest.

      GKH treats the issues of breach of fiduciary duty and conflicts of interest as irrelevant

since they have been dealt with by the Chancery Court and dismissed.  The court is troubled by

the delay evident in the timing of the filing of the Malpractice Lawsuit, but whether the pursuit of

those actions more than a year after they occurred should cause the court to look at those

actions differently goes to the merits of GKH's claims in the Bradley County Malicious

Prosecution Case, not to whether the court should grant leave to GKH to pursue those actions

elsewhere. At the hearing and in their briefs, the Defendants have not explained the reasons for

delay that resulted in the claims for breach of fiduciary duty and conflicts being dismissed; but

by the same token, GKH did not make the affidavit in support of the Debtor's argument for

equitable tolling an exhibit.  Based on the record before it, the court can only find that an

affidavit raising an equitable tolling argument was filed in the Malpractice Lawsuit, and the

Chancellor found it to be insufficient.

Applying 11 U.S.C. §§ 704(a)(1), 323(b), and Fed. R. Bankr. P. 6009, the court

concludes that GKH's proposed claims of malicious prosecution and abuse of process pertain

directly to the Trustee's actions relating to his statutory duties of collecting assets of the estate

that he attempted to exercise through his capacity to sue.  Thus, this prong of the *Kashani* test

militates towards this court's handling of GKH's proposed claims.

> **3.    Do the claims involve the individual acting within the scope of his or her
> authority under the statute or orders of the bankruptcy court, so that the
> trustee is entitled to quasi-judicial or derived judicial immunity?**

As explained above, the Trustee's actions in bringing the Malpractice Lawsuit related to

the specific duties assigned to him by 11 U.S.C. §§ 704(a)(1).   The court concludes that the

Trustee's actions pursuant to this statutory duty make the determination of possible immunity

highly relevant to the analysis here.

For example, in *Lowenbraun v. Canary (In re Lowenbraun)*, the Sixth Circuit reviewed

whether a trustee was protected by immunity from claims of libel, slander, abuse of process,

wrongful use of civil proceedings, and the tort of outrage brought against him by the debtor's

wife.  453 F.3d 314, 319 (6th Cir. 2006).  The debtor's wife initiated suit against the trustee

defendant in state court, and the trustee removed the case to bankruptcy court.  The plaintiff

moved for remand or abstention, and the bankruptcy court denied the motion.  It then granted

summary judgment to the trustee on immunity grounds.  The district court affirmed the

bankruptcy court decision, and the plaintiff appealed.  *Id.* The Sixth Circuit reviewed cases

pertaining to trustee immunity, including *In re Heinsohn*, and held that the trustee was entitled to

immunity for both his judicial and extra-judicial statements regarding missing funds.  *Id.* at 322-

23.  The Court noted:

> [The trustee's] role as counsel for the trustee permitted him to investigate [the
> debtor's wife's] transfer and to recover assets properly belonging to the
> bankruptcy estate. [The trustee's] actions, moreover, benefitted the estate. . . .
> Any statements made in the course of [the trustee's] investigation and recovery
> effort were thus within the privilege. [The trustee] is therefore entitled to immunity
> for his judicial statements.

*Id.* at 323.  *See also, Kirk v. Hendon (In re Heinsohn)*, 231 B.R. 48, 50 (Bankr. E.D. Tenn.

1999), *aff'd* 247 B.R. 237 (E.D. Tenn. 2000).

The issue of whether the Defendants in this action are possibly immune for their actions

taken in filing and litigating the Malpractice Lawsuit are important for this court's resolution of

this motion.  The court concludes that the Trustee has a strong possibility of immunity to the

actions proposed by GKH.  The court is addressing the law surrounding trustee immunity in

great detail in its ruling on the motions to dismiss in Adversary Proceeding No. 11-1016.  The

allegations of malicious prosecution and abuse of process in that case pertain to the Adversary

Proceeding No. 10-1407, which GKH admits includes the "same operative facts" as the facts

alleged in the Malpractice Lawsuit.  Therefore, the court only concludes for purposes of this

memorandum opinion that the possibility of Trustee immunity again weighs in favor of the

bankruptcy court's denial of GKH's motion for leave to sue the Defendants in Bradley County.

**4.    Are the movants or proposed plaintiffs seeking to surcharge the Trustee;
        that is, seeking a judgment against the Trustee personally?**

It appears that GKH is seeking a judgment against the Defendants individually rather

than from the assets of the estate.  Since personal liability is at stake, and immunity possibly

applies, the court again concludes that this factor weighs in favor of the court's denial of GKH's

motion.

