**SO ORDERED.**
**SIGNED this 5th day of October, 2011**

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**

*Shelley D. Rucker*
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TENNESSEE**
**SOUTHERN DIVISION**

In re:

STEVE A. McKENZIE                                                            No. 08-16378
a/k/a Toby McKenzie,
                                                                                            Chapter 7
    Debtor

**MEMORANDUM**

      The Application for Interim Compensation for Jerrold D. Farinash ("Applicant"), Special Counsel for C. Kenneth Still, Trustee, for the period from February 22, 2011 to July 26, 2011, was filed on August 1, 2011. [Doc. No.1379]. The Application seeks $54,664.00 in fees and $3,418.49 in expenses. Notice of the Application was sent to all creditors and parties in interest on August 1, 2011. [Doc. No. 1380]. The notice provided that a hearing would be held in the event that an objection was filed. Grant Konvalinka & Harrison, P.C., ("GKH"), a creditor in the case, filed a timely objection to the application on August 22, 2011. [Doc. No. 1407]. The United States Trustee did not file an objection or a comment nor did any other creditor or party in

1

interest. An evidentiary hearing on GKH's objection was held on September 26, 2011.

The court finds that the Applicant was authorized to be employed as special counsel for Trustee in Adversary Proceeding No. 11-1016 on March 22, 2011 [Doc. No. 1105] pursuant to an application filed on February 22, 2011. [Doc. No. 1033]. He sought to expand his employment by an amended application filed on March 29, 2011. [Doc. No. 1126]. The scope of his employment was expanded by this court's order entered April 18, 2011. [Doc. No. 1186]. The scope of his employment was expanded a second time by order entered on May 5, 2011. [Doc. No. 122]. Further, the court finds that notice of the Application was adequate.

## Objections

The court will now address each of GKH's objections.

1. **GKH objects to any payment to the Applicant for work done in defending the Trustee in any malicious prosecution or abuse of process suit brought by GKH. GKH contends that the Trustee's actions in bringing certain adversary proceedings were beyond the scope of the Trustee's employment and defense of those claims is not properly compensable by the estate.**

The court has ruled on the Trustee's entitlement to representation. The court held that the fees and expenses may be paid from the estate in compliance with 11 U.S.C. § 330 in its decision allowing the employment of the Applicant on March 22, 2011. [Doc. No. 1105]. For the reasons stated in the memorandum clarifying the order of March 22, 2011, the court finds that the Trustee is entitled to counsel and that that counsel may be paid from the estate. Memorandum Opinion [ Doc. No. 1199]. Furthermore, this court has ruled that the Trustee's actions at issue in two of the adversary proceedings brought by GKH were within the scope of his duties and has dismissed those adversary proceedings. GKH has appealed the ruling on the payment of fees and one of the dismissals.[1] No stay pending appeal has been obtained by GKH that would prevent the

---

[1] *Grant, Konvalinka & Harrison, P.C. v. Banks (In re McKenzie),* Ch.7 Case No. 1:08-bk-16378, Adv. No. 11-1016 (Bankr. E.D.Tn.2011), appeal docketed, No. 1:11-cv-00258; See *In re McKenzie,* 2011 WL 2670208 (E.D.Tn.

2

court from awarding these fees if the court determines such allowance is appropriate under 11 U.S.C. § 330.

The court overrules this objection of GKH.

**2. GKH objected that there was no evidence in the Application offered by the Trustee that his fees and expenses were reasonable.**

The Sixth Circuit has described the analysis to be used in reviewing fees in bankruptcy.

> Under the Bankruptcy Reform Act of 1978 ("Code") compensation awards are authorized by 11 U.S.C. § 330, which provides, in part, for "reasonable compensation for actual, necessary services rendered…based on the nature, the extent and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title…." 11 U.S.C. § 330(a)(1). "In determining a reasonable attorney's fee under § 330, many courts have adopted the formula used to calculate fees under various federal fee-shifting statutes." *In re Manoa Finance Co., Inc.,* 853 F.2d 687, 690 (9th Cir. 1988); *see also In re Consolidated Bancshares, Inc.,* 785 F. 2d 1249, 1257 (5th Cir. 1986); *Harman[ v. Levin (In re Robertson)],* 772 F.2d at1152 [(4th Cir. 1985)]. Under the typical federal fee-shifting statute, the court will arrive at an attorney's fee by first determining the "lodestar" amount, which is calculated by "multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended." *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 879 (11th Cir. 1990)(citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed. 2d 40 (1983)).

