SIGNED this 30th day of March, 2012

_____
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION**

In re:

STEVE A. McKENZIE                                    No. 08-16378

a/k/a Toby McKenzie,                                    Chapter 7

Debtor

**MEMORANDUM**

The Motion of C. Kenneth Still ("Trustee"), Trustee for the estate of Steve A. McKenzie

("Debtor"), for Contempt ("Motion for Contempt") came on for hearing on September 8, 2011.

[Doc. No. 1395]. The court set a show cause hearing to determine whether Grant, Konvalinka &

Harrison, P.C. ("GKH") should be held in contempt; and if so, what sanctions would be

appropriate. The hearing on the court's show cause order was held on October 7, 2011 ("Show

Cause Hearing"). Counsel for the Trustee and counsel for GKH appeared. Mr. Farinash testified

for the Trustee, and Mr. Konvalinka testified for GKH.

The first issue before the court is whether there was a specific and unambiguous law or order that GKH violated by filing a complaint on August 5, 2011 against the Trustee in the Circuit Court of Hamilton County, Tennessee, for malicious prosecution and abuse of process. *Grant, Konvalinka & Harrison, P.C. v. C. Kenneth Still, Richard L. Banks, Richard Banks & Assoc., P.C., and Steve A. McKenzie*, Civ. Action. No. 110967 ("Hamilton County M/P Lawsuit"). The second issue is whether maintaining the Hamilton County M/P Lawsuit after the court issued its order denying GKH leave to file suit against the Trustee in Bradley County, Tennessee was an act of contempt. The court finds that there was a specific and unambiguous law that GKH violated. Further, GKH violated a specific order of this court by maintaining the lawsuit. Having found the filing and the maintenance of the Hamilton County M/P Lawsuit were acts of contempt, the court must address what sanctions, if any, are appropriate.

This memorandum constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 as made applicable to contested matters by Fed. R. Bankr. P. 9014. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), § 157(b)(2)(A), and § 105(a).

## I.    Facts

An understanding of how the parties came to this point requires a review of the prior proceedings leading up to the current contempt motion.

### A.    Background of Litigation in Bradley County, Tennessee Underlying Malicious Prosecution Claim

The Hamilton County M/P Lawsuit seeks to recover damages against the Trustee, the Debtor and/or their counsel. GKH contends that it suffered these damages as the result of a lawsuit brought by the Trustee and the Debtor in the Chancery Court of Bradley County. *Steve A. McKenzie and C. Kenneth Still, Trustee v. Nelson Bowers, II; Exit 20 Auto Mall, LLC; John*

*Anderson; and Grant, Konvalinka & Harrison, P.C.*, Docket No. 2010-CV-251 ("Malpractice

Lawsuit").  The Malpractice Lawsuit sought damages allegedly suffered by the estate and/or the

Debtor arising from the Debtor's relationship with the firm of GKH and the firm's involvement

in a postpetition real estate transaction in December of 2008. The complaint alleged that GKH

had been guilty of conflicts of interest, breach of fiduciary duty, and civil conspiracy. All of the

causes of action in the Malpractice Lawsuit were dismissed by the Chancery Court or voluntarily

dismissed by the Debtor and the Trustee.

Following that dismissal, on April 22, 2011, GKH moved in this court for leave to sue the

Trustee and his counsel in the Circuit Court of Bradley County citing 28 U.S.C. § 959(a). [Doc.

No. 1200 ("Bradley Leave Motion")].[1] The Trustee and his counsel opposed the Bradley Leave

Motion on the basis that it did not specify what causes of action GKH intended to bring and what

specific acts gave rise to those causes of action. [Doc. Nos. 1236, 1239, 1241].

On the day of the hearing on the Bradley Leave Motion, scheduled for May 18, 2011

("959 Hearing"), GKH filed a list of exhibits. [Doc. No. 1248]. Also on the day of the 959

Hearing, GKH filed a reply. [Doc. No. 1249]. The court gave the proposed defendants additional

time to file post-hearing briefs to address the additional exhibits presented at the 959 Hearing.

The proposed defendants filed supplemental briefs on June 3, 2011. [Doc. No. 1299]. On June

10, 2011, GKH filed a 52-page supplemental brief with additional exhibits. [Doc. No. 1307]. The

Trustee also filed a supplemental brief on June 10, 2011. [Doc. No. 1308]. On June 28, 2011,

GKH filed a motion for correction of or objection to movant's exhibits. [Doc. No. 1322]. The

hearing on that motion was held on July 21, 2011.

The court denied the Bradley Leave Motion on August 5, 2011. [Doc. Nos. 1387, 1388].

GKH subsequently filed a motion to alter or amend the order denying the Bradley Leave Motion

---

[1]  All citations to docket numbers refer to docket entries in the bankruptcy case, Case No. 08-16378.

on the basis that GKH had determined that the Debtor was "a necessary inclusion . . . as an

indispensible party" to its claims of malicious prosecution and abuse of process and that filing

the malicious prosecution case in bankruptcy court would present jurisdictional issues. [Doc. No.

