**SO ORDERED.**
**SIGNED this 2nd day of July, 2013**

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**

_____
Shelley D. Rucker
UNITED STATES BANKRUPTCY JUDGE

_____

**[THIS OPINION IS NOT INTENDED FOR PUBLICATION AS THE PRECEDENTIAL EFFECT IS DEEMED LIMITED.]**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TENNESSEE**
**SOUTHERN DIVISION**

In Re:

STEVE A. McKENZIE,                                    Case No. 08-16378
                                                       Chapter 7
        Debtor.

**Appearances:**

   *Thomas E. Ray*, Samples, Jennings, Ray & Clem, PLLC, Chattanooga, Tennessee, for Henderson, Hutcherson & McCullough, Applicant

   *Jerrold D. Farinash*, Kennedy, Koontz & Farinash, Chattanooga, Tennessee, for C. Kenneth Still, Chapter 7 Trustee

   *John P. Konvalinka & Harry R. Cash*, Grant, Konvalinka & Harrison, P.C., Chattanooga, Tennessee, for Grant, Konvalinka & Harrison, P.C.

*The Honorable Shelley D. Rucker*
United States Bankruptcy Court

1

**MEMORANDUM ON APPLICATION TO EMPLOY JACK D. LONDON AS ACCOUNTANT NUNC PRO TUNC AND FIFTH APPLICATION FOR COMPENSATION FOR HENDERSON, HUTCHERSON & McCULLOUGH**

The contested matters before the court challenge the nunc pro tunc employment of and payment of fees to an accountant who has provided services to the estate. The objection to the Fifth Application for Compensation for Jack D. London, CPA and the accounting firm of Henderson, Hutcherson & McCullough, PLLC ("Applicant"), and the Objection to the Amended Application for Nunc Pro Tunc Employment of the Applicant challenges the Applicant's right to be paid from the estate and what the appropriate amount of that payment should be. The court must address whether retroactive authorization for employment is appropriate in a case in which the accountant, properly authorized to be employed by the debtor, failed for over four years to obtain court approval for his continued employment for the Trustee appointed later in the case. To further complicate consideration of that issue, the accountant has had three fee applications approved without an objection; and a fourth approved after resolving an objection raised on other grounds. The issue of the authorization of his employment has now been raised by three creditors, two of whom have been in extensive litigation with the Trustee in this case. These creditors also object to the retroactive authorization of the fees on the basis that the Applicant has not demonstrated that exceptional circumstances exist in the case and that his work was necessary for and beneficial to the estate. With respect to the Fifth Application specifically, there is also an allegation that the accountants' fees are excessive.

The approval of such retroactive relief is within the discretion of the court, which discretion should be exercised only after consideration of whether exceptional circumstances exist. *Farinash v. Vergos (In re Aultman Enterprises)*, 264 B.R. 485, 489 (E.D.Tenn. 2001). For the reasons given below, the court finds that exceptional circumstances exist and an exercise of its discretion is appropriate in this case. The court will approve employment of the Applicant, nunc pro tunc. Having found that the employment of the Applicant should be retroactively authorized, the court further finds that fees incurred reflect reasonable rates and reasonable amounts of time to complete work that was necessary for the

2

administration of the estate. *In re Boddy,* 950 F.2d 334, 338 (6th Cir. 1991). The interim fees are allowed with one exception and will be subject to a final review and a hold back of 10%.

**Procedural History**

The Fifth Application for Interim Compensation for Jack D. London, CPA and the firm of Henderson, Hutcherson & McCullough, PLLC (collectively "Applicant") came on for hearing on June 6, 2013. *Fifth Application for Interim Compensation of Jack D. London, CPA and the Firm of Henderson Hutcherson & McCullough, PLLC Employed by C. Kenneth Still, Chapter 7 Trustee*, Feb. 27, 2013, ECF No. 1813; Hr'g Ex. 11 ("Fifth Application"). The Applicant is the accountant who has provided accounting services to this estate for the past four years. In the Fifth Application he seeks $51,754.00 in fees and $1333.48 for expenses. Hourly rates for members of Applicant's firm include $260 for Mr. London; $135-$235 for accounting managers; $135-$145 for senior accountants; and $125 for accounting assistants.  Staff members bill at $90-135 an hour. The Fifth Application covers an eighteen month period from July 1, 2011 to December 31, 2012. The total number of hours worked is 317.07 which results in an average hourly rate of $163.23. The total compensation previously received by the Applicant is $366,155.44.