**5.      Do the claims involve the Trustee's breaching his fiduciary duty either through negligent or willful misconduct?**

In *In re Heinsohn* the bankruptcy court explained the difference between a claim against

a trustee for breach of fiduciary duty brought by a beneficiary of the estate and a claim against a

trustee brought by a third party nonbeneficiary alleging an action based on some other legal

theory such as tort or contract.  *See* 231 B.R. at 64-66.  GKH is not alleging a breach of

fiduciary duty as a creditor.  Such a claim might involve allegations that the Trustee was not

adequately pursuing assets of the estate or was otherwise squandering assets of the estate.

Instead, GKH is arguing the opposite– i.e., that the Trustee was pursuing property that was not

property of the estate and maliciously prosecuting GKH in the process.  GKH also alleges that

the Trustee's actions constituted an abuse of process.  These are tort actions against the

Defendants and not actions for breach of fiduciary duty.

Although the presence of a tort action might weigh in favor of allowing GKH to proceed

in state court, the court concludes that because the alleged torts are so intertwined with the

Trustee's duties pursuant to 11 U.S.C. § 704, these claims are better suited to be heard in

bankruptcy court.  Further, GKH is already pursuing an adversary proceeding in this court

alleging malicious prosecution and abuse of process based on the "same operative facts" as

those alleged in the Malpractice Lawsuit.

The court concludes that, upon review of the applicable *Kashani* factors, GKH's claims

relate to the heart of this court's jurisdiction and should not be brought in state court.

**C.      Policy Considerations**

In addition to finding that a review of the *Kashani* factors weighs in favor of denying

GKH's motion, the court concludes that several policy reasons also inform its decision to deny

the motion.  Policy considerations are relevant to a determination of whether to grant leave to

sue a trustee in state court.  *See e.g., In re Kids Creek Partners, L.P.*, 248 B.R. 554, 556

(Bankr. N.D. Ill. 2000).  This court has discretion to grant or deny such a motion for leave and its

determination involves "the balancing of the interests of all parties involved.  Thus, the

bankruptcy court may conclude that it must adjudicate the claim, since the claim will have an

impact on the administration of the bankruptcy estate."  *In re Kashani*, 190 B.R. at 885-86

(citations omitted).  As explained above, the court has determined that the resolution of GKH's

tort claims may have an impact on the administration of the estate since the Malpractice Lawsuit

related directly to the Trustee's attempts to administer that estate through its powers of

investigation and its duty to collect assets of the estate.  *See* 11 U.S.C. § 704.

In *In re Kids Creek Partners, L.P.*, the bankruptcy court addressed a motion for leave to

sue filed by creditors in the bankruptcy case.  248 B.R. 554 (Bankr. N.D. Ill. 2000).  In that case,

two creditors sued the bankruptcy trustee and his counsel in federal district court claiming willful

and deliberate breaches of fiduciary duty and malicious prosecution.  *Id.* at 556.  The plaintiffs'

claims related to an adversary proceeding that the trustee and his counsel filed against the

plaintiffs.  They subsequently filed a motion in bankruptcy court seeking leave to continue to

pursue the district court action.  *Id.*  The bankruptcy court denied the motion, concluding that the

plaintiffs had not stated a prima facie case against the defendants and that "policy

considerations militate[d] against exercise of discretion to permit such suit."  *Id.*

In their motion the plaintiffs sought to recover from the defendants personally, rather

than from the assets of the estate.  *In re Kids Creek Partners*, 248 B.R. at 558.  The court noted

that "[a]s an officer of the court, a trustee's exposure to personal liability is limited.  A trustee

'cannot be held personally liable unless he acted outside the scope of his authority as trustee,

i.e. *ultra vires*, or breached a fiduciary duty that he owed as the trustee to some claimant fee.'"

*Id.* at 558 (quoting *In re Schechter*, 195 B.R. 380, 384 (N.D. Ill. 1996)).   The court further

explained:

> Because bankruptcy trustees serve an important function as officers of the court
> in the administration of bankruptcy cases, they are afforded limited personal
> immunity when operating pursuant to their authority . . . .
>
> Trustees are further protected from undue personal liability by the "leave to sue"
> requirement.  One compelling justification for imposition of both limited immunity
> and the leave-to-sue requirement is that otherwise
>
> "trusteeship will become a more irksome duty, and so it will be harder for courts
> to find competent people to appoint as trustees. . . ."
>
> The leave-to-sue requirement also protects trustees from excessive interference
> in the execution of their duties resulting from [the] need to defend themselves in
> lawsuits filed by parties upset by their treatment in the trustee's bankruptcy
> proceeding, . . . .
>
> There are further compelling justifications for requiring a party to demonstrate
> ability to plead a prima facie case of willful and deliberate breach of fiduciary duty
> or ultra vires act before leave may be obtained to sue a trustee personally. . . .
>
> > If debtors, creditors, defendants in adversary proceedings, and
> > other parties to a bankruptcy proceeding could sue the trustee in
> > state court for damages arising out of the conduct of the
> > proceeding, the court would have the practical power to turn
> > bankruptcy losers into bankruptcy winners, and vice versa.