*Boddy v. United States Bankr. Court (In re Boddy)*, 950 F.2d. 334, 336-7 (6th Cir.1991). "A reasonable hourly rate should be determined based on "the amount involved, customary fees, the level of skill required, reputation of the applicant, time limitation, whether the fee is contingent or fixed and the case's undesirable aspects, if any." *Id.* at 337.

In this case, the Application discloses the number of hours and the hourly rates charged for those hours. GKH correctly notes that the Application was not verified nor was it accompanied by an affidavit; however, Mr. Farinash did appear and testify about these subjects at the hearing. With respect to the number of hours, he testified about the work that his firm did for the Trustee and the number of matters that had to be addressed in a compressed time period.

2011), notice of appeal to United States Court of Appeals for the Sixth Circuit, filed August 5, 2011.

This level of activity in the case required multiple attorneys working on a number of fronts to ensure that the work was handled in a timely fashion. Mr. Farinash was brought into the case when the Trustee's existing counsel was sued by GKH for malicious prosecution and had to decline to represent the Trustee because of the conflicts. The matters which the Applicant has taken over include defense of malicious prosecution and abuse of process cases brought by GKH, and a response to a motion for relief involving the security interest of GKH in over three dozen limited liability company member interests. In addition he is representing the Trustee in two additional lawsuits for malicious prosecution and abuse of process, an objection to the $750,000 claim of GKH, and preparation of a lawsuit regarding avoidance of the lien of GKH. This Applicant has done a substantial amount of work involving sophisticated issues of bankruptcy, tort, and commercial law. The court finds the number of hours reasonable and the services necessary, subject to the objections of GKH to specific entries addressed below.

      With respect to the hourly rate, Mr. Farinash testified that both he and Mr. Klingler, a partner in his firm, have over twenty-five years of experience in the bankruptcy area. Mr. Farinash also has experience as a trustee and has been on the panel of trustees for a number of years. The hourly rates for these two partners are $275 for Mr. Farinash and $285 for Mr. Klingler. They also used an associate with eleven years of experience on the case whose hourly rate is $195. Mr. Farinash testified that the rates of his firm was comparable to the rates of other firms performing bankruptcy work and were even on the low side. The court finds those rates (a) to be in line with rates charged by other attorneys in the area and (b) to be reasonable given the level of skill required and the reputations of the attorneys working on the matters.

      Further, the court finds that Applicant has provided sufficient evidence to carry his burden with respect to the reasonableness of the fees and expenses. The court will address

objections to specific time entries and certain specific expenses below.

  **3. GKH objected to the reimbursement of computerized research charges on the basis that such charges should be included in the hourly rate and not reimbursed separately.**

  Section 330 provides that the court may award to a professional person employed under section 327 reimbursement for actual, necessary expenses. 11 U.S.C. § 330(a)(1)(B). It is the custom and practice in this district to allow reasonable expenses incurred for computerized research as part of expenses allowed in fee requests. GKH correctly states that the Sixth Circuit Court of Appeals has not definitively ruled on whether computerized research should be considered part of attorney's fees or whether that expense should be allowed as a litigation expense that may be in addition to an award of attorney's fees. *See Auto Alliance International, Inc. v. United States Custom Service*, 155 F. App'x. 226 (6th Cir. 2005). GKH cites a Second Circuit case which stands for the proposition that such expenses are part of the overhead included in the hourly rate used in the calculation of the attorney fee and, therefore, should not be separately allowed. *Evergreen Pipeline Contruction Co. v. Merritt Meridian Constuction Corp.*, 95 F.3d 153 (2d Cir. 1996) (Case involved Rule 11 sanctions and the award of fees was within the discretion of the court). In reviewing the state of the law on whether computerized research charges are included in attorney's fees or allowable as separate litigation expenses, the court finds that there is a split in the Circuits on this issue when courts address federal fee shifting statutes. *See, Degussa Admixtures, Inc. v. Burnett*, No. 1:05cv705, 2007 WL 1041188, at *3 (W.D. Mich. Apr. 4, 2007). The Sixth Circuit in *In re Boddy* acknowledged that analysis of attorney's fees in bankruptcy is based on the formula used in other federal fee shifting statutes, but the court did not address whether the same analysis should be used for expenses when the Bankruptcy Code expressly allows for the reimbursement of expenses. The Eleventh Circuit

Court of Appeals has found that the express language of section 330 permits courts to allow the reimbursement of expenses, including computerized research, without having to analyze whether those expenses should be considered overhead and included in the award of attorney's fees. *Strook & Strook & Lavan v. Hillsborough Holdings Corp.,* 127 F. 3d 1398, 1401 (11th Cir. 1997). For that reason, the court finds the fee shifting cases addressing the scope of the term *attorney fees* are not directly applicable to the reimbursement of expenses allowed under section 330 of the Bankruptcy Code.