1406, Motion to Alter, Amend, and/or Otherwise Set Aside Order Denying Grant, Konvalinka &

Harrison, P.C.'s Motion for Leave of Court to File Action in the Circuit Court of Bradley

County, Tennessee at 3]. The court issued its ruling denying the Motion to Alter or Amend on

September 27, 2011. [Doc. No. 1474, Memorandum; Doc. No. 1475, Order].

### B.    Related Adversary Proceedings

The movants contend that two other lines of adversary proceedings should be considered

in the court's decision. The first line begins with an action brought by the Trustee in bankruptcy

court alleging many of the same facts involved in the Malpractice Lawsuit. *Still v. Nelson*

*Bowers, II, et al.*, Adv. Pro. No. 10-1407 (the "50 Acre Lawsuit")[2]. Although the facts were

similar, the causes of action were different, and only the Trustee was a plaintiff. In the 50 Acre

Lawsuit, the Trustee sought recovery of preferences, fraudulent transfers, a finding of a violation

of the automatic stay, and equitable subordination.  The 50 Acre Lawsuit was dismissed because

the court found the property sought to be recovered -- 50 acres of real estate located in Bradley

County, Tennessee -- was not "property of the estate under 11 U.S.C. § 541." [Adv. Proc. No.

10-1407, Doc. No. 67]. Following the dismissal of the 50 Acre Lawsuit, GKH filed a malicious

prosecution and abuse of process suit against the Trustee and his counsel in bankruptcy court.

*Grant, Konvalinka & Harrison, P.C. v. Richard Banks, et al.,* Adv. Proc. No. 11-1016. This

court dismissed that action on the basis of the Trustee's immunity. [Adv. Pro. No. 11 -1016, Doc.

No. 69, Order; Doc. No. 68, Memorandum].

---

[2]  This lawsuit is referred to as the 50 Acre Lawsuit because it involved a transfer of fifty acres of real property in
Bradley County, Tennessee, owned by a limited liability company in which the Debtor had a 50% member interest.

The second line of lawsuits begins with an action brought by the Trustee for the turnover of documents from GKH. *Still v. Grant, Konvalinka & Harrison, P.C.,* Adv. Proc. No. 10-1397 ("Turnover Lawsuit").  The Turnover Lawsuit was dismissed by an agreed order. Following that dismissal, GKH filed a motion for leave to sue the Trustee and his counsel in the state court of Hamilton County, Tennessee. [Doc. No. 1031, Motion for Leave to File Suit in Hamilton County ("Hamilton Leave Motion")]. The Hamilton Leave Motion was filed on February 18, 2011, and was argued on May 18, 2011. Like the Bradley Leave Motion, it was opposed by the proposed defendants. The court allowed additional briefing. The last hearing related to the Hamilton Leave Motion was held on July 21, 2011 regarding GKH's Motion for Correction to and/or Objection to List of Movant's Exhibits. [Doc. Nos. 1322, 1350].

At the hearing on July 21, 2011, the parties announced a resolution of GKH's motion for correction. At that hearing and in response to an inquiry from the court, Mr. Konvalinka expressed his concern that his firm was facing a statute of limitations deadline with respect to the suit that was the subject of his Hamilton Leave Motion.  The court entered the order and memorandum denying the Hamilton Leave Motion on July 21, 2011. [Doc. Nos. 1354, 1355]. GKH filed its malicious prosecution case related to the Turnover Lawsuit on July 22, 2011, in this court.  [Adv. No.  11-01110].[3]

### C.    Alleged Acts of Contempt

The Trustee and the Debtor filed the Malpractice Lawsuit on August 6, 2010. The Bradley County Chancellor's ruling, which dismissed two of the counts, was entered on January 25, 2011. The order dismissing all counts was entered on March 1, 2011. On Friday, August 5,

---

[3] That adversary proceeding was dismissed on immunity grounds on September 30, 2011.  [Adv. 11-01110, Doc. No. 26, Order; Doc. No. 25, Memorandum]. The court's ruling was appealed to the United States District Court for the Eastern District of Tennessee on October 12, 2011 and remains pending.

2011, the 364th day after the **filing** of the Malpractice Lawsuit, without leave of this court, GKH

filed the Hamilton County M/P Lawsuit. On the same day, GKH filed a second lawsuit in this

court alleging the same facts and the same causes of action against the same parties. *Grant,*

*Konvalinka & Harrison, P.C. v. Richard Banks, Richard Banks & Associates, P.C., C. Kenneth*

*Still and Steve Allen McKenzie.*, Adv. Proc. No. 11-01118 ("Bankruptcy M/P Lawsuit"). The

complaint in the Bankruptcy M/P Lawsuit contained a footnote that stated:

> GKH is filing a substantially similar Complaint against these Defendants in the
> Circuit Court of Hamilton County, Tennessee. As a precautionary measure, GKH
> is filing the Complaint herein in light of the Bankruptcy Court having not yet
> ruled on GKH's motion for leave to file such action in state court.