Grant, Konvalinka & Harrison, P.C. ("GKH") objects to the Fifth Application on two grounds. *Objection of Grant, Konvalinka & Harrison, P.C. to Fifth Application for Interim Compensation of Jack D. London, CPA and the Firm of Henderson Hutcherson & McCullough, PLLC Employed by C. Kenneth Still, Chapter 7 Trustee*, Mar. 30, 2013, ECF No. 1821; Hr'g Ex. 13 ("GKH Fee Objection").  First, the Applicant has not been authorized by the court to represent Mr. C. Kenneth Still, the trustee appointed in this chapter 7 case[1]. Second, the Applicant has not presented any evidence of the reasonableness of his requested fees. At the hearing Nelson E. Bowers, II, and S.E.D.I. Acquisition, LLC, joined in the objection to the Fee Application. The court overruled these objections as being untimely because the

---

[1] GKH previously raised the issue of whether Mr. Still was duly appointed. In a prior ruling the court found that Mr. Still had been appointed and that issue was also addressed by the Sixth Circuit in the case of *Grant, Konvalinka & Harrison v. Banks*, -- F.3d.--, 2013 WL 2274006, *8 n.6   (6th Cir. 2013).

notice of the fee application required written objections to be filed on or before March 20, 2013. *Fifth Application*, at 1; Hr'g Ex. 11.  Only GKH filed a timely written objection.

In response to the first ground for the GKH Fee Objection, Applicant filed an "Application to Authorize Employment of Accountants Nunc Pro Tunc" on March 27, 2013. [ECF No. 1834]. Applicant filed an "Amended Application to Authorize Employment of Accountants Nunc Pro Tunc" on April 4, 2013. ECF No. 1840; Hr'g Ex. 14 ("Employment Application").  Applicant acknowledges that counsel for the chapter 11 debtor in possession obtained court approval of the accountant's employment. However, upon the appointment of a trustee in the chapter 11 phase of the case, Trustee C. Kenneth Still failed to obtain court approval of the accountant's continued employment.  Likewise, upon conversion of the case to chapter 7 and the appointment of Mr. Still as chapter 7 trustee, the Trustee again failed to obtain court approval of Applicant's continued employment.  The Employment Application sought retroactive authorization for his employment by the trustee for both the chapter 11 and the chapter 7 work. The Employment Application was set for hearing and parties were permitted to appear and object to the Employment Application at the hearing. GKH, Nelson E. Bowers, II, and SEDI Acquisition, LLC ("Employment Objectors") appeared and objected to the employment on the basis that nunc pro tunc relief was inappropriate in this matter. Counsel for the Employment Objectors argued that the Applicant had the burden of proof as to whether he was entitled to such relief and had not shown that he had met the factors for retroactive authorization for employment as previously set forth by this court in *In re McKenzie*, 449 B.R. 306, 319 (Bankr. E.D. Tenn. 2011).

**Jurisdiction**

The court finds that it has jurisdiction to determine this contested matter pursuant to 11 U.S.C. §§ 1334 and 157(b)(2)(O). The court makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 as made applicable to contested matters by Fed. R. Bankr. P. 9014(c).

4

**Facts**

The bankruptcy case of Steve A. McKenzie is unusual in the number of assets to be addressed in an individual case. The debtor's assets consisted of over 100 holdings in real estate, partnership interests and member interests in limited liability companies. To further complicate the administration of these assets, the case began as in an involuntary bankruptcy in November of 2008. The debtor continued to engage in transactions during the gap period before he converted the case to a chapter 11 in January of 2009. Shortly thereafter he was hospitalized for serious medical problems. The debtor's holdings, which also included a management company, bowling alleys and a golf course, were left without a fully functioning debtor in possession to manage the day to day operations. On February 20, 2009, following a hearing on February 19, 2009, the Court granted the United States Trustee's motion for the appointment of a trustee. Hr'g Transcript of February 19, 2009, *Proceedings on Emergency Motion for the Appointment of a Chapter 11 Trustee,* Aug. 14, 2009, ECF No. 469.