*In re Kids Creek Partners*, 248 B.R. at 559 (quoting *In the Matter Linton*, 136 F.3d 544, 545-46

(7th Cir. 1998)); *See also, In re Berry Publishing Servs., Inc.*, 231 B.R. 676, 679 (Bankr. N.D. Ill.

1999).  The court further concluded that the trustee's alleged use of "poor judgment" that

affected the estate adversely did not rise to the level of a breach of fiduciary duties.  *Id.* at 561.

It concluded that "[t]o hold a trustee personally liable for making an unwise litigation decision,

especially when based on pre-bankruptcy events which gave rise to the litigation issue, would

make trusteeship an onerous, risky, and costly task which few would voluntarily undertake."  *Id.*

at 562.  With respect to the plaintiffs' malicious prosecution claim and their allegation that the

defendants failed to make an adequate investigation, the court determined that they failed to

state a prima facie case of their claim under state law.  *Id.* at 563.

The court finds that these policy considerations are applicable here.  The court has concerns regarding discouraging a trustee from pursuing his statutory obligations to investigate the financial affairs of a debtor and collect assets of the estate in an expeditious manner. Subjecting a trustee to multiple state court lawsuits relating to his actions taken pursuant to his statutory duties might well inhibit a trustee from forcefully seeking to protect creditors by vigorously pursuing possible claims of the estate.  As the Seventh Circuit noted in *In the Matter of Linton*:

> If [the trustee] is burdened with having to defend against suits by litigants disappointed by his actions on the court's behalf, his work for the court will be impeded.
>
> *The concern is most acute when suit is brought against the trustee while the bankruptcy proceeding is still going on.*  The threat of his being distracted or intimidated is then very great,  . . . .

136 F.3d at 545 (emphasis added).

The main bankruptcy case pertaining to the Debtor is still ongoing at this time.  The risk of the Trustee being distracted by the proposed Bradley County Malicious Prosecution Case is simply too great.  Moreover, the court is already addressing whether the Trustee maliciously prosecuted the 50 Acre Lawsuit.  The proposed Bradley County Malicious Prosecution Case will involve the "same operative facts" as those that are under consideration in the 50 Acre Malicious Prosecution Case.  *See* [Adversary Proceeding No. 11-1016, Doc. No. 1]. Both actions seek a determination that the Trustee had no reason to pursue a recovery against GKH for its involvement in the 50 acre transfer.  Allowing GKH to pursue identical claims in state court based on the same underlying factual allegations could result in a tremendous waste of both judicial and the parties' resources.  This court has been enmeshed in the facts of the Debtor's case, as well as the relevant adversary proceeding for many months, and to ask a state court to obtain detailed factual knowledge of this highly complicated and heavily-litigated matter could result in overburdening a state court.  In addition, allowing a state court without the

expertise of a bankruptcy court to determine issues pertaining to the scope of the Trustee's

duties and his possible immunity might well result in conflicting judicial opinions on highly-

related matters.  These policy reasons alone, as well as the most rational and efficient use of

judicial resources are sufficient reason to deny GKH's motion for leave.

### D.    GKH's Assertion of Prima Facie Case

GKH appears to argue that if it states a prima facie case of malicious prosecution and

abuse of process, its motion for leave should be granted.  As described *supra*, in *In re Kashani*

the Ninth Circuit explained that an entity seeking leave to sue must provide evidence of a prima

facie case of its claims so that the bankruptcy court can make an assessment of whether such a

claim should be brought in state court or is more appropriately heard by the bankruptcy court.

*See In re Kashani*, 190 B.R. at 886.  The Ninth Circuit Bankruptcy Appellate Panel noted that

"[t]hus, the bankruptcy court may conclude, even after the party seeking leave has met the

requirements of presenting a *prima facie* case against the trustee, that the suit should more

properly be maintained in the bankruptcy court."  *Id.*  This court has already concluded that

several policy considerations support its denial of GKH's motion.

### V.    Conclusion

As explained in detail *supra*, the court concludes that a review of the *Kashani* factors

militates in favor of denial of GKH's motion.  In addition, strong policy considerations, including

efficient use of judicial resources and protection of a trustee from the distraction of litigation

during an ongoing bankruptcy case, weigh in favor of this court's denial of GKH's motion.   For

these reasons, GKH's motion will be DENIED.

A separate order will enter.