Even if an analysis were required of whether attorney's fees should include the cost of computerized research, the court notes that the prevailing view is to allow such expenses to be reimbursed. Even the Second Circuit has now allowed computerized research charges in fee shifting cases where the attorneys regularly charge their other clients for computerized research expenses. *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 369 F.3d 91 (2d Cir. 2004). The court stated, "We agree that the use of online research services likely reduces the number of hours required for an attorney's manual search, thereby lowering the lodestar, and that in the context of a fee-shifting provision, the charges for such online research may properly be included in a fee award." *Id.* at 98.

Based on the forgoing analysis, this court holds that computerized research is an appropriate expense to be reimbursed provided that (1) it reflects the expenses actually incurred by the applicant, (2) the applicant customarily charges its clients separately for such research, and (3) the amount of the charges are reasonable.  The court may still review the charges to ensure that the estate is not being charge for unnecessary, excessive or duplicative expenses.

In this case, the court finds Mr. Farinash's request for reimbursement meets these criteria. Mr. Farinash testified that his firm charges its clients for computerized research in addition to the

hourly fees of its attorneys. He also audits the provider's bills as part of his duties at the firm. The research expenses charged to the clients reflect the actual expenses of the firm subject to an adjustment that always favors the client. He testified that his firm has a flat rate which it pays to the service provider. The service provider also gives the firm the breakdown of per client per search charges. The client is billed the lower of their pro rata portion of the monthly charge or the amount of the actual cost of the search performed for that client.

With respect to the reasonableness of the charges, the court finds that this has been a case with a number of complicated issues that have necessitated research and extensive briefing. To the extent that descriptions of services with respect to research do not contain the specific issue being researched, the court finds the descriptions to be sufficient when taken in context of the narrative provided and in recognition of counsel's need for some confidentiality for their work product.

This objection of GKH is overruled, and the reimbursement of Mr. Farinash's expenses for computerized research is allowed.

> **4. GKH objects that any charges for investigation regarding the filing of a bankruptcy for Cleveland Auto Mall, LLC ("CAM") or any other entity in which Mr. McKenzie owns less than 50% should be disallowed because the investigation was unnecessary and not likely to benefit the estate.**

The member interests of the debtor in CAM, as well as a number of other corporations or limited liability companies, are assets of this estate. GKH has asserted a security interest in many of those interests. *See* Motion for Relief from Stay and Abandonment of Member Interests and/or Stock Interests, Exhibit D, [Doc. No. 1065] . With respect to CAM, its value before and after a transfer of that limited liability company's primary asset post-petition was the subject of two adversary proceedings, and those proceedings have been the genesis of at least three additional adversary proceedings. The court finds that the services rendered in connection with an

evaluation of these equity interests are reasonable and necessary expenses of this estate. The court finds that the time related to investigation of CAM and its governing documents was necessary in order for the Trustee to evaluate the validity of GKH's security interest in CAM. GKH did not object to that representation and the court will allow those fees which refer to CAM in the context of the GKH's motion for relief.

With respect to GKH's contention that it is a waste of estate assets to investigate the prospects of filing a bankruptcy for any entity in which the debtor has no more than a 50% interest, the court does not agree. GKH objects to the Trustee's expending estate assets to determine whether the Trustee may file involuntary bankruptcies for one or more of the entities in which the debtor had an equity interest. GKH contends that the debtor's governance rights are gone and that the cooperation of the other member would be necessary for any bankruptcy filing. At this point, the court has not ruled on merits of GKH's position with respect to the governance rights, and there is no evidence that the other members would never consent. The court finds no reason at this time to deny fees for investigating whether such rights may still exist if such a filing would enhance the value of those interests for the benefit of creditors, a group which includes GKH.

With respect to this objection, GKH has not specifically identified those entries that it believes should be disallowed. The court has identified entries relating to corporate governance on 5/10 (JF $165), 5/23 (JF $110), 5/24 (JF $110) that might be the subject of this objection. The total involved is $385. The court is requiring a holdback in excess of this amount. Should GKH prevail on its argument regarding the governance rights and the court determines that these services were unnecessary, there will be a sufficient holdback to cover these expenses if they are ultimately disallowed. For the reasons stated above, the court overrules this objection except the

8

court's ruling is without prejudice as to an objection to these three entries.