[Adv. Proc. No. 11-01118, Doc. No. 1, Complaint, p.1, n.1]. Within the hour following these

filings, the court issued its opinion denying the Bradley Leave Motion, unaware that the two

lawsuits had been filed.

At the Show Cause Hearing on October 7, 2011, Mr. Farinash, counsel for the Trustee,

testified that he had learned of the filing of the Hamilton County M/P Lawsuit on Tuesday,

August 9, 2011. Transcript of October 7, 2011 Hearing at 61, line # 24. [Doc. No. 1567]. He

testified that he mailed a letter on August 11, 2011, to Mr. Konvalinka about the lawsuit and

requested that Mr. Konvalinka non-suit the Trustee. Exhibit A, Letter to J. Konvalinka, dated

August 11, 2011. *Id.* at 64, lines 8-19. In the letter Mr. Farinash also indicated that if GKH did

not dismiss the lawsuit, he would ask the bankruptcy court to "take the matter up" on August 12,

2011. Exhibit A; October 7, 2011 Hearing Transcript, at 83, lines 12-15. At a deposition on

August 12, 2011 of Scott LeRoy and John Konvalinka, Mr. Farinash inquired of Mr. Konvalinka

whether he intended to dismiss the Hamilton County M/P Lawsuit since GKH's motion had been

denied. *Id.* at 65, lines 23-25 and 66, lines 1-5. The parties disagree about how Mr. Konvalinka

responded. Mr. Farinash testified that Mr. Konvalinka stated unequivocally that he would not

dismiss the Hamilton County M/P Lawsuit. *Id.* at 66, lines 4-5. Mr. Konvalinka, who also

testified at the show cause hearing, recalled that he said that he had not decided what to do about

the Hamilton County M/P Lawsuit, but that he intended to file a motion to alter or amend the

court's order. *Id.* at 82, lines 6-20. Mr. Farinash then sent an email indicating his intention to take

up the matter with the judge. Exhibit B, Email dated August 12, 2011. Mr. Konvalinka testified

that he was out of the office and did not have an opportunity to respond.  October 7, 2011,

Transcript at 89, lines 12-25; 90, lines 1-7.

On August 12, 2011, the Trustee removed the Hamilton County M/P Lawsuit to this

court. [Adv. Proc. No. 11-01121, Doc. No. 1]. On the same day, he filed the Motion for

Contempt. [Doc. No. 1395].

The Motion for Contempt was heard on September 8, 2011, and the court issued an order

for GKH to appear and show cause why it should not be held in contempt. [Doc. No. 1440]. Mr.

Farinash testified that his firm had accrued fees in excess of $6,563.50 for the legal work for the

Trustee necessitated by the decision of GKH to file the Hamilton County M/P Lawsuit. The work

included preparation of the removal documents, preparation of the motion for contempt, research

related to the statute of limitations for malicious prosecution and abuse of process, and

attendance at the initial hearing and the show cause hearing. From the court's review of the

itemization of the attorney time, it appears that approximately two-thirds of the time related to

the removal and one-third related to preparation of the motion for contempt. [Doc. No. 1503].

### D.    Postponement Pending Resolution of the Appeal

GKH has appealed the court's ruling on whether GKH was required to file a motion for

leave to proceed in bringing suit against the Trustee and the Debtor. [Doc. No. 1498]. GKH has

also filed a motion to postpone a ruling on the contempt motion to determine whether GKH was

required to obtain leave.  An appeal of the order setting the Show Cause Hearing has already

been filed [Doc. No. 1476, Motion for Leave to Appeal; Doc. No. 1477, Notice of Appeal], and a

further delay in ruling on the issues before the court would result in one appeal continuing and

the possibility of a second appeal some time later on the legal issues that were raised at the Show

Cause Hearing. The court believes that a more efficient use of judicial resources would be to

have a decision on all of the issues related to the contempt motion determined at this time and an

appeal of all of the issues addressed at one time.

### E.      No Continuing Acts of Contempt

No action against the Trustee is currently pending in any court other than this court,

which is the court that appointed him.

### II.      Analysis

### A.      Requirements for Finding of Contempt

"In a contempt proceeding, 'the basic proposition [is] that all orders and judgments of

courts must be complied with promptly.'"  *Gnesys, Inc. v. Greene*, 437 F.3d 482, 493 (6th Cir.