The relationship of the Applicant to this case is also unusual. From the beginning, he appears to have been employed to perform a dual role as accountant for the debtor and the Creditor's Committee. The debtor in possession was the party who sought authorization for the employment of the Applicant. *Ex Parte Application by Debtor-In-Possession for Approval of Employment of Accountants*, Jan. 30, 2009, ECF No. 76; Hr'g Ex. 1. He sought to employ the Applicant to "prepare reports, returns, analyze financial statements and review and supervise accounting records for Debtor and for entities he controls pursuant to bankruptcy law for Chapter 11 individual debtors." *Id.* at 2. In addition to the work being for the Debtor's benefit, the application proposed that the work of the accountants would also be available to the Office of the United States Trustee and to the Official Committee of Unsecured Creditors. *Id.* The order, which was approved by counsel for the Debtor-in- Possession, the United States Trustee, and the Official Committee of Unsecured Creditors, expanded the scope of the accountants' work to provide that "the accountants will not be limited in their examinations in connection with their work, Debtor and his chief financial

officer will be obligated to cooperate with the accounting firm and disclose any information requested by the accounting firm and said accountants will be obligated to disclose to the Debtor and to the Official Committee of Unsecured Creditors any information obtained by the firm during the course of their work." *Order Approving Engagement of Accountants*, Feb. 3, 2009, ECF No. 84; Hr'g Ex. 2. The Order Approving Engagement of Accountants entered on February 3, 2009.

On February 19, 2009, the court heard the motion for the appointment of a trustee. Mr. London testified at the hearing as the witness in support of the United States Trustee's motion for a trustee. Hr'g Transcript of February 19, 2009, Proceedings on Emergency Motion for the Appointment of a Chapter 11 Trustee, August 14, 2009, ECF No. 469 at 24 – 32.The Employment Application alleges that "it was stated in open Court that the services of the Accountants should continue due to the valuable nature of services to be rendered and that such employment would be in the best interest of the estate." *Application to Authorize Employment of Accountants Nunc Pro Tunc*, Mar. 27, 2013, P. 3, Para. 9, ECF No. 1834. The transcript of that hearing reflects that Bankruptcy Judge R. Thomas Stinnett found that the employees of the debtor's businesses needed to be paid and taxes needed to withheld and paid to the appropriate governmental authorities.  He also found that the ongoing operations needed someone to handle the day to day operations while the debtor was hospitalized in intensive care. There being no evidence of a definite time when the debtor would be returning, he authorized the appointment of a trustee by the United States Trustee. Despite these findings, the court does not find that Judge Stinnett made a statement about the continued employment of the accountants specifically. Therefore, the court does not find that the court previously orally authorized the employment of the accountants by the Trustee. Hr'g Transcript of February 19, 2009, Proceedings on Emergency Motion for the Appointment of a Chapter 11 Trustee, Aug. 14, 2009, ECF No. 469.

On February 20, 2009, Mr. London met with Mr. Still, the newly appointed chapter 11 trustee. *Order of Appointment of a Chapter 11 Trustee*, Feb. 20, 2009, ECF No. 140; Hr'g Ex. 3; *Application for Interim Compensation of Jack D. London, CPA and the Firm of Henderson Hutcherson & McCullough, PLLC Employed by C. Kenneth Still, Chapter 11 Trustee*, June 17, 2009, ECF No. 399; Hr'g Ex. 5 at 9.