5. **GKH objects to the payment of fees for more than one attorney at any meeting between counsel of the same firm because such services are duplicative.**

GKH objects to the Application on the basis that there are 39.3 hours of the time shown on the Application which appear to be duplicative hours. There are numerous entries in the Application which reflect conferences and hearings where more than one member of the firm attended. With respect to meetings, Mr. Farinash testified that in most instances, only one attorney charged for that time. He testified to the manner in which that time was either removed or not included in the Application to reduce the cost of duplication to the estate. He provided a summary prepared from the Application. It shows a total of 75.5 hours spent in meetings by the three members of the firm who worked on this matter. Of those hours, the estate was only charged for 37.8 hours.[2] Exhibit 3, Detail of Meeting Charges. Of those 37.8 hours, if only one party had charged for the meeting, the hours billed would have been 31.3. In a case in which 219.8 hours were billed, 7.5 hours resulting from multiple billers for meetings seems reasonable to the court in a case in which tasks are being assigned and coordinated.

With respect to attendance at hearings or depositions, the court finds that this representation has been complicated. It involves numerous matters, and sensitive, difficult legal and discovery issues. Very little has been negotiated. All the parties have brought their litigation A game to address allegations that involve their professional reputations and claims that will have a significant impact - either positively or negatively - on the recovery of the creditors in this case. The court finds that under these circumstances, a team approach has been appropriate. In addition, the court finds that this approach has not been abused as evidenced by the hourly rates

---

[2] The court has added .8 hours to the total calculated for duplication from Exhibit 3. Upon cross examination, Mr. Farinash did admit that there was .8 of an hour charged in the Application by Ms. Hayduk which was not reflected on Exhibit 3 as having been charged.

charged and the voluntary reductions already taken in writing off meeting time. This objection regarding duplication is overruled.

> **6. GKH objects to any allowance for fees for time listed in which the descriptions are inadequate.**

The court has reviewed the time entries and finds them to be specific and sufficiently detailed so that the court can determine what the services have been and for what purpose they have been performed. The services are described and broken down into tasks. The parties with whom meetings, phone conversations and discussions have taken place are identified. The names of the pleadings are specified, and most of the research or drafting entries contain the subject matter related to that work. The court overrules this objection.

> **7. GKH objects to the allowance of any fees billed prior to entry of the order authorizing the employment of Applicant.**

GKH's final objection is that there are entries on April 7(.4 JF $110), April 9[3] (1.6 JF $440, AH .4 $78), and April 11, 2011(2.1 JF $577.60) for services rendered on the motion for relief from the stay. The Applicant was not employed to provide those services until April 18, 2011. [Doc. No. 1186]. The Applicant did not seek *nunc pro tunc* relief in his amended application. [Doc. No. 1126]. The application to employ him for this purpose was filed on March 29, 2011. GKH filed an objection to the amended employment application on grounds other than the Applicant's request to represent the Trustee in the motion for relief. [Doc. No. 1157]. The hearing was held on April 14, 2011, and the court issued its order on April 18, 2011. The services were performed after the application was filed and within the week prior to the court's announcement at the hearing that it would expand the scope of the Trustee's employment.

It is not unusual for fees which are incurred on matters for which employment has been

---

[3] GKH's objection references April 9, but the court can find no entry for April 9. There is a meeting on April 8 which references the motion for relief. The court has assumed the entries should be those on April 8, 2011.

sought, and ultimately authorized, to be allowed *nunc pro tunc* at the beginning of a case when an employment application is presented shortly thereafter or where the professional services are provided on an emergency basis.  Norton, Bankruptcy Law and Practice § 25:8; *See In re Martin*, 102 B.R.  653, 656 (Bankr. W.D.Tenn. 1989)(court recognized the need to retroactively approve compensation incurred during the gap period between filing and the order authorizing employment). This court has previously in this case allowed time to be compensated back to the date the employment application was filed where the attorney asked for such relief, and the court found it appropriate in the exercise of its discretion.  *In re McKenzie*, Order [Doc. No. 1068]. In this case Mr. Farinash was brought in to represent the Trustee following the inception of a conflict for the Trustee's existing counsel in the midst of a number of ongoing matters. His application was filed in a timely manner, the work in question was performed after the application was filed and only a few days before the order was entered. The court finds that it may exercise its discretion and allow the attorney's fees incurred during the thirty day period after the filing of the application for employment but before the entry of the order authorizing that employment. The court overrules the objection of GKH to the services provided to the Trustee on the motion for relief prior to the entry of the order authorizing Applicant's employment on that matter.

## Conclusion

For the foregoing reasons, the court will allow the interim fees of $54,664.00 and the reimbursement of expenses in the amount of $3,418.49.  Although the United States Trustee did not file a comment, the allowance of fees for other attorneys has been subject to a holdback of 10%. The court finds that given the expanded scope of Mr. Farinash's employment, it is appropriate that he should be subject to the same holdback. The court will apply that holdback to

11

this interim fee application.

      A separate order will enter.

# # #