2005) (quoting *NLRB v. Cincinnati Bronze, Inc.,* 829 F.2d 585, 590 (6th Cir. 1987)). In order to

ensure the enforcement of those orders, the bankruptcy court has civil contempt powers under 11

U.S.C. § 105. "[C]ivil contempt may be either intended to coerce future compliance with a

court's order, or to compensate for the injuries resulting from the noncompliance." *Gnesys*, 437

F.3d at 493 (quoting *Glover v. Johnson*, 199 F.3d 310, 313 (6th Cir. 1999)). "Once willful

contempt of court is established, the Court may compel compliance and compensate the

complainant." *Williamson v. Recovery Ltd. Partnership,* Nos. 09-4253, 09-4255, 2012 WL

171385, at *8 (6th Cir. Jan. 20, 2012) (citing *Electrical Workers Pension Trust Fund of Local

Union No. 58, IBEW v. Gary's Electrical Service Co*., 340 F.3d 373, 385 (6th Cir. 2003)).

8

The movant has the burden of proving that an act of contempt has occurred in a civil
contempt proceeding. *Gnesys*, 437 F.3d 482, 493 (quoting *Glover v. Johnson*, 934 F.2d 703, 707
(6th Cir. 1991)). The movant must show by clear and convincing evidence that the contemnor
violated an order of the court. *Id.* To prove that violation, he must show that there was a violation
of a specific and unambiguous order by a party to whom that order applied. *Grace v. Center for
Auto Safety,* 72 F.3d 1236, 1241 (6th Cir. 1996). "Ambiguities must be resolved in favor of the
party charged with contempt." *Williamson*, 2012 WL 171385 at *9 (quoting *Liberte Capital
Group, LLC v. Capwill*, 462 F.3d 543, 550-51 (6th Cir. 2006) and citing *Grace*, 72 F.3d at 1241).

In addition to a violation of a specific order, a party may also be held in contempt when it
violates a stay. *See* 11 U.S.C. § 362. The Sixth Circuit has recognized a stay grounded in
common law that prohibits bringing an action against a trustee in a non-appointing forum
without first obtaining leave from the appointing forum. *Allard v. Weitzman (In re DeLorean
Motor Co.)*, 991 F.2d 1236, 1240-41 (6th Cir. 1993) (designating this rule as the "*Barton
Doctrine*"). Violation of that stay may result in the party filing suit without leave being held in
contempt. *Id.* at 1241; *Cappuccilli v. Lewis*, No. 10-11690, 2010 WL 4683932 (E.D. Mich. Nov.
10, 2010); *In re Amir*, No. 08-13700, 2009 WL 1748701 (Bankr. N.D. Ohio June 18, 2009).

### B.    Acts of Contempt

The Trustee cites the *Barton* Doctrine and two orders which he contends were violated.
Of the two orders, the first is the order entered by this court on July 21, 2011 related to the
Hamilton Leave Motion.  The second is the August 5, 2011 order denying the Bradley Leave
Motion.  The court will address each alleged violation.

1.      **Rule Against Suing a Trustee Without Leave**

Any party wishing to file a cause of action against a trustee must file a motion in the

appointing court for leave to sue the trustee in a court other than the court which appointed the

trustee. *In re DeLorean Motor Co.*, 991 F.2d at 1240.  In fact, the law is "well settled." *Id.*  This

rule is referred to as the *Barton* Doctrine and is derived from the Supreme Court case of *Barton*

*v. Barbour*, 104 U.S.126 (1881). *Id*. In *Barton*, the receiver of a railroad sought dismissal of a

lawsuit brought by an injured passenger in a court other than the court which appointed the

receiver. In discussing whether the receiver could be sued without leave of the appointing court,

the Supreme Court analogized the receiver's issues to those of an administrator of a bankruptcy.

> So, in cases of bankruptcy, many incidental questions arise in the course of
> administering the bankrupt estate, which would ordinarily be pure cases at law,
> and in respect of their facts triable by jury, but, as belonging to the bankruptcy
> proceedings, they become cases over which the bankruptcy court, which acts as a
> court of equity, exercises exclusive control. Thus a claim of debt of damages
> against the bankrupt is investigated by chancery methods. The bankruptcy court
> may, and in cases peculiarly requiring such a course will, direct an action or an
> issue at law to aid it in arriving at a right conclusion. But this rests in its sound
> discretion. True, if one claims that the assignee has wrongfully taken possession
> of his property as property of the bankrupt, he is entitled to sue him in his private
> capacity as a wrong-doer in an action at law for its recovery.

*Barton*, 104 U.S. at 134. The court then compared this situation to the railroad receiver and

found that:

> [c]laims against the company must be presented in due course, as the court having
> charge of the case may direct. But if, by mistake or wrongfully, the receiver **takes**
> **possession** of property belonging to another, **such person** may bring suit therefor
> against him personally as a matter of right; for in such case the receiver would be
> acting *ultra vires*.

*Id.* (emphasis added) (citations omitted). "This requirement [to seek leave] enables the

Bankruptcy Court to maintain better control over the administration of the estate." *In re*

*DeLorean Motor Co.*, 991 F.2d at 1240.