6

Mr. Still testified that he asked Mr. London to continue as the accountant for the estate, and Mr. London continued working for the trustee. Testimony of C. Kenneth Still, 3:27:07-3:27;27, June 6, 2013. Mr. London testified that he relied on Mr. Scott LeRoy, who had been the counsel for the Creditor's Committee and who was later employed as counsel for the Chapter 11 trustee, to file whatever paper work was necessary for the accountant's employment. Testimony of Jack D. London, 1:53:55-1:55:01; 2:15:58-2:16:40, June 6, 2013. Mr. Still also testified that he relied on Mr. LeRoy to file an application to employ Mr. London. *Still Testimony*, 3:02:18-3:02:27, June 6, 2013. Despite expressing their reliance on their counsel, both Mr. London and Mr. Still testified that they did not discuss this task with Mr. LeRoy. *Still Testimony*, 3:29:06-3:29:25; 3:39:36-3:39:43; *London Testimony*, 2:16:00-2:17:00, June 6, 2013. Both men are experienced bankruptcy professionals. Mr. London admitted that he knew that he needed to be authorized by the court to be employed (*London Testimony*, at 2:23:55-2:24:05, June 6, 2013); however, he believed that the February 3, 2009, order employed him for both the debtor and the estate. *Id.* at 1:48:01. He thought that one order for both the debtor and the creditors' committee was sufficient for his continued work as counsel for Mr. Still. *Id.* at 2:30:15-2:30:50. Mr. Still testified that he did not know that there was a problem with the employment until GKH filed its current objection on March 20, 2013. *Still Testimony,* at 3:25:47-3:26:10.

Mr. LeRoy filed applications for authorization of his own employment for the Chapter 11 Trustee and that of other professionals in the case. *See Application [sic] Chapter 11 Trustee for Employment of Evans LeRoy & Hackett, PLLC as Special Counsel*, Feb. 20, 2009, ECF No. 138, Hr'g Ex. 4; *Application of Chapter 11 Trustee for Employment of Real Estate Consultant*, Feb. 20, 2009, ECF No. 139. He also filed another application for himself to represent the Chapter 7 trustee after the case converted. *Amended Application of Chapter 11[sic] Trustee for Employment of Evans LeRoy & Bickerstaff, PLLC, as Attorneys*, July 1, 2010, ECF No. 804; *Amended Application of Chapter 11 [sic] Trustee for Employment of LeRoy & Bickerstaff, PLLC as Attorneys*, July 1, 2010, ECF No. 805.

Following a period of time under the direction of a chapter 11 trustee, the case converted to chapter 7 on June 14, 2010. *Order*, June 14, 2010, ECF No. 789. At that time, Mr. Still was appointed as

7

the chapter 7 trustee, but no application to employ the Applicant was filed at that time. Nevertheless, Applicant continued to assist the Trustee and obtained court approval of four applications for compensation for services rendered to the Trustee during the chapter 11 and 7 phases of this case. *In re McKenzie*, No. 08-16378, ECF No. 422, 584, 822, and 1603. The first three applications were filed for work performed prior to the debtor's conversion to chapter 7.

Mr. LeRoy was also the author of the first four fee applications filed on the Applicant's behalf. Hr'g Ex. 5, 6, 7, and 8. In those applications, he recites:

> The Debtor filed an application to employ Jack D. London, CPA and the firm of Henderson, Hutcherson & McCullough as Certified Public Accountants for the Debtor on January 30, 2009. The Court entered the Order approving the employment of Jack D. London, CPA and the firm of Henderson, Hutcherson & McCullough on February 3, 2009. The Court ordered that Jack D. London and his firm to [sic] disclose all information obtained by the firm to the Debtor and to the Official Committee of Unsecured Creditors. On February 20, 2009 a Trustee was appointed, and at the request of the Creditors Committee, Jack D. London and his firm continued as accountants for the Trustee. On June 14, 2010 the case was converted to Chapter 7 and Jack D. London and his firm continued as accountants for the Trustee.

*Application to Authorize Employment of Accountants Nunc Pro Tunc,* P. 3, para. 13, Mar. 27, 2013, ECF 1834; Hr'g Ex. 5, 6, 7, and 8.

The first three fee applications for work performed in the Chapter 11 were granted without objection. The Applicant filed a fourth interim application for compensation on September 30, 2011, for work done in the chapter 7. Hr'g Ex. 8; ECF No. 1485. The debtor's wife, Rebecca McKenzie, objected pro se to the fourth application. She raised an issue about the amount of time spent retrieving and opening mail on behalf of the estate. She also alleged that furniture of the debtor had been taken to the Applicant's office and distributed to Applicant's friends. *Objection to Jack London's Fee Application*, October 17, 2011, ECF No. 1547. The fourth application was resolved by an agreement to reduce the amount of fees requested by $25,000 and to reverse the transaction involving the furniture after an investigation by the United States Trustee's office of those allegations. Transcript of Nov. 17, 2011 Hearing; *Agreed Order*, Nov. 28, 2011, ECF No. 1603.