GKH originally cited a statute in its Bradley Leave Motion that contains an exception to

the *Barton* Doctrine. [Doc. No. 1200]. 28 U.S.C. § 959(a) provides that:

> Trustees, receivers or managers of any property, including debtors in possession,
> may be sued, without leave of the court appointing them, with respect to any of
> their acts or transactions in carrying on business connected with such property.
> Such actions shall be subject to the general equity power of such court so far as
> the same may be necessary to the ends of justice, but this shall not deprive a
> litigant of his right to trial by jury.

28 U.S.C. § 959(a) (1978). This statute permits a lawsuit against a trustee, in connection with

carrying on the business connected with property managed by the trustee, without the court's

permission. At the Show Cause Hearing, despite having cited this statute in its original pleading,

GKH argued that 28 U.S.C. § 959(a) did not apply because GKH was suing the Trustee for *ultra*

*vires* actions.  Transcript of October 7, 2011 Hearing pp. 84-85.

GKH is not relying on the "carrying on the business" exception to the *Barton* Doctrine

contained in section 959(a) to excuse it actions.  Rather, GKH argues that leave is not required

where a party is suing a trustee for damages caused by an intentional tort or for seizing the

property of a party other than the debtor or the estate as noted in *Barton.* Transcript of October 7,

2011 Hearing pp. 85, 91.  Whether the Trustee's action is outside the scope of his authority is a

consideration for the court in determining whether leave should be granted, but GKH has cited

no authority that allows it to make that determination on its own. *See In re DeLorean Motor Co.*,

991 F.2d at 1241; *Kashani v. Fulton (In re Kashani)*, 190 B.R. 875, 884-85 (B.A.P. 9th Cir.

1995).

The court also finds no evidence that GKH falls within the *ultra vires* exception cited in

*Barton* for property owners suing for the wrongful possession of their property.  The Trustee

filed a Malpractice Lawsuit seeking damages from GKH and others.  Even assuming, for the

purposes of GKH's argument, that the Trustee's damages requested in the Malpractice Lawsuit

could be construed as an attempt to recover the 50 acres, GKH is not the property owner.  To the

contrary, GKH has relied heavily on this court's finding that the real estate was owned by a

limited liability company before its transfer. Furthermore, GKH has made the *ultra vires*

argument before.  GKH raised it in its brief in support of the Bradley Leave Motion. The court

has previously rejected this argument, and that issue is on appeal. The court incorporates the

reasons in its ruling on this issue from its memorandum and order denying the Bradley Leave

Motion. [Doc. Nos. 1387, 1388, Memorandum, pp. 12-17]. The court finds that the *ultra vires*

exception as found in *Barton* does not apply and that the filing of the Hamilton County M/P

Lawsuit was a violation of the *Barton* Doctrine.

### 2.     The July 21, 2011 Order

GKH contends that it cannot be held in contempt for filing the Hamilton County M/P

Lawsuit because a finding of contempt requires the court to find the existence of a specific and

unambiguous order that would have informed GKH that it should not take such an action. *Grace*,

72 F.3d at 1242.  The court will review both orders cited by the Trustee to determine whether

either or both orders met the standard of specific and unambiguous.

The July 21, 2011 order was issued by the court denying the Hamilton Leave Motion

related to the Turnover Lawsuit. [Doc. No. 1355]. GKH argues that this order was not specific

enough to put it on notice that filing an action in Hamilton County related to the Malpractice

Lawsuit would be an act of contempt. The Trustee argues that many of the issues in the Bradley

Leave Motion related to the court's interpretation of the *Barton* Doctrine were discussed in the

court's memorandum accompanying its July 21, 2011 order.  *See* [Doc. No. 1354]. He argues

that this similarity should have put GKH on notice that its actions would be viewed as a

violation. The court agrees that this opinion provided GKH with the court's view of the issue, but

the court notes that there are differences between the Turnover and 50 Acre Lawsuits on the one hand and the Malpractice Lawsuit on the other.  The Debtor was not a party to the Turnover Lawsuit or the 50 Acre Lawsuit. There was no issue in those two cases about whether any recovery would benefit the estate as opposed to the Debtor individually. The causes of action alleged in the 50 Acre Lawsuit were based on bankruptcy statutes rather than state tort law. In light of the requirement that the court give the contemnor the benefit of the doubt in any consideration of contempt, the court finds that the July 21, 2011 order was not specific enough with respect to the Malpractice Lawsuit that GKH violated that order by the filing of the Hamilton County M/P Lawsuit.