In those first four applications, Applicant itemizes a wide range of services provided to the estate. The First Interim Application reflects advice regarding tax matters, investigation of assets which included

8

a discovery of a $460,000 note receivable, administration of the businesses of the debtor, reporting to the court, and preparation of filing extensions for tax returns for more than fifty entities. Hr'g Ex. 5, *Interim Application* at 3. In the second application, Applicant took primary responsibilities for accounting, payroll, tax returns and other related services as well as concluding and finalizing operations for bowling alleys, mobile home parks, and SAM Management, a managing company for the debtor. Hr'g Ex. 6, *Second Application for Interim Compensation* at 3. Applicant reported sales of assets during the second application period that generated "approximately $500,000 for the estate from closely held investment holdings." *Id.* In the third application, the Applicant engaged in consultations, discussions, and negotiations regarding the turnover of a golf course to the lienholder, NorthWest Georgia Bank, in addition to providing assistance with the regular court reporting and preparation of payroll tax returns, W-2's, 1099's, and K-1's along with other year end accounting tasks. Hr'g Ex. 7, *Third Application for Interim Compensation* at 4-3. In the Fourth Application, Applicant investigated assets that resulted in $390,000 for the estate from the sale of one of the assets and performed work related to Walnut Partners Group which derived a benefit to the estate of $83,000. These benefits to the estate were in addition the Applicant's ongoing role advising the Trustee and preparing the reports for the estate for the United States Trustee. *Id.* Mr. London testified that he had also performed preference and fraudulent transfer analyses for the estate. He testified that there were "no preferences of consequence" and no fraudulent transfers. *London Testimony*, at 2:18:06-2:18:27, June 6, 2013.[2]

The services described in the Fifth Application include work in several areas. Applicant provided advice to the Trustee on accounting and tax matters and continued to prepare reports required by the Office of the United States Trustee and the court. Itemized records attached to the Fourth Application reflect that in July and August of 2011, Applicant worked on the debtor's investment in Village Lanes,

---

[2] The court is aware of three fraudulent transfer/preference suits that have been filed in the case which Mr. London did not mention. One of the suits resulted in a dismissal. *Still v. Bowers II, et al.*, Adv. Proc. No. 10-1047. The second is *Still v. Bowers II, et al.*, Adv. Proc. No. 12-1081 which is still pending. The preference suit is *Still v. Grant, Konvalinka & Harrison, PC*, Adv. Proc. No. 11-1121(seeking to avoid a security interest in a number of the debtor's holdings). He Employment Objectors did not cross-examine Mr. London about these actions, presumably because two of the objectors were defendants in one or more of these actions.

9

LLC. Hr'g Ex. 11, Ex. A at 1-4.[3] Applicant performed work for SAM Management, the operating entity for the debtor's investments. Hr'g Ex. 11 at 15. Also in February of 2012, Applicant researched an IRS levy on McKenzie Development. Hr'g Ex. 11 at 16. Other investments on which the Applicant worked during the fifth application period were Richland Ventures, Mouse Creek, LLC, Crown Laboratories and Stir Crazy. Hr'g Ex. 11, *Fifth Application for Interim Compensation of Jack D. London, CPA and the Firm of Henderson Hutcherson & McCullough, PLLC Employed by C. Kenneth Still, Chapter 7 Trustee*, Exhibit A, Invoices.

The Applicant also consulted with the Trustee and Fred Decosimo, another accountant retained for the estate, to address what value might be available from the assets of the debtor for the estate. Hr'g Ex. 11 at 17, 19. Mr. Decosimo met with Applicant to discuss the corporate structures and potential values of those interests that had been identified. Based on those discussions, the Applicant drafted letters to partnerships with positive capital accounts in July 2012. Ex. 11 at 21.

The Applicant also testified that he prepared the income tax returns for the estate for the years 2010 and 2011 and addressed sales tax issues. *London Testimony*, 1:59:44-2:00:33, June 6, 2013. Itemized services also include efforts in November of 2011 to track down a $195,000 check from Dough Boy, one of the entities in which the debtor allegedly held an interest. Hr'g Ex. 11 at 12.