### 3.    The August 5, 2011 Order

The second order the Trustee cites as having been violated is this court's order denying the Bradley Leave Motion.  [Doc. Nos. 1387, Memorandum; 1388, Order]. This order was directly on point. It denied GKH permission to file a malicious prosecution against the Trustee arising from the Malpractice Lawsuit in state court. The court rejected the argument that there was an *ultra vires* exception for actions against the Trustee in this case and held that leave would not be granted to pursue the Trustee. It was specific and unambiguous and directed to GKH. The only remaining question is the timing. It had not been issued when the suit was filed. Therefore, the filing did not violate the August 5, 2011 Order; however, GKH maintained the lawsuit even after the order had been issued.  The court finds the maintenance of the Hamilton County M/P Lawsuit to be an act of contempt.

GKH argues that maintenance of the Hamilton County M/P Lawsuit after the issuance of the August 5, 2011 order is not contempt because GKH was seeking reconsideration of the court's denial of leave. GKH's position seeks to have the court recognize a grace period for

13

contempt while post-trial motions are pending.  GKH cites no authority for this position. This argument also confuses the issue of whether leave should or should not be granted with the issue of whether there is an obligation to seek leave, which if ignored will subject the party to contempt.

The court finds no basis for a grace period. The Bradley Leave Motion was a contested matter. As such it is governed by Fed. R. Bankr. P. 9014. That rule incorporates rules of procedure related to adversary proceedings and to contested matters. However, not every rule applies to both contested matters and adversary proceedings. The most relevant example is Fed. R. Bankr. P. 7062, which grants a limited stay of any order to allow the losing party to file an appeal. Rule 7062 makes Fed. R. Civ. P. 62 applicable in adversary proceedings.  However, Rule 7062 was omitted from the list of federal rules applicable to contested matters specifically so that orders granted in contested matters become immediately effective. *Webb Mtn, LLC v. Executive Realty Partnership, L.P. (In re Webb Mtn, LLC),* 414 B.R. 308, 341-42 (Bankr. E.D. Tenn. 2009).

Had this been an adversary proceeding, there would have been a 14-day period in which the Trustee would have been stayed from seeking enforcement of the court's order. As a ruling in a contested matter, this court's order was immediately enforceable.  There was no stay of this court's order while GKH pursued its Motion to Alter or Amend seeking reconsideration of the court's order denying the Bradley Leave Motion. There is no shield to protect GKH from the consequences of its actions. GKH chose to maintain its Hamilton County M/P Lawsuit after the court's order specifically denied it leave to file an action against the Trustee in state court.

### C.      Mitigation

Having proved the existence of an act of contempt, the burden shifts to the contemnor to show "a 'present inability to comply' without regard to intent, as '[w]illfulness is not an element of civil contempt[.]'" *French v. American Gen. Financial Serv. (In re French)*, 401 B.R. 295, 314 (Bankr. E.D. Tenn. 2009) (quoting *Rolex Watch, U.S.A. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996)). The contemnor may show mitigating circumstances or demonstrate substantial compliance with the court's order, or demonstrate that every reasonable effort has been made to comply with the court's order. *See Whitfield v. Pennington*, 832 F.2d 909, 914 (5th Cir. 1987) (respondent must show mitigating circumstances, or substantial compliance with the order); *In re Reyes*, No. 10-52366-C, 2011 WL 1522337, at *8 (Bankr. W.D. Tex. Apr. 20, 2011) (respondent must show mitigating circumstances, substantial compliance with the order, or that every reasonable effort has been made to comply); *In re Unclaimed Freight of Monroe, Inc.*, 244 B.R. 358, 365 (Bankr. W.D. La. 1999) (mitigating circumstances). GKH raises several points that it contends should mitigate or excuse its actions and give the court reason to deny the Trustee's request for sanctions.

### 1.      The Filing of  the Motion for Contempt Was Premature

GKH argues that the Trustee rushed to file the Motion for Contempt and to remove the Hamilton County M/P Lawsuit. GKH has filed a motion to abstain, remand or in the alternative to consolidate the Bankruptcy M/P Lawsuit and the removed Hamilton County M/P Lawsuit. [Adv. Proc. No. 11-01121, Doc. No. 3]. It argues that it had a good faith basis to believe that under the circumstances of this case, leave to file suit was not required.  If this court's ruling on the Bradley Leave Motion was altered or amended, then there may have been no order that GKH violated. GKH contends that, at a minimum, any damages that the Trustee seeks should be

reduced by his failure to delay pursuit of contempt until the court had ruled on GKH's post-judgment motion on the Bradley Leave Motion. The court does not find this to be a mitigating circumstance. To the extent that GKH disagreed with the court's ruling, its proper course was to appeal, not to ignore the existence of the *Barton* Doctrine or the specific order denying it leave to pursue the Trustee in a state court.

The court also notes that the Trustee was facing a deadline for removal. Fed. R. Bankr. P. 9027(a)(3). The court finds no merit in GKH's argument that the court's consideration of sanctions should be affected because the Trustee did not delay filing the Motion for Contempt.