Mr. London also testified that he provided litigation support to Mr. Still. *London Testimony*, 1:49:30-2:00:30. Furthermore, in litigation between the estate and GKH, Mr. London provided deposition testimony in October of 2011. *Id.;* Hr'g Ex. 11 at 9.

At the June 6, 2013 hearing, the Objecting Creditors did not point to any specific entries of time by Mr. London but focused on the total amount of fees requested and challenged whether there was evidence of a benefit to the estate from the work reflected in the five fee applications. When Mr. Bowers was asked at the hearing about his opposition to Mr. London's employment, he testified that he did not have an opinion about the employment. Testimony of Nelson E. Bowers, II, 2:57:34-2:57:45, June 6,

---

[3] Village Lanes operated bowling alleys, and for the period of August 13, 2009, to August 30, 2010, was also a debtor in possession in this court. *In re Village Lanes, LLC*, Case No. 09-15086.

2013. He objected to the fees as "excessive." *Id.* at 2:57:18-2:57:32. GKH put on no additional testimony in support of its objection and relied on (1) the undisputed fact that the accountant had failed to obtain court approval for his employment, and (2) the failure of the Trustee to manage the accrual of expenses by the Applicant based on the cross examination testimony elicited from Mr. Still.

**Analysis**

*Retroactive Authorization of Employment*

The entry of an order retroactively approving a fee application is a remedy for "exceptional circumstances." *Atkins v. Wain, Samuel & Co.(In re Atkins)* 69 F.3d 970, 975 (9th Cir. 1995)(quoting *Okamoto v. THC Fin. Corp. (In re THC Fin. Corp.),* 837 F.2d 389, 392 (9th Cir. 1988)). It is appropriate "where an applicant can show both a satisfactory explanation for the failure to receive prior judicial approval and that he or she has benefited the bankruptcy estate." *Id.* The court has already entered one such order in this case with respect to the application for employment of counsel for the Trustee with respect to his employment in the Chapter 7 proceeding. *In re McKenzie*, 449 B.R. 306, 318-21 (Bankr. E.D.Tenn. 2011). In that ruling, the court enumerated the factors to be considered:

> The factors set forth in *In re Twinton Properties Partnership* and adopted by Judge Collier in *In re Aultman Enters.*, 264 B.R. 485, 489-90,492 are as follows:
> 1. The debtor, trustee or committee expressly contracted with the professional person to perform services which were thereafter rendered;
> 2. The party for whom the work is performed approves the entry of the nunc pro tunc order;
> 3. The applicant has provided notice of the application to creditors and parties in interest and has provided an opportunity for filing objections;
> 4. No creditor or party in interest offers reasonable objection to the entry of the nunc pro tunc order;
> 5. The professional satisfied all the criteria for employment pursuant to 11 U.S.C. § 327 and Rule 2[014] of the Federal Rules of Bankruptcy Procedure at or before the time services were actually commenced and remained qualified during the period for which services were provided;

11

      6. The work was performed properly, efficiently, and to a high standard of quality;

      7. No actual or potential prejudice will inure to the estate or other parties in interest;

      8. The applicant's failure to seek pre-employment approval is satisfactorily explained; and

      9. The applicant exhibits no pattern of inattention or negligence in soliciting judicial approval for the employment of professionals.

264 B.R. at 492.

      The court finds that the Applicant has carried his burden of proof on these factors. Mr. Still testified that he asked Mr. London and Henderson, Hutcherson & McCullough to continue as his accountant and that he approved the retroactive authorization of their employment. *Still Testimony*, 3:27:13-3:27:28; 3:01:12-3:02:50. Notice of the Applicant's request for nunc pro tunc relief was given on March 27, 2013.[4] Mr. London testified that he held no interest adverse to the estate and that he had not held any during the entire course of his employment. *London Testimony*, 1:49:29-1:51:40. The affidavit attached to his employment application disclosing any contacts with the debtor or other parties in the case indicates that he performed services for partnerships or limited liability companies in which Mr. Bowers was a minority interest holder. He did not work for Mr. Bowers individually, and the companies for which he provided services were not related to the bankruptcy estate. *London Testimony*, 1:50:56-1:51:40, June 6, 2013.The Applicant has satisfied the criteria for employment. He does not hold an interest adverse to the estate and has remained disinterested throughout the period for which he now seeks retroactive authorization. 11 U.S.C. § 327(a).