## 2.      Statute of Limitations

GKH's Response implies that it was concerned with a statute of limitations issue for bringing suit against the Trustee. The court had not ruled, and the one year anniversary of the Malpractice Lawsuit was approaching. [Doc. No. 1417, GKH Response in Opposition to Trustee's Motion for Contempt at 2].  However, GKH has cited no authority for its contention that the deadline to bring a claim for malicious prosecution or abuse of process was about to run. In fact, it appears that there were several months remaining to file such suits. The statute of limitations on a malicious prosecution claim begins to run on the date that the alleged malicious suit was finally terminated in the plaintiff's favor. *Christian v. Lapidus*, 833 S.W.2d 71, 73 (Tenn. Sup. Ct. 1992); *Parrish v. Marquis*, 172 S.W.3d 526, 530 (Tenn. Sup. Ct. 2005). The earliest ruling on two of the counts was January 25, 2011, so there were over five months remaining for bringing a malicious prosecution action. With respect to abuse of process, the statute begins to run from the termination of the acts which constitute the abuse of process. 1 AM. JUR. 22 *Abuse of Process*, § 26; *Law v. Law*, 279 Fed. Appx. 386, 388 (6th Cir. 2008). *See also*, 1 ALR 3d 953 (1965). The two documents identified in the Hamilton County M/P Lawsuit

as being filed after this court's ruling in the 50 Acre Lawsuit were filed on January 5, 2011.

There were at least four months remaining to file a lawsuit based on GKH's claim that those

filings were abusive. At the October 7, 2011 hearing, GKH argued only that it proceeded to file

the Hamilton County M/P Lawsuit because it wanted to avoid any dispute that it had missed the

deadline. October 7, 2011 Hearing Transcript, pp. 87, 89. In light of the statute of limitations for

these two actions, the court finds that GKH made a deliberate choice to risk violating the *Barton*

Doctrine if the court denied the Bradley Leave Motion in favor of getting to a state court. After

receiving the order, it maintained the filing rather than dismissing it, thereby assuming the risk

that its conduct would be viewed as contempt.

### 3.   Disclosure of Filing in State Court

GKH also argues that its action should not be viewed as contemptuous because it added a

"precautionary note" confessing to this court that it had filed the Hamilton County M/P Lawsuit.

While such a footnote may evidence GKH's candor and concern about the statute of limitations

before the court ruled, the court fails to see how footnoting a reason for the precautionary

bankruptcy filing, *i.e.*, that GKH was waiting to learn how the court ruled on the Bradley Leave

Motion, mitigates its deliberate act of maintaining the state court lawsuit after the court had

ruled. This argument does not evidence a basis for mitigation.

### 4.   State Court Was the Only Forum with Jurisdiction Over All the Necessary Parties

Finally, GKH argues that it had to go to a state court to obtain jurisdiction over all of the

necessary parties. GKH had determined that the Debtor was a necessary party to its malicious

prosecution and abuse of process claims against the Trustee. [Doc. No. 1406-1, Motion to Alter

or Amend Order Denying Leave to file in Bradley County at 3].  The court notes that GKH first

raised the issue of jurisdiction over the Debtor after the court had ruled on the Bradley Leave

Motion. This timing raises the question of whether the determination to include the Debtor was a tactical move rather than a late discovery.  Whatever the motivation, the court agrees with GKH that the inclusion of the Debtor makes jurisdiction a more complicated issue. The cause of action against the Trustee is core bankruptcy court jurisdiction.  *Kirk v. Hendon (In re Heinsohn)*, 247 B.R. 237, 244 (E.D. Tenn. 2000).

GKH argues that this court has no jurisdiction over the Debtor because he has been discharged and his involvement in the Malpractice Lawsuit was only for his own benefit.  GKH contends that joinder of the Debtor requires a filing in state court because this court no longer has any jurisdiction over the postpetition actions of a Chapter 7 debtor following the waiver of his discharge.  GKH cites the following cases in support of its contention that this court has no jurisdiction. *Family Medical Assoc. v. Alongi (In re Alongi)*, 272 B.R. 156 (Bankr. D. Md. 2001); *In re Johnson*, No. 04-82274C-7D, 2006 WL 2462823 (Bankr. M.D.N.C. Aug. 23, 2006); and *Rhiel v. Central Mortgage Co. (In re Kebe)*, 444 B.R. 871 (Bankr. S.D. Ohio 2011).