---

[4] An Amended Application was filed on April 4, 2013. It contains a certificate of service indicating that it was served on March 27, 2013. The timing of the service of the amended application seems unusual, but the court can find only one change in the Amended Application. Paragraph 10 of the original application indicated that the trustee "continued" to serve as Chapter 7 Trustee. Paragraph 10 of the amended application states that Mr. Still "was appointed" to serve as Chapter 7 Trustee. Both versions reference ECF. No. 790, the Notice of the 341 Meeting. The Notice of the 341 meeting reflecting Mr. Still's appointment is actually found at ECF No. 792.Hr'g Ex. 10. The court finds that there is no substantive difference in the language of the Applications. Therefore, the court finds that service of the original application would have provided sufficient notice to creditors and parties in interest of the relief that was being requested.

Mr. Still testified that the work was performed in a proper and efficient manner and was of high quality. *Still Testimony*, 3:34:40-3:35:20; 3:38:44-3:39:09, June 6, 2013. The court finds that Mr. Still's opinion is supported by the individual entries which reflect an extensive amount of work in the case both on matters such as the completion of tax returns and the investigation of assets. The five fee applications demonstrate that the estate has received substantial benefits from the Applicant's work. In reviewing the applications, the court finds that the hourly rates are reasonable for professionals of that level of expertise and experience and are the same rates reflected in the original application for applicant's employment for the debtor in 2009. The amount of time spent appears to be reasonable and the time appears to have been spent efficiently on matters for which the debtor and the Trustee employed the accountant. The average hourly rate reflects that work has been pushed down to the parties who have charged lower rates for a substantial portion of the work. To the extent that a specific objection to the time spent reviewing the mail was raised, the fees requested were reduced.

From a review of the exhibits the court finds that the work which was performed was necessary for the administration of the estate, and in particular for the prevention of the accrual of additional administrative expenses owed to taxing authorities. The court finds that a substantial portion of the work during the period of the Fifth Application relates to filing tax returns for 2010 and 2011. The fact that the returns were filed is not in dispute.

The applications reflect recovery of assets for the benefit of the estate. The most recent application also reflects that work continues to recover potential assets – in particular, pursuit of a number of limited liability company interests. Based on the last status report required by the court, the Trustee reported that that those LLC's showed capital accounts of approximately $1,340,000. Trustee's Status Report, Feb. 4, 2013, ECF No. 1812. The magnitude of that potential recovery is an appropriate justification for the use of estate assets.

There was also time expended to provide a deposition to GKH and to assist the Trustee in his litigation with GKH. The court also finds this time to be necessary to the administration of the estate.

With respect to a pattern of inattentiveness, the court does not find that the Applicant has demonstrated a pattern of inattentiveness after the deficiency was called to his attention. His Employment Application was filed within a week of the deficiency being brought to his attention, and he has retained his own counsel to pursue the matter.

The Applicant provided an explanation for his failure to obtain court approval for his employment. When asked about what order he had relied on for his employment, Mr. London testified that he believed that the initial order was sufficient because he was working for both the Creditor's Committee and the debtor. *London Testimony*, 2:26:27-2:27:19, June 6, 2013. Mr. London is an accountant, not an attorney; and as such, he cannot file pleadings with the court. He testified that he relied on counsel for the Trustee to file whatever needed to be filed, but he admits he knew that something needed to be filed. *London Testimony*, 2:23:55-2:31:30, June 6, 2013. Mr. LeRoy was serving as the attorney for the Creditor's Committee at the time the employment order had been entered. That may have caused some confusion. Nevertheless, the court is concerned that the issue was not raised by the Applicant, the Trustee or his counsel for years. One court has found that reliance on the debtor's promise to obtain court authorization for employment is a satisfactory explanation in a situation in which the Applicant demonstrated that there had been repeated representations made by the debtor that an application would be filed. *In re Atkins*, 69 F.3d 970, 976-78 (9th Cir. 1995). There is no evidence of repeated requests to, or representations from, the Trustee's counsel on this issue. Both Mr. Still and Mr. London admitted that neither had discussed with Mr. LeRoy the need to file an application to employ Mr. London. *Still Testimony*, 3:29:06-3:29:25; 3:39:34-42; *London Testimony*, 2:25:48-2:26:00, June 6, 2013.