The first two cases cited involve postpetition actions taken by a debtor that resulted in claims against the debtor. In those cases, the courts found that there was no bankruptcy court jurisdiction for the bankruptcy court to hear the dispute because the resolution of the dispute would have no impact on the administration of the estate.  The *In re Alongi* case involved a postpetition employment agreement with a Chapter 7 debtor which the medical practice employer was seeking to enforce. The *In re Johnson* case involved a creditor seeking to force a debtor to deliver a title as collateral for a postpetition purchase money loan on a vehicle. Since the proceeds of the loan and the vehicle purchased were not property of the estate, the resolution of the dispute between the debtor and the lender was unrelated to the administration of the estate. The jurisdiction issue in the *In re Kebe* case did not involve a lawsuit by or against the debtor at

all. It involved a third party complaint brought by the debtor's co-owner against the co-owner's

title company. While the co-owner's claim against the title company arose because a bankruptcy

trustee was seeking to avoid the debtor's and the co-owner's interest in a piece of real estate

based on an improper notarization by the title company, the court found that the resolution of the

third party action did not require the state court to resolve issues that would affect the trustee's

action against the property owners. Furthermore, the co-owner had failed to "demonstrate how a

resolution of the [t]hird-[p]arty [c]omplaint would 'conceivably have any effect' on the Trustee's

administration of the bankruptcy estate." *In re Kebe,* 444 B.R. at 878 (quoting *Michigan*

*Employment Security Comm. v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co., Inc.)*, 930

F.2d 1132, 1142 (6th Cir. 1991)).

GKH also argues that if the court has no jurisdiction over the Debtor, then requiring it to

split its cause of action between bankruptcy court and the state court would require it to risk the

problems of res judicata. *Hutcherson v. Lauderdale County, Tennessee*, 326 F.3d 747 (6th Cir.

2003). The court recognizes those risks exist where there are two cases involving the same

claims against the same parties. However, the court does not view the claims against the Debtor

as identical to those brought against the Trustee. The Debtor and the Trustee were pursuing

damages for actions taken at different times, and the parties have different defenses.

The court disagrees with GKH's conclusion that it has no jurisdiction over the Debtor.

The facts that make the causes of action against the Trustee and Debtor interrelated also make

GKH's causes of action related to this bankruptcy case. The heavy involvement of bankruptcy

law in the issues of the Hamilton County M/P Lawsuit and the Debtor's role as co-plaintiff and

the sharing of counsel lead the court to conclude that GKH's causes of action against the Debtor

are related to the bankruptcy estate and that this court has non-core jurisdiction under 28 U.S.C.

19

§ 1334(b). GKH then argues that the jurisdiction is abrogated by the mandatory abstention

provisions as they relate to GKH's claims against the Debtor and perhaps the Banks Defendants.

In addition to this court's conclusion that it does have jurisdiction to hear GKH's claims,

the court does not find this jurisdictional problem sufficient to excuse GKH from facing

sanctions for two additional reasons. First, the court does not agree that the claims against the

Trustee cannot be separated from the claims against the Debtor. The Trustee has an immunity

defense that a debtor suing for his own benefit does not have. Second, to the extent that there are

causes of action against the other defendants that cannot or should not be separated, this

argument addresses reasons the court should remand the Hamilton County M/P Lawsuit or why

GKH would prefer to have the Debtor and the Trustee in the same suit. It provides no evidence

of GKH's inability to comply with this court's order, nor does it demonstrate any efforts by

GKH to comply.

### III.   Sanctions

The court has civil contempt powers under 11 U.S.C. § 105 and the ability to impose

sanctions in this matter.  The court finds that GKH acted contemptuously by filing the Hamilton

County M/P Lawsuit against the Trustee without leave of this court and committed a further act

of contempt by not dismissing that lawsuit after the court had denied the Bradley Leave Motion.

The court is required to exercise its power judiciously in order not to punish but to compel

compliance.  The Hamilton County M/P Lawsuit has already been removed to this court, so no

order requiring compliance is required.  The court finds dismissal of the lawsuit inappropriate

because GKH was not required to obtain leave of this court to sue the Debtor.

The court may also compensate the aggrieved party for his costs and expenses. *In re

DeLorean Motor Co.,* 991 F.2d at 1241.  Based on the testimony of Mr. Farinash and the exhibits

presented at trial, the Trustee requested that the Hamilton County M/P Lawsuit be dismissed prior to beginning work on the case. GKH maintained the lawsuit, thereby necessitating the removal. The Trustee incurred an additional $4,300.75 in fees for 17.05 hours of attorney time in pursuit of the removal of the Hamilton County M/P Lawsuit. By refusing to dismiss the suit, GKH committed a second act of contempt, and the Trustee incurred $2,262.75 in fees and 8.85 hours of attorney time in pursuit of the Motion for Contempt. [Doc. No. 1503, Exhibit A, Time Records of Kennedy, Koontz and Farinash]. The court has reviewed the time and finds the number of hours and the hourly rate to be reasonable. *See* [Doc. No. 1506, Memorandum Approving Fees]. The rates are the same as those previously approved by the court for the firm. Mr. Farinash testified at the hearing that the Trustee was seeking compensation of only $5,000. The court will award fees in that amount to the Trustee and will order GKH to pay to Kennedy Koontz and Farinash the sum of $5,000 as compensation for services expended on behalf of the Trustee.

A separate order will enter.

# # #