Despite these facts, the court ultimately finds the explanation satisfactory because of the unusual circumstances and provisions of the initial order. Reliance by an experienced bankruptcy professional on an attorney to prepare the necessary pleadings to obtain the authorization for his employment is not satisfactory if the professional never asks the attorney to do so. However, Mr. London thought that he had been employed for more than just work for the debtor. The order authorizing his employment for the

14

debtor removed any limitations on the areas of investigation into which the accounting firm could go and required that the information discovered had to be supplied to the United States Trustee and the Creditor's Committee. Mr. LeRoy and the United States Trustee had signed the original order for employment. The court finds Mr. London's testimony credible that he thought that he had been employed for more than just work for the debtor.

This mistaken belief was reinforced when counsel for the Trustee prepared his first three fee applications and described how he came to be employed in the case and made no effort to remedy the deficiency. There were no objections to these applications by any party, including the United States Trustee who had originally brought the motion to appoint a trustee and who had used Mr. London as the sole witness at the February 19, 2009 hearing to appoint a trustee. Although there was an objection to the fourth application it did not challenge the authorization, only the amount of the fees, the necessity of the work charged and the possession of the office furniture. The court finds that even with this Fifth Application, the real objection to Mr. London's request is not that the Employment Objectors are surprised by his work for the estate.  They object to the amount he has requested for his firm's services.

The court finds that all but one of the *Twinton* factors has been satisfied.

The last consideration is whether the objection by the Employment Objectors is reasonable. As to Mr. Bowers, the court finds that his objection was to the amount of the fees only and that he expressed no opinion on Mr. London's employment. GKH for itself and for SEDI argued that Mr. London is an experienced accountant who knew he needed to be employed but did not do so even after another professional in the case had to seek nunc pro tunc approval of his employment. GKH cites to a number of cases in its brief for which the explanation of "simple oversight" was not sufficient. *See Farinash v. Vergos (In re Aultman Enterprises)*, 264 B.R. 485, 489 (E. D. Tenn. 2001). Those cases cite the policy concern that volunteerism is to be discouraged and that the Bankruptcy Code allows employment **after** court approval. 11 U.S.C. § 327(a). Those are reasonable bases for an objection; however, a reasonable objection is one factor to be weighed by the court in its determination of whether retroactive authorization should be allowed.  The circumstances of Mr. London's initial involvement in the case and the other

15

factors weigh in favor of the retroactive authorization of the employment in this case. The court finds that the circumstances of this case weigh in favor of the exercise of its discretion in allowing the retroactive authorization of Mr. London's employment for Mr. Still in his capacity as trustee for both the Chapter 11 and Chapter 7 estates.

*Fifth Fee Application*

Having concluded that the Employment Application will be granted, the court must address GKH's remaining objection to Fifth Fee Application. The Applicant has provided services which were necessary as reflected in the entries in the Fifth Fee Application. Specifically the court finds that the preparation of tax returns, responding to taxing authority inquiries, accounting for the receipt of assets, the investigation of the value of partnership and limited liability company interests, preparation of trustee reports and assistance with Trustee litigation are all necessary services for the estate.

The court finds that the hourly rates requested are reasonable and are within the range allowed for other professionals in the court's experience. The hours expended appear to be reasonable based on the descriptions provided with one exception. The court will disallow the entry regarding discussions with an auctioneer regarding furniture on 10/31/12 for $270. Ms. Swafford, counsel for the United States Trustee, confirmed at the hearing on the Fourth Application that her office had conducted an investigation of the furniture transaction involving Mr. London's firm, and had determined that there was an improper transaction which had been reversed. Transcript of November 17, 2011 on the Fourth Application for Interim Compensation, 10:15:10-10:16:32. The court finds that the estate should not be charged for any expenses related to the furniture.

Based on the foregoing findings the court will allow the fees of the Applicant in the amount of $51,484 and expenses of $1,333.48. The court will continue to require a holdback of 10%. The court intends by this hold back to ensure the ability of the estate to pay the administrative expenses of the case in an equitable manner.

A separate order will enter.

# # #